**E-FILED**
Friday, 15 February, 2008  12:12:34 PM
Clerk, U.S. District Court, ILCD

063594.0347(207)                    RMC:ddm
063595.0347(207)

## IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| **STATE AUTO PROPERTY AND** | ) |
| **CASUALTY INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **A-M, L.L.C., an Illinois limited liability** | ) |
| **company, V-M, L.L.C., an Illinois limited** | ) |
| **liability company, ALAN LaROCHELLE,** | ) |
| **VICTOR ARMSTRONG, and MICHAEL** | ) |
| **SUHADOLNIK,** | ) |
| | ) |
| **Defendants.** | ) |

### COMPLAINT FOR DECLARATORY JUDGMENT

Now comes the Plaintiff, State Auto Property and Casualty Insurance Company, by

its attorney, Robert Marc Chemers of Pretzel & Stouffer, Chartered, and for its Complaint

for Declaratory Judgment against the Defendants, A-M, L.L.C., an Illinois limited liability

company, V-M, L.L.C., an Illinois limited liability company, Alan LaRochelle, Victor

Armstrong, and Michael Suhadolnik, alleges the following:

### JURISDICTION

1.      The jurisdiction of this Court is premised upon 28 U.S.C. §1332 because there

is complete diversity of citizenship between the parties and the amount in controversy

exceeds the sum of $75,000, exclusive of interest and costs, in this action seeking a declaration of no insurance coverage.

## VENUE

2.    Venue is premised upon 28 U.S.C. §1391 as the Defendants are residents of this District.

## THE PARTIES

3.    State Auto Property and Casualty Insurance Company (hereinafter "State Auto") is an Iowa insurance corporation, which maintains its principal place of business in Columbus, Ohio, and which at all times herein relevant was licensed to and which did transact insurance business in the State of Illinois and elsewhere.

4.    A-M, L.L.C. (hereinafter "A-M") is an Illinois limited liability company, which maintains its principal place of business in Bloomington, Illinois, and which at times herein relevant was the named insured on certain policies of insurance issued by State Auto.

5.    V-M, L.L.C. (hereinafter "V-M") is an Illinois limited liability corporation, which maintains its principal place of business in Bloomington, Illinois, and which at times herein relevant was the named insured on certain policies of insurance issued by State Auto.

6.    Alan LaRochelle (hereinafter "LaRochelle") is a citizen of the State of Illinois and a resident of Bloomington, Illinois.  LaRochelle was a 25% owner of A-M.

7.    Victor Armstrong (hereinafter "Armstrong") is a citizen of the State of Illinois and a resident of Bloomington, Illinois.  Armstrong was a 25% owner of A-M and a 50% owner of V-M.

8.    Michael Suhadolnik (hereinafter "the underlying plaintiff" or "Suhadolnik") is the plaintiff in a certain action brought against A-M, V-M, LaRochelle and Armstrong in another Court, which action will be more fully described later herein, and who is a nominal but interested party to this declaratory judgment action.  State Auto seeks no relief from the underlying plaintiff, who has been joined herein as a party defendant solely in order to be bound by the judgment rendered in this cause.  Suhadolnik is a citizen of the State of Illinois and resides in or near Springfield, Illinois.  Suhadolnik was a 50% owner of A-M and of V-M.

### THE STATE AUTO POLICIES

9.    State Auto issued its policy of insurance numbered SPP2413256-00 to A-M as named insured.  The policy provided for Commercial General Liability Insurance and Umbrella Liability Insurance for the effective period of July 1, 2006 to July 1, 2007.  The policy was renewed under SPP2413256-01 for the period of July 1, 2007 to July 1, 2008.  Certified true and correct copies of the State Auto policies of insurance are attached hereto, made a part hereof and are marked as Pleading Exhibits A and B, respectively.

10.    State Auto issued its policy of insurance numbered SPP2413242-00 to V-M as named insured.  The policy provided for Commercial General Liability Insurance and Umbrella Liability Insurance for the effective period of July 1, 2006 to July 1, 2007.  The policy was renewed under SPP2413242-01 for the period of July 1, 2007 to July 1, 2008.  Certified true and correct copies of the State Auto policies of insurance are attached hereto, made a part hereof and are marked as Pleading Exhibits C and D, respectively.

- 3 -

### THE UNDERLYING LITIGATION

11.    The underlying plaintiff has filed an action for damages against A-M, V-M, LaRochelle and Armstrong in the Circuit Court of the 7th Judicial Circuit, Sangamon County, Illinois, under Cause No. 07 L 347.  A true and correct copy of the Complaint is attached hereto, made a part hereof and is marked as Pleading Exhibit E.

12.    The underlying plaintiff seeks damages from A-M, V-M, LaRochelle and Armstrong for breach of fiduciary duty based on intentional and malicious conduct in Count I, and damages for unjust enrichment from LaRochelle and Armstrong in Count III, all of which more fully appears in Pleading Exhibit E attached hereto.

### TENDER OF DEFENSE

13.     A-M, V-M, LaRochelle and Armstrong have made a demand on State Auto to provide them with a defense for the action filed by the underlying plaintiff.  State Auto refused to accept that tender of defense for the reasons herein stated.

### COUNT I
### (DECLARATORY JUDGMENT RE: NO DUTY DEFEND
### A-M, LaROCHELLE AND ARMSTRONG)

14.    State Auto adopts and repeats the allegations of ¶¶ 1 through 13 as and for ¶ 14 hereof as though the same were fully set forth herein.

15.    While the State Auto policies, Pleading Exhibits A and B, extend coverage for "bodily injury" or "property damage" as defined therein, the claims in the underlying action by the underlying plaintiff do not involve "bodily injury" or "property damage" as those terms are defined.

- 4 -

16.    While the State Auto policies, Pleading Exhibits A and B, extend coverage for "personal and advertising injury" as defined therein, the claims in the underlying action of the underlying plaintiff do not involve "personal and advertising injury" as those terms are defined.

17.    State Auto contends that A-M, LaRochelle and Armstrong are not entitled to any coverage under the policies because of one or more or all of the following reasons:

(a)    The Complaint does not seek damages because of "bodily injury" as defined;

(b)    The Complaint does not seek damages because of "property damage" as defined;

(c)    The Complaint does not seek damages because of "personal and advertising injury" to which the policies apply;

(d)    The Complaint does not involve an "occurrence", that is, accidental conduct but only intentional and malicious conduct causing economic losses.

18.    The above contentions of State Auto are, on information and belief, denied by A-M, LaRochelle and Armstrong who, in turn, contend that they are entitled to coverage under the State Auto policies of insurance. State Auto, in turn, denies the contrary contentions of A-M, LaRochelle and Armstrong and each of them.

19.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms and provisions of 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms

and provisions of the policies of insurance referred to herein, and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

## COUNT II
### (DECLARATORY JUDGMENT RE: NO DUTY DEFEND
### V-M AND ARMSTRONG)

20.    State Auto adopts and repeats the allegations of ¶¶ 1 through 13 as and for ¶ 20 hereof as though the same were fully set forth herein.

21.    While the State Auto policies, Pleading Exhibits C and D, extend coverage for "bodily injury" or "property damage" as defined therein, the claims in the underlying action by the underlying plaintiff do not involve "bodily injury" or "property damage" as those terms are defined.

22.    While the State Auto policies, Pleading Exhibits C and D, extend coverage for "personal and advertising injury" as defined therein, the claims in the underlying action of the underlying plaintiff do not involve "personal and advertising injury" as those terms are defined.

23.    State Auto contends that V-M and Armstrong are not entitled to any coverage under the policies because of one or more or all of the following reasons:

(a)    The Complaint does not seek damages because of "bodily injury" as defined;

(b)    The Complaint does not seek damages because of "property damage" as defined;

- 6 -

(c)    The Complaint does not seek damages because of "personal and advertising injury" to which the policies apply;

(d)    The Complaint does not involve an "occurrence", that is, accidental conduct but only intentional and malicious conduct causing economic losses.

24.    The above contentions of State Auto are, on information and belief, denied by V-M and Armstrong who, in turn, contend that they are entitled to coverage under the State Auto policies of insurance.  State Auto, in turn, denies the contrary contentions of V-M and Armstrong A-M and each of them.

25.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court. Pursuant to the terms and provisions of 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein, and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

## PRAYERS FOR RELIEF

**WHEREFORE**, the Plaintiff, State Auto Property and Casualty Insurance Company, prays that this Court enters judgment finding and declaring the rights of the parties as follows:

- 7 -

## As To Count I:

A.    That State Auto Property and Casualty Insurance Company has no duty or obligation to provide a defense to A-M, L.L.C., Alan LaRochelle and Victor Armstrong for the action filed in the Circuit Court of the 7th Judicial Circuit, Sangamon County, Illinois, under Cause No. 07 L 347, under its policies of insurance.

B.    That the Court grant State Auto Property and Casualty Insurance Company such other and further relief as the Court deems fit and just under the circumstances.

C.    That State Auto Property and Casualty Insurance Company be awarded and have and recover its just and reasonable costs incurred herein and have execution issue therefor.

## As To Count II:

A.    That State Auto Property and Casualty Insurance Company has no duty or obligation to provide a defense to V-M, L.L.C. and Victor Armstrong for the action filed in the Circuit Court of the 7th Judicial Circuit, Sangamon County, Illinois, under Cause No. 07 L 347, under its policies of insurance.

B.    That the Court grant State Auto Property and Casualty Insurance Company such other and further relief as the Court deems fit and just under the circumstances.

- 8 -

C.    That State Auto Property and Casualty Insurance Company be awarded

and have and recover its just and reasonable costs incurred herein and

have execution issue therefor.

**s/ Robert Marc Chemers**
Bar Number:  00431508
PRETZEL & STOUFFER, CHARTERED
One South Wacker Drive
Suite 2500
Chicago, Illinois 60606
Telephone:    (312) 578-7548
Fax:            (312) 346-8242
E-Mail:        rchemers@pretzel-stouffer.com
***Attorneys for Plaintiff***

**E-FILED**
Friday, 15 February, 2008  12:13:45 PM
Clerk, U.S. District Court, ILCD

**AFFIDAVIT**

STATE OF INDIANA

COUNTY OF MARION

BEFORE ME, the undersigned authority, on this 29th day of January 2008

Personally appeared <u>Gary J. Morris</u>, a Manager for State Automobile Mutual

Insurance Company.

The affiant is known to me to be a credible person of lawful age, who first being duly

cautioned and sworn deposes and says that the attached specimen policy jacket,

declaration page and endorsements together to the best of my knowledge and belief

represent a true copy of policy number  <u>SPP 2413256</u>

_____
SIGNATURE OF AFFIANT

<u>Gary J. Morris</u>
PRINTED NAME OF AFFIANT

Subscribed and sworn to before me, this 29th day of January 2008
                                              DAY              MONTH

(seal)

_____
SIGNATURE OF NOTARY PUBLIC

<u>Carolyn M. Wertz</u>
PRINTED NAME OF NOTARY PUBLIC

<u>COUNTY OF Shelby</u>

STATE OF INDIANA

My commission expires October 16, 2009

SPP 2413256 00 20061220                                          13 12 2413256 N122006
                              ORIGINAL COPY            OPTIPLAN-AGENT BILL
                                                                      13  NAC
                                                                                    3
        STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY
                                                                                    2

                                                                                    2
POLICY NUMBER:  SPP 2413256 00

NAMED INSURED AND ADDRESS:              AGENCY NAME, ADDRESS AND TELEPHONE:          2

     A-M LLC                            SNYDER AND SNYDER AGENCY INC
     C/O JOHN HAMILTON                  PO BOX 1546
     702 N CLINTON                      BLOOMINGTON, IL       61702
     BLOOMINGTON, IL        61701
                                        309-664-1800

BRANCH:  13                             AGENCY NUMBER: 0001030

POLICY PERIOD:    FROM:  JULY 31, 2006      TO: JULY 31, 2007

                    P O L I C Y    C H A N G E S

        THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

----------------------------------------------------------------------------
POLICY CHANGE EFFECTIVE: 07/31/06


        AT YOUR REQUEST THE FOLLOWING CHANGES HAVE BEEN MADE:
CORRECTED NEW BUSINESS WAS SHOWING INSTALLATION COVERAGE
AND WAS SUPPOSE TO BE BUILDERS RISK COVERAGE.



        THANK YOU FOR MAKING STATE AUTO YOUR COMMERCIAL COMPANY

  12/18/06
-------------------------------------------------------------------------

                                        --------------------------
IL 12 01 (04/93)                        AUTHORIZED REPRESENTATIVE

SPP 2413256 00 20061220

OPTIPLAN-AGENT BILL
13 12 2413256 N122006

13  NAC

AAIS
IM-7056 ED 1.0
PAGE 1 OF 1
------------------------------------------------------------------------
              B U I L D E R  S '  R I S K   D E C L A R A T I O N S

              (THE INFORMATION REQUIRED BELOW MAY BE SHOWN ON
              A SEPARATE SCHEDULE OR SUPPLEMENTAL "DECLARATIONS".)

------------------------------------------------------------------------
SCHEDULED LOCATIONS
------------------------------------------------------------------------

| LOCATION NO. | | LIMIT |
|---|---|---|
| 1 | SAVANNAH GREEN SUBDIVISION | $ 1000000 |
| | | $ |
| | | $ |

| | |
|---|---|
| SCAFFOLDING AND CONSTRUCTION FORMS | $ |
| COVERED PROPERTY IN TRANSIT | $ 130,000 |
| COVERED PROPERTY AT UNSCHEDULED STORAGE LOCATIONS | $ |
| ANY ONE LOSS CAUSED BY "EARTH MOVEMENT" AND VOLCANIC ERUPTION | $ |
| ANY ONE LOSS CAUSED BY "FLOOD" AND "GROUND WATER" | $ |

------------------------------------------------------------------------
  DEDUCTIBLE
------------------------------------------------------------------------

| | DEDUCTIBLE AMOUNT |
|---|---|
| FOR ALL COVERED PERILS UNLESS A DIFFERENT DEDUCTIBLE IS INDICATED BELOW | $ 1,000 |
| THEFT | $ |
| "EARTH MOVEMENT" AND VOLCANIC ERUPTION | $ |
| "FLOOD" AND "GROUND WATER" | $ |

IM-7056 ED 1.0

SPP 2413256 00 20061220

13 12 2413256 N122006
OPTIPLAN-AGENT BILL

13  NAC

AAIS
IM-7056 ED 1.0
PAGE 1 OF 1
-----------------------------------------------------------------------
        B U I L D E R  S '  R I S K   D E C L A R A T I O N S

        (THE INFORMATION REQUIRED BELOW MAY BE SHOWN ON
        A SEPARATE SCHEDULE OR SUPPLEMENTAL "DECLARATIONS".)

-----------------------------------------------------------------------
SCHEDULED LOCATIONS
-----------------------------------------------------------------------

| LOCATION NO. | | LIMIT |
|---|---|---|
| 1 | SAVANNAH GREEN SUBDIVISION | $ 1000000 |
| | | $ |
| | | $ |

| | |
|---|---|
| SCAFFOLDING AND CONSTRUCTION FORMS | $ |
| COVERED PROPERTY IN TRANSIT | $ 130,000 |
| COVERED PROPERTY AT UNSCHEDULED STORAGE LOCATIONS | $ |
| ANY ONE LOSS CAUSED BY "EARTH MOVEMENT" AND VOLCANIC ERUPTION | $ |
| ANY ONE LOSS CAUSED BY "FLOOD" AND "GROUND WATER" | $ |

-----------------------------------------------------------------------
  DEDUCTIBLE
-----------------------------------------------------------------------

| | DEDUCTIBLE AMOUNT |
|---|---|
| FOR ALL COVERED PERILS UNLESS A DIFFERENT DEDUCTIBLE IS INDICATED BELOW | $ 1,000 |
| THEFT | $ |
| "EARTH MOVEMENT" AND VOLCANIC ERUPTION | $ |
| "FLOOD" AND "GROUND WATER" | $ |

IM-7056 ED 1.0

```
SPP 2413256 00 20061220                          13 12 2413256 N122006
                                            OPTIPLAN-AGENT BILL
                                                             13  NAC

AAIS
IM-7066 ED 1.0
PAGE 1 OF 1
-------------------------------------------------------------------------

              R E P O R T I N G   C O N D I T I O N S   S C H E D U L E

        (THE INFORMATION REQUIRED BELOW MAY BE SHOWN ON THE "DECLARATIONS.")


    ----------------------------        CHECK IF APPLICABLE:
      REPORTING CONDITIONS
    ----------------------------        |   | CONTINGENT COVERAGE
                                                 LIMIT FOR ANY ONE LOSS  $
ADJUSTMENT PERIOD    REPORTING PERIOD
   (CHECK ONE)          (CHECK ONE)     |   | DIFFERENCE IN CONDITIONS:
                                                 LIMIT FOR ANY ONE LOSS  $
  |   | MONTHLY        | X | MONTHLY
  |   | QUARTERLY      |   | QUARTERLY   RATES AND PREMIUM--
  |   | ANNUAL         |   | ANNUAL


   RATES AND PREMIUM --                 CONTINGENT COVERAGE RATE    $
                                        DIFFERENCE IN CONDITIONS    $
    RATES (PER $100)                    ALL OTHER COVERED PROPERTY
                                        RATE                        $
    .30/12= .025         $              DEPOSIT PREMIUM             $
                         $              MINIMUM PREMIUM             $
                         $
 DEPOSIT PREMIUM       $ 3000
 MINIMUM PREMIUM       $ 1000


------------------------------
CONTRACTORS' REPORTING
CONDITIONS
------------------------------


ADJUSTMENT PERIOD--  REPORTING PERIOD
   (CHECK ONE)          (CHECK ONE)

  |   | MONTHLY        |   | MONTHLY
  |   | QUARTERLY      |   | QUARTERLY
  |   | ANNUAL         |   | ANNUAL




    IM-7066 ED 1.0
```

SPP 2413256 00 20060830   OPTIPLAN-AGENT BILL                    12 N 00 13  R
                                                                AC00001030


                    STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY        3

                 SPECIAL ACCOUNT PROGRAM SUMMARY OF POLICIES AND PREMIUMS     2

POLICY NUMBER  SPP 2413256 00                                                 2

NAMED INSURED AND ADDRESS              AGENCY NAME, ADDRESS AND TELEPHONE NUMBER 2

        A-M LLC                             SNYDER AND SNYDER AGENCY INC
        C/O JOHN HAMILTON                   PO BOX 1546
        702 N CLINTON                       BLOOMINGTON, IL
        BLOOMINGTON, IL                     61702
        61701
                                       PHONE: 309-664-1800
    BRANCH: INDIANAPOLIS               AGENCY NUMBER: 0001030

POLICY PERIOD:        FROM: JULY 31, 2006  TO: JULY 31, 2007  AT
        12:01 AM  , STANDARD TIME, AT YOUR MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

     SUMMARY OF POLICIES AND PREMIUMS AS OF ABOVE EFFECTIVE DATE              2
-------------------------------------------------------------------------------
TYPE / DESCRIPTION OF INSURANCE                                      PREMIUM
-------------------------------------------------------------------------------

COMMERCIAL UMBRELLA LIABILITY                                       $2,050.00
-------------------------------------------------------------------------------
                                                                     $261.00
LIABILITY
-------------------------------------------------------------------------------
                                                                   $3,090.00
INLAND MARINE
-------------------------------------------------------------------------------

PREMIUMS ON PROVISIONAL OR DEPOSIT BASIS
WILL BE SUBJECT TO ADJUSTMENT.

                              TOTAL ADVANCE PREMIUM:      $5,401.00
                              * PREMIUM AT INCEPTION:      $5,401.00

* INCLUDES TERRORISM INSURANCE COVERAGE PREMIUM               $92.00




COUNTERSIGNED _____ BY _____
                                              (AUTHORIZED REPRESENTATIVE)


FORM NO. SP2      01/86                  ISSUED 08/30/06   AGENT COPY

SPP 2413256 00 20060830    OPTIPLAN-AGENT BILL                12 N 00 13  R
                                                             AC00001030


                    STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY        3

                        POLICY SCHEDULE OF NAMES AND ADDRESSES                2

POLICY NUMBER SPP 2413256 00                                                  2


NAMED INSURED AND ADDRESS          AGENCY NAME, ADDRESS AND TELEPHONE NUMBER   2

    A-M LLC                            SNYDER AND SNYDER AGENCY INC
    C/O JOHN HAMILTON                  PO BOX 1546
    702 N CLINTON                      BLOOMINGTON, IL
    BLOOMINGTON, IL                    61702
    61701
                                   PHONE: 309-664-1800
                                   AGENCY NUMBER: 0001030


              LOCATIONS OF PREMISES YOU OWN, RENT OR OCCUPY                    2


    LOCATION 0001                      LOCATION 0002
    1000 TEGAN                         1001 TEGAN
    NORMAL, IL                         NORMAL, IL
    MCLEAN COUNTY                      MCLEAN COUNTY
    61761                              61761


    LOCATION 0003                      LOCATION 0004
    1002 TEGAN                         1003 TEGAN
    NORMAL, IL                         NORMAL, IL
    MCLEAN COUNTY                      MCLEAN COUNTY
    61761                              61761


    LOCATION 0005                      LOCATION 0006
    1007 TEGAN                         1009 TEGAN
    NORMAL, IL                         NORMAL, IL
    MCLEAN COUNTY                      MCLEAN COUNTY
    61761                              61761


    LOCATION 0007                      LOCATION 0008
    1111 CHIPPEWA                      913 TEGAN
    NORMAL, IL                         NORMAL, IL
    MCLEAN COUNTY                      MCLEAN COUNTY
    61761                              61761


FORM NO. SNADEC    11/89PAGE    1 CONTINUED  ISSUED 08/30/06    AGENT COPY

SPP 2413256 00 20060830    OPTIPLAN-AGENT BILL                12 N 00 13  R
                                                             AC00001030


              STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY              3

                    POLICY SCHEDULE OF NAMES AND ADDRESSES                    2

POLICY NUMBER SPP 2413256 00                                                 2


NAMED INSURED AND ADDRESS          AGENCY NAME, ADDRESS AND TELEPHONE NUMBER  2

    A-M LLC                             SNYDER AND SNYDER AGENCY INC
    C/O JOHN HAMILTON                   PO BOX 1546
    702 N CLINTON                       BLOOMINGTON, IL
    BLOOMINGTON, IL                     61702
    61701
                                    PHONE: 309-664-1800
                                    AGENCY NUMBER: 0001030


    LOCATION 0009                       LOCATION 0010
    917 TEGAN                           919 TEGAN
    NORMAL, IL                          NORMAL, IL
    MCLEAN COUNTY                       MCLEAN COUNTY
    61761                               61761


    LOCATION 0011
    921 TEGAN
    NORMAL, IL
    MCLEAN COUNTY
    61761


FORM NO. SNADEC    11/89PAGE  2 LAST      ISSUED 08/30/06    AGENT COPY

SPP 2413256 00 20060830                              13 12 2413256 N083006
                          ORIGINAL COPY         OPTIPLAN-AGENT BILL
                                                             13  NAC

           STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY                3

                 COMMERCIAL UMBRELLA LIABILITY DECLARATIONS                  2

    POLICY NUMBER:  SPP 2413256 00                                          2

    NAMED INSURED AND ADDRESS:            AGENCY NAME, ADDRESS AND TELEPHONE:  2

        A-M LLC                           SNYDER AND SNYDER AGENCY INC
        C/O JOHN HAMILTON                 PO BOX 1546
        702 N CLINTON                     BLOOMINGTON, IL        61702
        BLOOMINGTON, IL        61701
                                          309-664-1800

    BRANCH:  13                           AGENCY NUMBER: 0001030

    POLICY PERIOD:    FROM:  JULY 31, 2006        TO:  JULY 31, 2007    AT
            12:01 AM   STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

    IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF
    THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN
    THIS POLICY.

    ITEM 1: NAMED INSURED (IF DIFFERENT THAN SHOWN ABOVE):

    ITEM 2: FORM OF NAMED INSURED'S BUSINESS: LIMITED LIABILITY CORPORATION

    ITEM 3: RETROACTIVE DATE:

    ITEM 4: LIMIT OF INSURANCE:
            POLICY AGGREGATE LIMIT  $ 5,000,000
            SELF-INSURED RETENTION  $               EACH INCIDENT OR OFFENSE
                                                    NOT COVERED BY UNDERLYING
                                                    INSURANCE

    ITEM 5: FORM(S)/ENDORSEMENT(S) ATTACHED TO POLICY AT INCEPTION: CXS0001 (12/04)
      CXS0002 (07/98)  CXS0012 (07/05) CXS2172 (12/02) CXS2176 (11/02)
      CXS2187 (05/04) CXS2155 (09/99) CXS4005 (07/98)

    ITEM 6: PREMIUM COMPUTATION:
            TOTAL ESTIMATED PREMIUM (SUBJECT TO AUDIT) $ 2050
            TERRORISM INSURANCE COVERAGE INCLUDED      $ 0

            PREMIUM ADJUSTABLE AT RATE OF $        PER        OF
            SUBJECT TO MINIMUM PREMIUM OF $

    ITEM 7: SCHEDULE OF UNDERLYING INSURANCE:

| TYPE | AUTO LIABLITY | GENERAL LIABILITY | EMPLOYERS LIAB. |
|---|---|---|---|
| COMPANY | STATE AUTO INSURANCE | STATE AUTO INSURANCE | |
| POLICY NO. | BAP 2176723 | SPP 2413256 | |
| POLICY PERIOD | FROM 07/31/06 TO   07/31/07 | FROM 07/31/06 TO   07/31/07 | FROM TO |
| LIMITS OF LIABILITY | EACH ACCIDENT $ 1,000,000 OR BODILY INJURY EACH PERSON $ BODILY INJURY EACH ACCIDENT $ PROPERTY DAMAGE EACH ACCIDENT $ | GENERAL AGGREGATE $ 2,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE $ 2,000,000 PERSONAL AND ADVERTISING INJURY $ 1,000,000 EACH OCCURRENCE $ 1,000,000 | BODILY INJURY EACH ACCIDENT $ BODILY INJURY BY DISEASE EACH EMPLOYEE $ BODILY INJURY BY DISEASE POLICY LIMIT $ |

    IF GENERAL LIABILITY IS CLAIMS MADE, ITS RETROACTIVE DATE IS:

    ISSUE DATE 08/30/06         COUNTERSIGNED BY:
                                                 ------------------------
    CXS 0002-D (03/03)                           AUTHORIZED REPRESENTATIVE

## COMMERCIAL UMBRELLA COVERAGE FORM

PLEASE READ THIS POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS. WE HAVE NO DUTY TO PROVIDE COVERAGE UNLESS THERE HAS BEEN FULL COMPLIANCE WITH ALL THE CONDITIONS – SECTION V – OF THIS POLICY.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us", and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section III – Who Is An Insured, beginning on page 11.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions, beginning on page 17.

Section I  Insuring Agreements

In consideration of the payment of premium and in reliance upon representations you made to us during the process of obtaining this insurance and subject to the Limit of Insurance shown in Item 4 of the Declarations, and all the exclusions, terms and conditions of this policy, we agree with you as follows:

Coverage A.  Bodily Injury And Property Damage Liability

1.   Insuring Agreement

   a.   We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

       (1)  The amount we will pay for "ultimate net loss" is limited as described in Section IV – Limit Of Insurance;

       (2)  At our discretion, we may investigate any "occurrence" and settle any resulting "claim" or "suit";

       (3)  We have a right and duty to defend the insured against any "suits" to which this insurance applies:

           (a)  But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or

           (b)  If the applicable limit of "underlying insurance" is exhausted.

           However, we will have no duty to defend the insured against any "suits" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply; and

       (4)  Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages A and B.

       No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section II – Defense.

   b.   It is agreed that this insurance only applies if:

       (1)  The "bodily injury" or "property damage" occurs during the policy period of this policy;

       (2)  With respect to your liability (other than under a contract) for "bodily injury" to your "employees" arising out of and in the course of their employment by you:

           (a)  Any "bodily injury" by disease is caused or aggravated by the conditions of that employment; and

           (b)  An "employee's" last day of last exposure to conditions causing or aggravating such disease occurs during the policy period of this policy; and

       (3)  The "bodily injury" or "property damage" is caused by an "occurrence", and such "occurrence" takes place in the "coverage territory".

       (4)  Prior to the policy period, no insured listed under Paragraph 1. of Section III – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c.   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section III – Who Is An

Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section III – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. "Ultimate net loss" because of "bodily injury" includes damages sought by any person or organization for care or loss of services resulting at any time from the "bodily injury".

2. Exclusions. This insurance does not apply to:

a. "Bodily injury" or "property damage" either expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract";

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; and

(c) The indemnitor insured's "underlying insurance" also deems these expenses to be damages.

c. Liability imposed on the insured or the insured's insurer, under any of the following laws:

(1) Employees' Retirement Income Security Act of 1974 (E.R.I.S.A.) as now or hereafter amended, or any similar state or other governmental law;

(2) Any uninsured motorists, underinsured motorists, or automobile no-fault or first party "bodily injury" or "property damage" law; or

(3) Any workers compensation, unemployment compensation or disability benefits law or any similar law.

d. The insured's liability (other than under an "insured contract") for "bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister, or other dependents of that "employee" as a consequence of d.(1) above.

But this exclusion d.(1) and d.(2) applies only with respect to:

(1) "Bodily injury" to any person in work subject to the Longshore and Harbor Workers Compensation Act (33 USC Sections 901-950), the Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), and any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

CXS 00 01 12 04

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Page 2 of 21

   (2) "Bodily injury" to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an "employee" due to "bodily injury" arising out of or in the course of employment, or any amendments to those laws;

   (3) "Bodily injury" to a master or member of the crew of any vessel;

   (4) Fines or penalties imposed for violation of federal or state law;

   (5) Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws;

   (6) Punitive or exemplary damages because of "bodily injury" to any "employee" employed in violation of law;

   (7) "Bodily injury" to an "employee" while employed in violation of law with the insured's actual knowledge or the actual knowledge of any of your "executive officers"; and

   (8) "Bodily injury" to an "employee" if such employment is subject to the workers compensation laws of the states of Massachusetts, Missouri, New Jersey, New York or any other state which requires unlimited Employers Liability coverage in conjunction with primary Workers Compensation policies.

This exclusion d. applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such injury.

With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of their employment by you, exclusions f., g., and h. do not apply.

e.  "Bodily injury" to:

   (1) A person arising out of any:

     (a) Refusal to employ that person;

     (b) Failure to promote an employee;

     (c) Discipline, demotion, negligent evaluation or negligent reassignment;

     (d) Termination of that person's employment;

     (e) Employment-related practices, policies, acts or omissions, including, without limitation, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

     (f) Oral or written publication of materials that slanders, defames or libels an "employee" or violates or invades an "employee's" right of privacy.

   (2) The spouse, child, parent, brother or sister, or any other dependents of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraph e.(1) above is directed.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

f.  Pollution:

   (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants":

     (a) That are, or that are contained in any property that is:

       (i) Being transported or towed by, handled, or handled for movement into, onto or from an "auto" covered by "underlying insurance";

       (ii) Otherwise in the course of transit by or on behalf of the insured; or

       (iii) Being stored, disposed of, treated or processed in or upon an "auto" covered by "underlying insurance";

     (b) At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any insured. However, this subparagraph f.1.(b) does not apply to:

       (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the

building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

    (ii)  "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than the additional insured; or

    (iii)  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (c)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (d)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i)  Any insured; or

    (ii)  Any person or organization for whom you may be legally responsible; or

  (e)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph f.(1)(e) does not apply to:

    (i)  "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii)  "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii)  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

  (f)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

  (2)  Any loss, cost or expense arising out of any:

  (a)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

  (b)  "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

  (3)  Exceptions:

  (a)  Paragraphs f.(1)(a) through f.(1)(e) of this exclusion do not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto" covered by "underlying insurance", or the parts of such an "auto", if:

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

    (i) The pollutants escape or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants; and

    (ii) The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in paragraphs f.(2) and f.(3) of the definition of "mobile equipment".

  (b) Paragraphs f.(1)(c) through f.(1)(f) of this exclusion do not apply to pollutants that are not in or upon an "auto" covered by "underlying insurance" if:

    (i) The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto" covered by "underlying insurance"; and

    (ii) The discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage.

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or chartered, rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrong doing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of aircraft, or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) Watercraft while ashore on premises you own or rent;

(2) Watercraft you do not own that are:

  (a) Less than 26 feet long; and

  (b) Not being used to carry persons or property for a charge; or

(3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

h. "Bodily injury" or "property damage" arising out of the use of any "mobile equipment" or "auto" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i. "Bodily injury" or "property damage" however caused, arising, directly or indirectly, out of:

(1) War,  including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j. "Property damage" to:

(1) Property you own, rent, or occupy; including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of any insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph j.(2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Paragraphs j.(3), j.(4), j.(5) and j.(6) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph j.(6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.   "Property damage" to "your product" arising out of it or any part of it.

l.   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o.   "Bodily injury" arising out of "personal and advertising injury".

p.   Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q.   "Bodily injury" or "property damage" arising out of:

(1) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

(2) The use of asbestos in constructing or manufacturing any goods, product or structure;

(3) The removal of asbestos from any goods, product or structure;

(4) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

(5) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with actions described in subparagraphs p.(1) through p.(4) of this exclusion; or

(6) Any obligation to share damages with or repay someone else who must pay damages in connection with actions described in parts p.(1) through p.(5) of this exclusion.

r.   "Bodily injury" or "property damage" arising out of any form of lead or lead compounds. In addition, this insurance does not apply to any loss, cost or expense arising out of:

(1) Any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead or lead compounds;

(2) Any "claim" or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

(3) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds; or

(4) Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

s.  "Bodily injury" or "property damage" arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

t.  Any obligation arising out of the administration of any employee benefit plan.

u.  Any "wrongful act" of any director or "executive officer" of any insured in the discharge or performance of their duties as such.

v.  "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion u. applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

w.  "Bodily injury" or "property damage":

(1) With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) Resulting from the "hazardous properties" of "nuclear material", if:

(a) The "nuclear material":

(i) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

(ii) Has been discharged or dispersed there from;

(b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" include radioactive, toxic or explosive properties;

(2) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

(5) "Waste" means any waste material:

(a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

(b) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility";

(6) "Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for:

(i)  Separating the isotopes of uranium or plutonium;

(ii)  Processing or utilizing "spent fuel"; or

(iii)  Handling, processing or packaging "waste";

(c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

(d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(7)  "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8)  "Property damage" includes all forms of radioactive contamination of property.

Coverage B.  Personal And Advertising Injury Liability

1.  Insuring Agreement

a.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

(1)  The amount we will pay for the "ultimate net loss" is limited as described in Section IV – Limit Of Insurance;

(2)  At our discretion, we may investigate any offense and settle any resulting "claim" or "suit";

(3)  We have a right and duty to defend the insured against any "suits" to which this insurance applies:

(a)  But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or

(b)  If the applicable limit of "underlying insurance" is exhausted.

However, we will have no duty to defend the insured against any "suits" seeking damages for "personal and advertising injury" to which this insurance does not apply; and

(4)  Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages A and B.

No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section II – Defense.

b.  This insurance applies only to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

2.  Exclusions. This insurance does not apply to:

a.  "Personal and advertising injury"

(1)  Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2)  Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3)  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4)  Arising out of a criminal act committed by or at the direction of the insured;

(5)  For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6)  Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7)  Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(10) Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web-sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 16.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

(12) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

(13) Arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants" at any time;

(14) Arising out of:

(a) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

(b) The use of asbestos in constructing or manufacturing any good, product or structure;

(c) The removal of asbestos from any good, product or structure;

(d) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

(e) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts (14) (a) through (14) (d) of this exclusion; or

(f) Any obligation to share damages with or repay someone else who must pay damages in connection with parts (14) (a) through (14) (e) of this exclusion.

(15) Arising out of any form of lead or lead compounds. In addition, any loss, cost or expense arising out of:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead or lead compounds;

(b) "Claim" or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

(c) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds; or

(d) Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

(16) Arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

(17) Arising out of any "wrongful act" of any director or "executive officer" of any insured in the discharge or performance of their duties as such.

(18) To:

(a) A person arising out of any:

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

      (i)    Refusal to employ that person;

      (ii)   Failure to promote an employee;

      (iii)  Discipline, demotion, negligent evaluation or negligent reassignment;

      (iv)  Termination of that person's employment;

      (v)   Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

      (vi)  Oral or written publication of materials that slanders, defames or libels an "employee" or violates or invades an "employee's" right of privacy.

   (b)  The spouse, child, parent, brother or sister, or any other dependents of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraph (18) (a) of this exclusion were directed.

   (c)  This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "personal and advertising injury".

  (19) However caused, arising, directly or indirectly, out of:

    (a)  War,  including undeclared or civil war;

    (b)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (c)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

b.  Any loss, cost or expense arising out of any:

  (1)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

  (2)  "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## Section II Defense

1.  When we have the duty to defend, or we investigate or settle any offense, "occurrence", "claim" or "suit", and then only to the extent that "underlying insurance" is not responsible for the costs shown below in items a. through f., we will pay on behalf of the insured:

  a.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies.  We do not have to furnish these bonds.

  b.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

  c.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

  d.  All costs taxed against the insured in any "suit" we defend.

  e.  "Pre-judgment interest" awarded against the insured on that part of any judgment covered under this policy. If we offer the applicable Limit of Insurance in settlement of a "claim" or "suit", we will not pay for any "pre-judgment interest" imposed or earned after the date of such offer.

  f.  All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of any judgment that is within the applicable Limit of Insurance.

2.  Payments under this section of the policy, as well as payments for all expenses we incur, will not reduce the Limit of Insurance.

3.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the offense or "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the conditions in this subparagraph f. are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid under Section II – Defense. Notwithstanding the provisions of paragraph 2.b.(2) of Coverage A. – Bodily Injury And Property Damage Liability (Section I – Insuring Agreements), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

4. Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses under Section II – Defense ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph 3.f. above, are no longer met by the indemnitee.

Section III  Who Is An Insured

1. If you are designated in the Declarations as:

a. An individual, you, as a natural person, and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Except with respect to any "auto", your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, or joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Except with respect to any "auto" or any "mobile equipment" registered in your name under any motor vehicle registration law, each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for :

(1) "Bodily injury" or "personal and advertising injury":

    (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

    (b) To the spouse, child, parent, brother or sister, or other dependent of that co-"employee" as a consequence of paragraph 2.a.(1)(a) above;

    (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs 2.a.(1)(a) or 2.a.(1)(b) above; or

    (d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

    (a) Owned, occupied or used by; or

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

You, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

e. Any person or organization qualifying as an insured under any policy of "underlying insurance".

(1) Coverage afforded such insureds under this policy applies only to injury or damage:

    (a) Which is covered by this policy; and

    (b) Which is covered by the "underlying insurance" or would be covered but for the exhaustion of such policy's limits of insurance.

(2) This policy shall not afford such person or organization limits of insurance in excess of:

    (a) The minimum limit of insurance you agreed to provide; or

    (b) The limit of insurance under this policy,

whichever is less.

f. Any person or organization for whom you have agreed in writing prior to any "occurrence" or offense to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf, or facilities owned or used by you. This policy shall not afford such person or organization limits of insurance in excess of:

(1) The minimum limit of insurance you agreed to provide; or

(2) The limit of insurance under this policy,

whichever is less.

3. With respect to any "auto" or any "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while operating such "auto" or "mobile equipment" with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the "auto" or registered "mobile equipment".

However, except with respect to your partners, "employees", or members of their households, the owner or anyone else from whom you hire or borrow an "auto" is an insured only if that "auto" is a trailer connected to an "auto" you own.

But no person or organization is an insured under this paragraph 3. for:

a. "Bodily injury" to a co-"employee" of the person operating the "auto" or "mobile equipment";

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

b. "Property damage" to property owned by the employer of any person who is an insured under this provision;

c. Any "auto" you hire or borrow from one of your partners, "employees" or members of their households, if they are the owner of such "auto", unless:

    (1) Insurance is afforded to that owner for such "auto" by "underlying insurance", or would be afforded under such "underlying insurance" but for exhaustion of such policy's limits of insurance; or

    (2) Such "auto" is a trailer connected to an "auto" you own;

d. Any "auto" being used by a person employed in the business of selling, servicing, repairing, or parking "autos" unless they are your "employee"; or

e. The movement of property to or from an "auto" except your "employees" or partners, the lessees or borrowers of such "auto", and any "employees" of such lessees or borrowers.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a named insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period set forth in the Declarations, whichever is earlier;

b. Coverage is applicable only in excess of the Limits of "underlying insurance" as shown in Item 7 of the Declarations, and you must add such organization to your "underlying insurance" as soon as practicable, advising us of such additions. We may then make adjustment of premium charges as called for in Condition 9 – Maintenance of Underlying Insurance;

c. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

d. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the Declarations.

Section IV  Limit Of Insurance

1. The Policy Aggregate Limit shown in Item 4 of the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. "Claims" made or "suits" brought; or

c. Persons or organizations making "claims" or bringing "suits".

2. The Policy Aggregate Limit is the most we will pay for:

a. All "ultimate net loss" under Coverage A and Coverage B combined, except "ultimate net loss" because of injury and damage arising from the "automobile hazard"; and

b. Each "occurrence" with regard to "ultimate net loss" because of injury and damage arising from the "automobile hazard".

3. If the Policy Aggregate Limit is paid prior to this policy's termination date for losses other than losses arising from the "automobile hazard", this policy's premium is fully earned.

4. The Policy Aggregate Limit applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

Section V  Conditions

1. Appeals. In the event the insured or any "underlying insurer" elects not to appeal a judgment for damages covered by this policy and which exceeds the "retained limit", we may elect, but have no duty, to do so. We shall be liable, in addition to the Limit of Insurance, for all costs and expenses incurred and interest on judgments incidental to such an appeal and for all such costs, expenses and interest on appeals in connection with our right and duty to defend the insured under this policy.

2. Bankruptcy. Bankruptcy, insolvency, or receivership of the insured, the insured's estate or of any "underlying insurer" will not relieve us of our obligations under this policy. With regard to bankruptcy, insolvency, or

receivership of any "underlying insurer", this policy shall not apply as a replacement of such bankrupt or insolvent insurer and our Limits of Insurance will apply only in excess of the required Limit(s) of Insurance stated in Item 7 of the Declarations of this policy.

3. Cancellation.

   a. The first named insured shown in the Declarations may cancel this policy by delivering it to us or any of our authorized agents or by sending us written notice stating when the future cancellation will take effect. Cancellation will become effective the date of delivery of the policy to us or upon such future date requested by the first named insured.

   b. We may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least:

      (1) Ten (10) days before the effective date of cancellation if we cancel because of nonpayment of premium whether payable directly to us or payable to our agents or others under any installment payment plan, premium finance plan, extension of credit or other payment plan; or

      (2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

   c. We will mail or deliver our notice to the first named insured's last mailing address known to us.

   d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   e. If this policy is canceled, we will send the first named insured any premium refund due. If we or the first named insured cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered any refund of unearned premium.

   f. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Changes. This policy contains all the agreements between you and us concerning the insurance afforded. The first named insured shown in the Declarations is authorized to make changes in the terms of this policy upon our giving written consent. This policy's terms can be amended or waived only by endorsement to this policy issued by us and made a part of this policy.

5. Duties In The Event Of Occurrence, Offense, Claim Or Suit.

   a. You must see to it that we or our authorized representative are notified as soon as practicable of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:

      (1) How, when, and where the "occurrence" or alleged offense took place;

      (2) The insured's name and address;

      (3) The names and addresses of any injured persons or witnesses; and

      (4) The nature and location of any injury or damage arising out of the "occurrence" or offense.

      Notice of an "occurrence" or an offense is not notice of a "claim".

   b. If a "claim" is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we also receive written notice of the "claim" or "suit" as soon as practicable.

   c. You and any other insured involved in such "claim" or "suit" must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

   e. No insureds shall in any way jeopardize our rights after an "occurrence" or offense.

6. Examination of Your Books and Records. We may examine and audit your books and records as they relate to this policy at any time during the policy period set forth in the Declarations and up to three years afterward.

7. Inspection and Surveys.

   a. We have the right but are not obligated to:

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

    (1) Make inspections and surveys at any time;

    (2) Give you reports on the conditions we find; and

    (3) Recommend changes to such conditions.

b. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We also do not warrant that conditions:

    (1) Are safe or healthful; or

    (2) Comply with laws, regulations, codes or standards.

c. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

8. Legal Action Against Us.

a. No person or organization has a right under this policy:

    (1) To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    (2) To sue us under this policy unless all of its terms have been fully complied with.

b. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

9. Maintenance of Underlying Insurance.

a. You must keep the "underlying insurance" described in Item 7 of the Declarations, or renewal or replacement policies not more restrictive in their terms and conditions, in full force and effect during the policy period of this policy. The Limits of Insurance must be maintained without reduction other than by payment of losses covered thereunder. You must also inform us within 30 days of any termination of any policy of "underlying insurance", or replacement of any policy of "underlying insurance".

b. You must notify us immediately of any changes to the terms of any "underlying insurance" policies. We may adjust premium charges under this policy from the effective date of such changes to the terms of any "underlying insurance".

c. Your failure to comply with the foregoing paragraphs 9.a. and 9.b. will not invalidate this policy, but in the event of such failure, we shall be liable under this policy only to the extent that we would have been liable had you complied with these obligations.

10. Other Insurance. If other valid and collectible insurance is available to the insured for "ultimate net loss" we cover under this policy, our obligations under this policy are limited as follows:

a. This insurance is excess over:

    (1) Any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance; and

    (2) Any other insurance available to the insured, whether primary or excess, covering liability for damages arising out of premises or operations for which you have been added as an additional insured.

b. We will indemnify only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:

    (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (2) The total of all deductible and self-insured amounts under this or any other insurance.

c. We will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all other insurers in accordance with provisions of Condition 16 below.

11. Premium Audit.

a. We will compute all premiums for this policy in accordance with our rules and rates.

b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first named insured. If the sum of the advance and audit premiums paid for the policy term is

greater than the earned premium, we will return the excess to the first named insured, but not if such audit premium is less than the Minimum Premium shown in the Declarations.

   c.   The first named insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

12. Premiums. The first named insured shown in the Declarations:

   a.   Is responsible for the payment of all premiums; and

   b.   Will be the payee for any return premiums we pay.

13. Representations. By accepting this policy, you agree that:

   a.   The information shown on the Declarations is accurate and complete;

   b.   The information is based upon representations you made to us in your application(s) for this policy;

   c.   We have issued this policy in reliance upon your representations; and

   d.   Except as otherwise provided in this policy or by law, this policy is void if you conceal or misrepresent any material facts concerning this policy, in your application for this policy or otherwise.

14. Separation of Insureds. Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first named insured, this insurance applies:

   a.   As if each named insured were the only named insured; and

   b.   Separately to each insured against whom "claim" is made or "suit" is brought.

15. Sole Agent. The named insured first shown in Item 1 of the Declarations is authorized to act on behalf of all insureds with respect to giving or receiving notice of cancellation or nonrenewal, receiving refunds, and agreeing to any changes in this policy.

16. Transfer Of Rights Of Recovery Against Others To Us.

   a.   If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

   b.   Any recoveries shall be applied first to reimburse any interests (including the insured) that may have paid any amounts in excess of our liability under this policy; then to reimburse us for any payment hereunder; and lastly to reimburse such interests (including the insured) as to which this policy is excess, as are entitled to the residue, if any.

   c.   When we assist in pursuit of the insured's rights of recovery, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recoveries.

   d.   If there should be no recovery as a result of proceedings instituted solely at our request, we shall bear all expenses of such proceedings.

17. Transfer of Your Rights and Duties Under This Policy.

   a.   Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

   b.   If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

18. When Loss Payable. Our liability for any portion of "ultimate net loss" shall not apply until the insured or any "underlying insurer" shall be obligated to actually pay the full and complete amount of the "retained limit". When "ultimate net loss" has been finally determined, the insured may make "claim" for payment under this policy as soon as practicable thereafter. Such insured's obligation to pay any amount of "ultimate net loss" must have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant or the claimant's legal representative and us.

19. When We Do Not Renew.

   a.   If we decide not to renew this policy, we will mail or deliver to the first named insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date or such other period as may be required by law.

   b.   If notice is mailed, proof of mailing will be sufficient proof of notice.

**Section VI  Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporter is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment, or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Automobile hazard" means liability arising out of the ownership, maintenance, use or entrustment of any "auto". Use includes operation and "loading or unloading".

4. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

5. "Claim" means any demand upon the insured for damages or services alleging liability of the insured as the result of an "occurrence" or offense.

6. "Coverage territory" means:

   a. The United Sates of America  (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of :

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above , but is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

7. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

8. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

9. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

10. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or by your fulfilling the terms of the contract or agreement.

11. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of a contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement; or

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law for injury to persons or property in the absence of any contract or agreement.

Paragraph 11.f. does not include that part of any contract or agreement:

(1) That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in 11.f.(2) above and supervisory, inspection, architectural or engineering activities ;

(4) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver; or

(5) That holds a person or organization engaged in the business of transporting property by "auto" for hire, harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

12. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

13. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

14. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c., or d. immediately preceding that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

f. Vehicles not described in a., b., c., or d. of this section maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    (1) Equipment designed primarily for:

        (a) Snow removal;

        (b) Road maintenance, but not construction or resurfacing; or

        (c) Street cleaning;

    (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered autos.

15. "Occurrence" means:

a. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you; or

b. With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you, "bodily injury" caused by accident or disease.

16. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

17. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, without limitation, materials to be recycled, reconditioned or reclaimed.

18. "Pre-judgment interest" means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

19. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (a) When all of the work called for in your contract has been completed;

        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Those products or operations for which the applicable classification, under a policy of "underlying insurance", states that products-completed operations are subject to that policy's General Aggregate Limit.

20. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on created or used on, or transmitted to or from computer software, including systems and application software, hard or floppy disks, CD-ROMS, tapes drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

21. "Retained limit" means the greater of:

a. The sum of amounts applicable to any "claim" or "suit" from:

(1) "Underlying insurance", whether such "underlying insurance" is collectible or not; and

(2) Other collectible primary insurance; or

b. The "self-insured retention".

22. "Self-insured retention" means the amount in Item 4 of the Declarations.

23. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or submits with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured must submit or submits with our consent.

24. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

25. "Ultimate net loss" means the total amount of damages for which the insured is legally liable in payment of "bodily injury", "property damage" or "personal and advertising injury". "Ultimate net loss" must be fully determined as shown in Condition 18 – When Loss Payable. "Ultimate net loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by any insured, by us or by any "underlying insurer".

26. "Underlying insurance" means the coverage(s) afforded under insurance policies designated in Item 7 of the Declarations and any renewals or replacements of those policies.

27. Underlying insurer" means any company issuing any policy of "underlying insurance".

28. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

29. "Wrongful act" means any actual or alleged error, misstatement or misleading statement, act, omission or neglect or breach of duty by a director or "executive officer" in discharge of their duties, individually or collectively, or any matter claimed against them solely by reason of their being directors or officers of your business.

"Wrongful act" does not include "bodily injury", "property damage" or "personal and advertising injury" as defined in this coverage form.

30. "Your product":

    a.  Means:

        (1)  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a)  You;

            (b)  Others trading under your name; or

            (c)  A person or organization whose business or assets you have acquired; and

        (2)  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.  Includes:

        (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2)  The providing of or failure to provide warnings or instructions.

    c.  Does not include vending machines or other property rented to or located for the use of others but not sold.

31. "Your work":

    a.  Means:

        (1)  Work or operations performed by you or on your behalf; and

        (2)  Materials, parts or equipment furnished in connection with such work or operations.

    b.  Includes:

        (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2)  The providing of or failure to provide warnings or instructions.

## Conditions Applicable To State Automobile Mutual Insurance Company

1. Dividends. You are entitled to the proportionate part of any policyholder's dividend if declared by our Board of Directors in accordance with its by-laws.

2. Notice of Policyholders Meetings. While your policy is in force, you are one of our members and are entitled, in person or by proxy, to one vote at all meetings of the members. The annual meeting of the members is held at 9 o'clock A.M., Columbus time, on the first Friday of March of each year at our Home Office, 518 East Broad Street, Columbus, Ohio.

3. Non-assessable. This policy is non-assessable and the insured shall not be liable for the payment of any assessment nor for the payment of the premium other than that stated in this policy.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at Columbus, Ohio and countersigned on the Declarations Page by our duly authorized agent of the State Auto Insurance Companies.

*John R Lowther*

Secretary

*Robert H Moone*

President

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

**E-FILED**
Friday, 15 February, 2008  12:13:55 PM
Clerk, U.S. District Court, ILCD

# COMMERCIAL UMBRELLA

## LIABILITY POLICY

**State Automobile Mutual Insurance Company**
Corporate Office • 518 East Broad Street • Columbus, Ohio 43215 • • 614-464-5000

**State Auto Property and Casualty Insurance Company**
1125 Main Street • Greer, South Carolina • 29651 • 803-877-8311

**Milbank Insurance Company**
107 Egan Drive • Milbank, South Dakota • 57252-1537 • • 605-432-5551

**Farmers Casualty Insurance Company**
4800 Woodland Avenue • West Des Moines, Iowa • 50265-0130 • • 515-223-9438

Corporate Office
State Auto Insurance Companies • 518 East Broad Street • Columbus, Ohio 43215-3976 • • 614-464-5000

CXS-0002  (07/98)

# COMMERCIAL UMBRELLA LIABILITY POLICY QUICK REFERENCE

READ YOUR POLICY CAREFULLY. This cover sheet provides only a brief outline of some of the important features of your Policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself is a legal contract between you and your insurance company and sets forth, in detail, the rights and obligations of both you and your insurance company. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.

## DECLARATIONS PAGE(S)

Named Insured and Mailing Address
Agency name, address & telephone
Policy Period
Form of Named Insured's business
Retroactive date (if any)
Limit of insurance
Forms/Endorsements attached
Premium
Schedule of underlying insurance

|  | Form CXS0001, Beginning On Page |
| --- | --- |
| Section I – Insuring Agreement Coverage A. Bodily Injury and Property Damage Liability | 1 |
| Exclusions | 2 |
| Coverage B. Personal and Advertising Injury Liability | 5 |
| Exclusions | 8 |
| Section II – Defense | 10 |
| Section III – Who is an insured | 11 |
| Section IV – Limits of Insurance | 12 |
| Section V – Conditions | 13 |
| Section VI – Definitions | 17 |
| Conditions Applicable to State Automobile Mutual Insurance Company | 21 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A.  Paragraph 3., Cancellation, of Section V – Conditions is replaced by the following:

   3.  Cancellation.

      a.  The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

      We may cancel this policy by mailing to you written notice stating the reason for cancellation.  If we cancel:

         (1)  For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

         (2)  For a reason other than nonpayment of premium, we will mail the notice at least:

            (a)  30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

            (b)  60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

      b.  If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

         (1)  Nonpayment of premium;

         (2)  The policy was obtained through a material misrepresentation;

         (3)  Any insured has violated any of the terms and conditions of the policy;

         (4)  The risk originally accepted has measurably increased;

         (5)  Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

         (6)  A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

      c.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

      d.  If this policy is cancelled we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund will be less than pro rata.  The cancellation will be effective even if we have not offered a refund.

B.  Paragraph 19., When We Do Not Renew, of Section V – Conditions is replaced by the following:

   19.  When We Do Not Renew.

   If we decide not to renew or continue this policy we will mail you and your agent or broker written notice, stating the reason for nonrenewal at least 60 days before the end of the policy period.  If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period.  Failure to pay the required renewal or continuation premium when due shall mean that your have not accepted our offer.

   If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

CXS 00 12 (07/98)          Copyright, Insurance Services Office, Inc.          Page 1 of 2

C. The following condition is added to Section V – Conditions and supersedes any provision to the contrary:

    20. Mailing of Notices. We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

D. Paragraph 5., Duties In The Event Of Occurrence, Offense, Claim Or Suit, of Section V – Conditions is replaced by the following:

    5. Duties In The Event Of Occurrence, Offense, Claim or Suit.

        a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:

            (1) How, when and where the "occurrence" or offense took place;

            (2) The names and addresses of any injured persons and witnesses; and

            (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

        b. If a "claim" is made or "suit" is brought against any insured, you must:

            (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

            (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

        c. You and any other involved insured must:

            (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

            (2) Authorize us to obtain records and other information;

            (3) Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

            (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

        d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Copyright, Insurance Services Office, Inc.

COMMERCIAL UMBRELLA
CXS 21 72 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is not a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

1. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Form or underlying insurance.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   **a.** The act resulted in aggregate losses in excess of $5 million; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

     © ISO Properties, Inc., 2002     Exhibit A - Page 5 of 2     Page 5 of 96

**D.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

COMMERCIAL UMBRELLA
CXS 21 76 11 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

B. The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc.,  2002

COMMERCIAL GENERAL LIABILITY
CXS 21 87 05 04

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A. **Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

    a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

    b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

    (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

    (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

    (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

2. If the provisions of this endorsement become applicable, such provisions:

    a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

    b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

CXS 21 87 05 04                      © ISO Properties, Inc., 2004                      **Page 1 of 2**      ☐

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

    a. That involve the following or preparation for the following:

        (1) Use or threat of force or violence; or

        (2) Commission or threat of a dangerous act; or

        (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    b. When one or both of the following applies:

        (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a. Physical injury that involves a substantial risk of death; or

    b. Protracted and obvious physical disfigurement; or

    c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Exclusion f. of Paragraph 2., Exclusions, of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

f.   This insurance does not apply to:

1.   "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

     This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

     a.   At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

     b.   At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

2.   Any loss, cost or expense arising out of any:

     a.   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants"; or

     b.   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CXS 21 55 (09/99)     Copyright, Insurance Services Office, Inc.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EMPLOYERS' LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Exclusion d. of paragraph 2., Exclusions, of Section I – Coverage A – Bodily Injury And Property Damage Liability is deleted and replaced by the following:

This insurance does not apply to "bodily injury" (other than liability assumed by the insured under an "insured contract") to:

1.  An "employee" of the insured arising out of and in the course of:

    a.  Employment by the insured ; or

    b.  Performing duties related to the conduct of the insured's business; or

2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of 1. above.

This exclusion applies:

1.  Whether the insured may be liable as an employer or in any other capacity; and

2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CXS 40 05 (07/98)



```
SPP 2413256 00 20060830                          13 12 2413256 N083006
                            ORIGINAL COPY       OPTIPLAN-AGENT BILL
                                                             13  NAC

           STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY              3

                  COMMERCIAL INLAND MARINE DECLARATIONS                    2

   POLICY NUMBER:  SPP 2413256 00                                         2

   NAMED INSURED AND ADDRESS:          AGENCY NAME, ADDRESS AND TELEPHONE: 2

      A-M LLC                             SNYDER AND SNYDER AGENCY INC
      C/O JOHN HAMILTON                   PO BOX 1546
      702 N CLINTON                       BLOOMINGTON, IL        61702
      BLOOMINGTON, IL      61701
                                          309-664-1800

   BRANCH:  13                          AGENCY NUMBER: 0001030

   POLICY PERIOD:   FROM: JULY 31, 2006      TO: JULY 31, 2007     AT
            12:01 AM   STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

   IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF
   THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN
   THIS POLICY.


         COVERAGE PARTS THAT
         APPLY TO THIS POLICY                 COVERAGE PART PREMIUM
         --------------------                 ---------------------
   INSTALLATION COVERAGE                      $3000




   TERRORISM INSURANCE COVERAGE               $  90



             TOTAL INLAND MARINE POLICY PREMIUM   $ 3090

   ENDORSEMENTS THAT APPLY TO THIS INLAND MARINE POLICY INCLUDE THE INLAND
   MARINE POLICY JACKET (FORM FI-102 04/96, WITH COMMON POLICY CONDITIONS AND
   OTHER PROVISION) AND THE FOLLOWING ADDITIONAL COVERAGE FORMS AND
   ENDORSEMENTS:

   CL0600 05/03
   CL0650 12/02
   CL1630 06/04
   IL0999 05/04
   IM3009 05/99
   CL0121 05/03
   IM0871 06/02
   IM7100 1.0
   IM7105 1.0


     ISSUE DATE 08/30/06          COUNTERSIGNED BY:
                                            --------------------------
                                            AUTHORIZED REPRESENTATIVE




   FI 101 D (04/96)
```



**STATE AUTO**®
Insurance Companies

This endorsement changes
the policy
- PLEASE READ THIS CAREFULLY

# CERTIFIED TERRORISM LOSS

1. The following definitions are added.
   a. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
      1) to be an act of terrorism;
      2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;
      3) to have resulted in damage:
         a) within the United States; or
         b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission; and
      4) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

   No act will be certified by the Secretary of the Treasury as an act of terrorism if the act is committed as part of the course of a war declared by the Congress (except with respect to any coverage for workers' compensation) or if property and casualty insurance losses resulting from the act do not exceed $5,000,000 in the aggregate.

   b. "Certified terrorism loss" means loss that results from a "certified act of terrorism".
2. The "terms" of any terrorism exclusion that is part of or that is attached to this Coverage Part are amended by the following provision:
   This exclusion does not apply to "certified terrorism loss".
3. The following provision is added.
   If the Secretary of the Treasury determines that the amount of "certified terrorism loss" has exceeded the maximum annual liability as set forth by the Federal Terrorism Risk Insurance Act of 2002 or any amendments thereto, "we" will not pay for any portion of "certified terrorism loss" that exceeds the maximum annual liability.
4. The following provisions are added.
   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion; and
   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

CL 06 00 05 03 Page 1 of 1
*//*CL 06 00 05 03

Copyright, American Association of Insurance Services, Inc., 2003



STATE AUTO®
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BIOLOGICAL AND CHEMICAL NON-CERTIFIED ACT OF TERRORISM EXCLUSION AND WAR AND MILITARY ACTION EXCLUSION

1. The following definitions are added.
   a. "Non-certified act of terrorism" means a violent act or an act that is dangerous to human life, property, or infrastructure that:
      1) is committed by an individual or individuals; and
      2) appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion; and
      3) is not certified as a terrorist act pursuant to the Federal Terrorism Risk Insurance Act of 2002 or any amendments thereto.
   b. "Non-certified terrorism loss" means any loss that results from a "non-certified act of terrorism".
2. Under Perils Excluded (or under Exclusions in form GS-200), the War Exclusion, wherever it appears, is deleted and replaced by the following:
   **WAR AND MILITARY ACTION EXCLUSION**
   "We" will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
   a. War, including undeclared or civil war; or
   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
   With respect to any action that comes within the "terms" of this exclusion and involves nuclear reaction or radiation or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.
3. The following Non-certified Act of Terrorism Exclusion is added. The Non-certified Act of Terrorism Exclusion applies only to an incident of "non-certified terrorism loss":

   a. that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
   b. in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

   However, the Non-certified Act of Terrorism Exclusion does not apply to any loss that results from an act that is not certified by the Secretary of the Treasury to be an act of terrorism solely because the property and casualty insurance losses resulting from that act do not exceed $5,000,000 in the aggregate.

   **NON-CERTIFIED ACT OF TERRORISM EXCLUSION**
   "We" will not pay for loss or damage caused directly or indirectly by a "non-certified act of terrorism", including action in hindering or defending against an actual or expected "non-certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
4. The following provisions are added.
   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion; and
   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

**CL 06 50 12 02 Page 1 of 1**
*//*CL0650-200212

Copyright, American Association of Insurance Services, Inc., 2002

3    Printed:
01/23/03    11:19:21


**STATE AUTO®**
Insurance Companies

This endorsement changes
the policy
- PLEASE READ THIS CAREFULLY -

# CONDITIONAL TERRORISM EXCLUSION

## NOTICE

The Terrorism Risk Insurance Program (the Program), which was established by the federal law known as the Terrorism Risk Insurance Act of 2002, is scheduled to terminate on December 31, 2005.

The Terrorism Exclusion found in this endorsement will apply only if the federal government does not renew, extend, or otherwise continue the Program or if the conditions, definitions, or requirements of the Program are changed by the federal government and federal law no longer requires that we make Terrorism Coverage available to you.

1. The Terrorism Exclusion set forth by this endorsement becomes effective on the earliest of the following:
   a. the date that the federal Terrorism Risk Insurance Program (the Program) established by the Terrorism Risk Insurance Act of 2002 has terminated with respect to the type of insurance provided by the Coverage Part to which this endorsement applies; or
   b. the effective date of a renewal, extension, or continuation of the Program, if federal law no longer requires that "we" make terrorism coverage available to "you" and the Program has been renewed, extended, or continued subject to changes that:
      1) redefine terrorism; or
      2) increase "our" financial exposure under the Program; or
      3) impose requirements on insurance coverage for terrorism that differ from the terms, amounts, or other limitations that otherwise govern coverage for loss or damage under the "terms" of the Coverage Part to which this endorsement applies.

2. If the Terrorism Exclusion set forth by this endorsement becomes effective, this Terrorism Exclusion:
   a. supersedes any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the Coverage Part to which this endorsement applies, but only with respect to loss or damage caused by one or more incidents of terrorism that occur on or after the effective date of this Terrorism Exclusion; and

   b. remains in effect unless "we" notify "you" of changes to this Terrorism Exclusion.

3. If none of the conditions described above under items **1.a.** and **1.b.** occur, any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the Coverage Part to which this endorsement applies continue to apply until "we" notify "you" of changes to such other endorsements.

4. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:
   "Terrorism" means activities against persons, organizations, or property of any nature:
   a. that involve the following or preparation for the following:
      1) use or threat of force or violence; or
      2) commission or threat of a dangerous act; or
      3) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and
   b. when one or both of the following applies:
      1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
      2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

**CL 16 30 06 04 Page 1 of 2**
»//»CL 16 30 06 04

Copyright, American Association of Insurance Services Inc. 2003

13
08/20/07   Printed:
09:57:59


**STATE AUTO®**
Insurance Companies

**5.** The following exclusion is added:
**TERRORISM EXCLUSION**
We" will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":
**a.** the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or
**b.** radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or
**c.** the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
**d.** pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or
**e.** the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico, and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, "we" will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage

that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

Item **5.e.** above describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Terrorism Exclusion will apply to that incident. When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Coverage Part to which this endorsement applies.
**6.** When the Terrorism Exclusion set forth by this endorsement applies due to an incident of "terrorism" described above under items **5.a.** or **5.b.**, that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the Coverage Part to which this endorsement applies.
**7.** The following provisions are added.
**a.** Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the Coverage Part to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that Coverage Part under:
   **1)** exclusions that address war, military action, or nuclear hazard; or
   **2)** any other exclusion.
**b.** The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the Coverage Part to which this endorsement applies under:
   **1)** exclusions that address war, military action, or nuclear hazard; or
   **2)** any other exclusion.

**CL 16 30 06 04 Page 2 of 2**
*//*CL 16 30 06 04

Copyright, American Association of Insurance Services Inc. 2003

POLICY NUMBER:

IL 09 99 05 04

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)

**SCHEDULE**

---

Terrorism Premium (Certified Acts)

(A) Premium through 12/31/05    $

(B) Estimated Premium beyond 12/31/05 (refer to Paragraph C. below)    $

Additional information, if any, concerning the terrorism premium:

---

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

## C. Possibility Of Additional Or Return Premium

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act of 2002. The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

AAIS
IM 30 09 Ed 05 99
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
# ILLINOIS

1. Under Perils Excluded, if applicable, the following addition amends Criminal, Fraudulent, or Dishonest Acts:

   However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

   a. arose out of a pattern of criminal domestic violence; and

   b. the perpetrator of the loss is criminally prosecuted for the act causing the loss;

   this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   "Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

2. Under Other Conditions, the Appraisal condition is amended by the following addition:

If "you" request an appraisal and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

3. Under Other Conditions, the Misrepresentation, Concealment, or Fraud condition is deleted and replaced by:

   **Misrepresentation, Concealment, or Fraud** -- "We" do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or
      2) an insured's interest herein.

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

4. Under Other Conditions, the Suit Against Us condition is amended by the following addition:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

**IM 30 09 Ed 05 99**
Copyright, American Association of Insurance Services, 1999


**STATE AUTO®**
Insurance Companies

This endorsement changes
the policy
- PLEASE READ THIS CAREFULLY -

# AMENDATORY ENDORSEMENT
## ILLINOIS

1. Under Common Policy Conditions, Cancellation is deleted and replaced by the following:
**Cancellation -**
   a. "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.
   b. "We" may cancel this policy by mailing "our" written notice of cancellation to "you" and any mortgagee or lienholder at the last mailing address known to "us". "Our" notice will include the reason or reasons for cancellation. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.
   c. During the first 60 days this policy is in effect, "we" may cancel this policy for any reason. If "we" cancel for any reason other than those listed in d. or e. below, "we" will mail the notice of cancellation 30 days before the effective date of cancellation.
   d. For policies not issued to cover one- to four-family dwellings, "we" may cancel this policy at any time during the policy period, if the insured property consists of one or more buildings:
      1) to which, following a fire loss, permanent repairs have not commenced within 60 days after satisfactory adjustment of loss, unless such delay is a direct result of a labor dispute or weather conditions;
      2) that have been unoccupied for 60 consecutive days, except buildings which have a seasonal occupancy and buildings which are undergoing construction, repair, or reconstruction and are properly secured against unauthorized entry;
      3) for which, because of their physical condition, there is an outstanding demolition order, or which have been declared unsafe in accordance with applicable law; or
      4) to which heat, water, sewer service, or public lighting have not been connected for 30 consecutive days or more.
   If "we" cancel this policy for reasons listed under d.1) through d.4) above, cancellation

will be effective ten days after "you" and any mortgagee or lienholder have received "our" notice. The notice of cancellation will be sent by regular mail and certified mail, and "your" return premium, if any, will be calculated on a pro rata basis.
   e. "We" may cancel this policy at any time during the policy period if the premium has not been paid when due. If "we" cancel this policy for non-payment of premium, "we" will mail the cancellation notice at least ten days before the effective date of cancellation.
   f. If this policy has been in effect more than 60 days, or if it is a renewal of a policy issued by "us", "we" may cancel this policy according to the "terms" set forth under item d. or item e. above, or "we" may cancel if one or more of the following reasons apply:
      1) If this policy covers one- to four-family dwellings used for residential purposes or any personal property incidental to residential occupancies, "we" may cancel this coverage when:
         a) the policy was obtained by misrepresentation or fraud; or
         b) there has been an act that measurably increases the risk originally accepted.
      2) If this policy covers any other type of property, "we" may cancel this coverage when:
         a) the policy was obtained through a material misrepresentation;
         b) any "insured" has violated any of the "terms" and conditions of the policy;
         c) the risk originally accepted has measurably increased;
         d) certification of the Director of the loss of reinsurance which provided coverage to "us" for all or a substantial part of the underlying risk insured; or
         e) a determination by the Director that the continuation of the policy could place "us" in violation of the insurance laws of this state.
   If "we" cancel this policy for any of the reasons listed under **f.1)** or **f.2)** above, "we" will mail the cancellation notice at least 60 days before the effective date of cancellation.

**CL 01 21 05 03 Page 1 of 2**
•//•CL 01 21 05 03

Copyright, American Association of Insurance Services, Inc., 2003


**STATE AUTO®**
Insurance Companies

g. "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

2. Under Common Policy Conditions, the following condition is added:

   **Nonrenewal –**
   If "we" decide not to renew this policy, "we" will mail "our" notice of nonrenewal to "you" at least 60 days before the end of the policy period or anniversary date. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record and any mortgagee or lienholder at the last mailing address known to "us". Proof of mailing is sufficient proof of notice. "Our" notice will include the reasons for nonrenewal.

3. Under Common Policy Conditions, the following condition is added:

   **Renewal –** If "we" decide to renew this policy with premium increases of 30% or higher, or impose changes in deductible or coverage that materially alter the policy, "we" will mail to "you" written notice of such increase or change in deductible or coverage at least 60 days before the renewal or anniversary date. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice. The 60-day prior notification because of premium increase is not necessary where increases exceeding 30% are due to changed conditions or increased or broadened coverage initiated by "you".

**CL 01 21 05 03 Page 2 of 2**
•//•CL 01 21 05 03

Copyright, American Association of Insurance Services, Inc., 2003

AAIS
IM 08 71 06 02
Page 1 of 1

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## ILLINOIS

1. Under Definitions, item b. of Pollutants is deleted.

2. Under Perils Excluded, Criminal, Fraudulent, or Dishonest Acts is amended to include the following:

   However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

   a. arose out of a pattern of criminal domestic violence; and

   b. the perpetrator of the loss is criminally prosecuted for the act causing the loss;

   this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   "Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

3. Appraisal is amended to include the following:

   If "you" request an appraisal and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

4. Misrepresentation, Concealment, or Fraud is deleted and replaced by the following:

   **Misrepresentation, Concealment, or Fraud** -- "We" do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or
      2) an insured's interest herein; or

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

5. Suit Against Us is amended to include the following:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

**IM 08 71 06 02**

Copyright, American Association of Insurance Services, Inc., 2002

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Contractors' Equipment Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1.  The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2.  The words "we", "us", and "our" mean the company providing this coverage.

3.  ""declarations"" means all pages labeled "declarations", Supplemental "declarations", or Schedules, which pertain to this coverage.

4.  "Limit" means the amount of coverage that applies.

5.  "Pollutant" means:

    a.  any solid, liquid, gaseous, or thermal irritant or contaminant;

    b.  electromagnetic (visible or invisible) or sound emission; or

    c.  waste, including materials to be disposed of as well as recycled, reclaimed, or reconditioned.

6.  "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

7.  "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

    Falling objects does not include loss to personal property in the open or to the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object.

    Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

8.  "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

9.  "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow. It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

AAIS
IM-7000 Ed 1.0
Page 2 of 9

## PROPERTY COVERED

1. **Scheduled Equipment** -- When Scheduled Equipment is indicated on the "declarations", "we" cover direct physical loss caused by a covered peril to:

   a. "your" contractors' equipment and

   b. equipment of others in "your" care, custody, or control

   described on the "declarations".

2. **Schedule on File** -- When Schedule on File is indicated on the "declarations", "we" cover direct physical loss caused by a covered peril to:

   a. "your" contractors' equipment; and

   b. equipment of others in "your" care, custody, or control

   that are listed in a schedule which "you" must submit to "us" and "we" keep on file. The schedule must contain a description of each item to be covered and a "limit" for each item.

## PROPERTY NOT COVERED

1. **Aircraft or Watercraft** -- "We" do not cover aircraft or watercraft.

2. **Automobiles and Trucks** -- "We" do not cover automobiles, motor trucks, tractors, trailers, and similar conveyances designed for highway use and used for over the road transportation of people or cargo. However, this does not include:

   a. self-propelled vehicles designed and used primarily to carry mounted equipment; or

   b. vehicles designed for highway use that are unlicensed and not operated on public roads.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Loaned, Leased, or Rented Property** -- "We" do not cover property that "you" loan, lease, or rent to others.

5. **Underground Mining Operations** -- "We" do not cover property while stored or operated underground in connection with any mining operations.

6. **Waterborne Property** -- "We" do not cover property while waterborne except while in transit in the custody of a carrier for hire.

## ADDITIONAL COVERAGES

1. **Newly Purchased Equipment** -- In the event that "you" purchase additional equipment during the policy period, "we" extend coverage to the additional purchased equipment for up to 60 days.

   The most that "we" pay for any one loss under this additional coverage is the lesser of:

   a. the actual cash value of the covered property; or

   b. the "limit" for additional purchased equipment indicated on the declarations. If no "limit" is indicated, then 30% of the Catastrophe Limit indicated on the "declarations".

This additional coverage will end when any of the following first occur:

a. this policy expires;

b. 60 days expire after "you" purchase the additional equipment; or

c. "you" report the additional purchased equipment to "us".

2. **Rental Reimbursement** -- In the event of a loss by a covered peril to covered property that "you" own, "we" reimburse "you" for "your" expense to rent similar equipment while "your" equipment is inoperable. The most "we" reimburse "you" is $2,500 plus the "limit" for rental reimbursement indicated on the "declarations".

"We" will continue to reimburse "you" for the rental of equipment after the expiration date of this coverage, provided the loss occurred before the expiration date.

"We" will not reimburse "you":

a. for the rental of equipment until after 72 hours have passed since the covered property was rendered inoperable. After 72 hours have passed "we" will only reimburse "you" for the rental expense that "you" actually incur.

b. if "you" can continue or resume "your" operations with similar equipment that is available to "you" at no additional expense to "you".

c. for the rental expense of any equipment unless "you" make every reasonable effort to repair, replace, or rebuild the inoperable equipment after the loss by a covered peril occurs.

The deductible amount indicated on the "declarations" does not apply to a loss covered under this additional coverage.

3. **Debris Removal** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril. This coverage does not include costs to:

a. extract "pollutants" from land or water; or

b. remove, restore, or replace polluted land or water.

"We" will not pay any more under this coverage than 25% of the amount "we" pay for the direct loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

"We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

4. **Pollutant Cleanup and Removal** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

"We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

The most "we" pay for each site or location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

This is an additional "limit".

AAIS
IM-7000  Ed 1.0
Page 4 of 9

## PERILS COVERED

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1. "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

      "We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

   b. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. "We" do pay for direct loss by fire resulting from the nuclear hazard.

   c. **War** -- "We" do not pay for loss caused by war. This means:

      1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;
      2) a warlike act by a military force or by military personnel;
      3) the destruction, seizure, or use of the property for a military purpose; or
      4) the discharge of a nuclear weapon even if it is accidental.

2. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

   a. **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

      1) "you";
      2) others who have an interest in the property;
      3) others to whom "you" entrust the property;
      4) "your" partners, officers, directors, trustees, or joint adventurers; or
      5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

      This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

      This exclusion does not apply to covered property in the custody of a carrier for hire.

   b. **Loss of Use** -- "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

AAIS
IM-7000  Ed 1.0
Page 5 of 9

c. **Missing Property** -- "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property. This exclusion does not apply to covered property in the custody of a carrier for hire.

d. **Pollutants** -- "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

e. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

3. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a covered peril results "we" will pay for the resulting loss.

a. **Contamination or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

b. **Mechanical Breakdown** -- "We" do not pay for loss caused by any:

1) structural, mechanical, or remodeling process; or
2) structural, mechanical, or electrical breakdown or malfunction.

c. **Temperature/Humidity** -- "We" do not pay for loss caused by humidity, dampness, dryness, or changes in or extremes of temperature.

d. **Wear and Tear** -- "We" do not pay for loss caused by wear and tear, marring, or scratching.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

b. give notice to the police when the act that causes the loss is a crime.

2. **Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. However, "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3. **Proof of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

a. the time, place, and circumstances of the loss;

b. other policies of insurance that may cover the loss;

c.  "your" interest and the interests of all others in the property involved, including all mortgages and liens;

d.  changes in title of the covered property during the policy period; and

e.  estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4.  **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5.  **Records** -- "You" must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6.  **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7.  **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8.  **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9.  **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1.  **Actual Cash Value** -- The value of covered property will be based on the actual cash value at the time of the loss (with a deduction for depreciation) except as provided in paragraphs 2. and 3. under Valuation.

2.  **Pair or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3.  **Loss to Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1.  **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2.  **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "declarations" in any one occurrence.

3.  **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

    a.  the amount determined under Valuation;

    b.  the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

c. the "limit" that applies to the covered property.

However, the most "we" pay for loss in any one occurrence, regardless if the loss is total or partial, is the Catastrophe Limit indicated on the "declarations".

4. **Coinsurance** -- "We" only pay a part of the loss if the "limit" is less than the percentage of the value of covered property that is indicated on the "declarations". "Our" part of the loss is determined using the following steps:

   a. multiply the percent indicated on the "declarations" by the value of the covered property at the time of loss;

   b. divide the "limit" for covered property by the result determined in 4.a. above;

   c. multiply the total amount of loss, after the application of any deductible, by the result determined in 4.b. above.

The most "we" pay is the amount determined in 4.c. above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

If there is more than one "limit" indicated on the "declarations" for this coverage part, this procedure applies separately to each "limit".

If there is only one "limit" indicated on the "declarations" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

5. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

6. **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do,

"we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Our Options** -- "We" have the following options:

   a. pay the value of the loss;

   b. pay the cost of repairing or replacing the loss;

   c. rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

   d. take all or any part of the damaged property at the agreed or appraised value.

"We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

**E-FILED**
Friday, 15 February, 2008  12:14:06 PM
Clerk, U.S. District Court, ILCD

AAIS
IM-7000  Ed 1.0
Page 8 of 9

3. **Property of Others** -- Losses to property of others may be adjusted with and paid to:

   a. "you" on behalf of the owner; or

   b. the owner.

   If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit to Others** -- Insurance under this coverage shall not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   On "your" death, "we" cover the following as an insured:

   a. the person who has custody of "your" property until a legal representative is qualified and appointed; or

   b. "your" legal representative.

   This person or organization is an insured only with respect to property covered by this coverage.

   This coverage does not extend past the policy period indicated on the "declarations".

5. **Misrepresentation, Concealment or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein.

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

AAIS
IM-7000  Ed 1.0
Page 9 of 9

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

   c. any recovery expenses incurred by either are reimbursed first;

   d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8. **Restoration of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limit" unless it is a total loss to a scheduled item. In the event of a total loss to a scheduled item "we" refund the unearned premium on that item.

9. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

   "You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

    a. all of the "terms" of this coverage have been complied with; and

    b. the suit has been brought within two years after "you" first have knowledge of the loss.

    If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

**IM-7000  Ed 1.0**
Copyright MCMXCIV
American Association of Insurance Services

SPP 2413256 00 20060830

13 12 2413256 N083006
OPTIPLAN-AGENT BILL

13  NAC

AAIS
IM-7105 ED 1.0
PAGE 1 OF 1
------------------------------------------------------------------------

### INSTALLATION FLOATER DECLARATIONS

(THE INFORMATION REQUIRED BELOW MAY BE SHOWN ON
A SEPARATE SCHEDULE OR SUPPLEMENTAL "DECLARATIONS".)

------------------------------------------------------------------------
SCHEDULE LOCATIONS
------------------------------------------------------------------------

|  | LIMIT |
|---|---|
| SAVANNAH GREEN SUBDIVISION | $ 130,000 |
|  | $ |
|  | $ |

| | |
|---|---|
| COVERED PROPERTY IN TRANSIT | $ 130,000 |
| COVERED PROPERTY AT UNSCHEDULED STORAGE LOCATIONS | $ |
| ANYONE LOSS CAUSED BY "EARTH MOVEMENT", AND VOLCANIC ERUPTION | $ |
| ANY ONE LOSS CAUSED BY "FLOOD" AND "GROUND WATER" | $ |

------------------------------------------------------------------------
DEDUCTIBLE
------------------------------------------------------------------------

|  | DEDUCTIBLE AMOUNT |
|---|---|
| FOR ALL PERILS COVERED UNLESS A DIFFERENT DEDUCTIBLE IS SHOWN BELOW | $ 1000 |
| "EARTH MOVEMENT" AND VOLCANIC ERUPTION | $ |
| "FLOOD" AND "GROUND WATER" | $ |

------------------------------------------------------------------------
COINSURANCE
------------------------------------------------------------------------

(CHECK ONE, IF APPLICABLE)

| X | 80%          |    | 90%          |    | 100%

------------------------------------------------------------------------

IM-7105 ED 1.0

SPP 2413256 00 20060830   OPTIPLAN-AGENT BILL          12 N 00 13  R
                                                       AC00001030


```
                STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY          3

                COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS            2

POLICY NUMBER SPP 2413256 00                                               2

NAMED INSURED: A-M LLC                                                     2
                                        THE INSURED IS:  LIMITED LIAB COMPANY

LIMITS OF INSURANCE:                                                       2
  EACH OCCURRENCE LIMIT                  $1,000,000
    PERSONAL AND ADVERTISING INJURY      $1,000,000 ANY ONE PERSON OR ORGANIZATION
    MEDICAL EXPENSE LIMIT                   $5,000 ANY ONE PERSON
    DAMAGE TO PREMISES RENTED TO YOU      $100,000 ANY ONE PREMISES
  GENERAL AGGREGATE LIMIT
    (OTHER THAN PRODUCTS - COMPLETED OPERATIONS)        $2,000,000
    PRODUCTS- COMPLETED OPERATIONS AGGREGATE LIMIT      $2,000,000

* TOTAL ADVANCE GENERAL LIABILITY PREMIUM (SUBJECT TO AUDIT):          $261.00
* INCLUDES TERRORISM INSURANCE COVERAGE PREMIUM                          $2.00

FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY:
  GL 4    07/98       CG 21 47 07/98      CG 21 72 12/02      CG 21 76 11/02
  CG 21 87 05/04      IL 09 99 05/04      AU 413    01/91     CG 02 00 07/05
  CG 01 98 08/90      CG 00 01 12/04      SL 20 02 01/02      SL 20 04 11/02
  CG 24 26 07/04      CG 21 55 09/99
```

COUNTERSIGNED _____ BY _____
                                            (AUTHORIZED REPRESENTATIVE)


FORM NO. GL4D      07/98                 ISSUED 08/30/06     AGENT COPY

SPP 2413256 00 20060830    OPTIPLAN-AGENT BILL                 12 N 00 13  R
                                                              AC00001030


                STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY              3

                COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE            2

POLICY NUMBER SPP 2413256 00                                                   2

NAMED INSURED: A-M LLC                                                         2


                                                              ESTIMATED        2
LOC  ST TER CODE         PREMIUM BASIS      PER      RATE     PREMIUM      COV*2
     1 IL 014 47051          11 ACRES       1     $17.578      $193        O
REAL ESTATE DEVELOPMENT PROPERTY
PRODUCTS-COMPLETED OPERATIONS ARE INCLUDED,
SUBJECT TO THE GENERAL AGGREGATE LIMIT.


                                                              ESTIMATED        2
LOC  ST TER CODE         PREMIUM BASIS      PER      RATE     PREMIUM      COV*2
     1 IL 014 49451          15 ACRES       1     $4.402       $66         O
VACANT LAND - OTHER THAN NOT-FOR-PROFIT
PRODUCTS-COMPLETED OPERATIONS ARE INCLUDED,
SUBJECT TO THE GENERAL AGGREGATE LIMIT.


                                                              ESTIMATED        2
LOC  ST TER CODE         PREMIUM BASIS      PER      RATE     PREMIUM      COV*2
                                                                 $2        O
TERRORISM INSURANCE COVERAGE

* COV O INDICATES PREMISES OPERATIONS
  COV P INDICATES PRODUCTS-COMPLETED OPERATIONS


FORM NO. ES1        07/98              ISSUED 08/30/06    AGENT COPY



# COMMERCIAL GENERAL LIABILITY

## INSURANCE POLICY

State Automobile Mutual Insurance Company

State Auto Property and Casualty Insurance Company

Milbank Insurance Company

Farmers Casualty Insurance Company

**QUICK REFERENCE**
# COMMERCIAL GENERAL LIABILITY COVERAGE

Read your policy carefully. This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself is a legal contract between you and your insurance company and sets forth, in detail, the rights and obligations of both you and your insurance company. It is therefore important that you read your policy.

**DECLARATIONS PAGE**
- Named Insured and Mailing Address
- Policy Period
- Description of Business and Location
- Coverages and Limits of Insurance

**SECTION I — COVERAGES**                                         **Beginning on Page**

Coverage A —                    Insuring Agreement .................................  1
  Bodily Injury
  and Property                  Exclusions ........................................  1
  Damage Liability
Coverage B —                    Insuring Agreement ................................  5
  Personal and
  Advertising                   Exclusions ........................................  5
  Injury Liability
Coverage C—                     Insuring Agreement ................................  5
  Medical Payments              Exclusions ........................................  6
Supplementary Payments ...............................................  6

**SECTION II — WHO IS AN INSURED** ......................................  7

**SECTION III — LIMITS OF INSURANCE** ...................................  8

**SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS** ................  9
Bankruptcy ............................................................  9
Duties in the Event of Occurrence, Claim or Suit ......................  9
Legal Action Against Us ...............................................  9
Other Insurance .......................................................  9
Premium Audit .........................................................  10
Representations .......................................................  10
Separation of Insureds ................................................  10
Transfer of Rights of Recovery Against Others To Us ...................  10
When We Do Not Renew ..................................................  10

**SECTION V — DEFINITIONS** ............................................  10

**COMMON POLICY CONDITIONS** (cover jacket)
- Cancellation
- Changes
- Examination of Your Books and Records
- Inspections and Surveys
- Premiums
- Transfer of Your Rights and Duties under this Policy
- Installment Payments

**ENDORSEMENTS**
- Nuclear Energy Exclusion - in cover jacket
- Calculation of Premium - in cover jacket
- Any others, as indicted on the Declarations and Attached to this Policy.

**MUTUAL COMPANY POLICY CONDITIONS** - in cover jacket

# COMMON POLICY CONDITIONS

Subject to the laws of your state, some conditions may be changed by the attachment of a state amendatory endorsement.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## G. INSTALLMENT PAYMENTS

If you have elected to pay the premium on this policy in installments and you fail to pay an installment when due, we will assume you no longer want the insurance. In such event we will issue you a notice of cancellation as set forth under Policy Conditions. Such notice will specify the date and time of cancelation. If we receive an installment payment after the date of cancellation, we may, subject to the laws of your state, reinstate your policy, issue you a new policy with a new policy period or return the late payment to you.

# CONDITIONS APPLICABLE TO STATE AUTOMOBILE MUTUAL INSURANCE COMPANY

## DIVIDENDS

You are entitled to the proportionate part of any policyholder's dividend if declared by our Board of Directors in accordance with its By-Laws.

## NOTICE OF POLICYHOLDERS MEETINGS

While your policy is in force, you are one of our members and are entitled, in person or by proxy, to one vote at all meetings of the members. The annual meeting of the members is held at 9 o'clock A.M., Columbus time, on the first Friday of March of each year at our Home Office at 518 East Broad Street, Columbus, Ohio.

## NON-ASSESSABLE

This policy is non-assessable and the insured shall not be liable for the payment of any assessment nor for the payment of any premium other than that stated in this policy.

## ENDORSEMENTS MADE PART OF COVERAGE PARTS AS INDICATED

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (Broad Form)**

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured;" or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;'

"Nuclear material" means "source material," Special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on which site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

## CALCULATION OF PREMIUM ENDORSEMENT—Applicable to all Coverage Parts

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

---

IN WITNESS WHEREOF, we have caused this policy to be signed by our Secretary and President at columbus, Ohio, and countersigned on the Decarations page by an authorized agent of the State Auto Insurance Companies.

*John R Lowther*
Secretary

*Robert H Moore*
President



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:**
This insurance does not apply to:
"Bodily injury" to:
  (1) A person arising out of any:
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
  (2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.
This exclusion applies:
  (1) Whether the insured may be liable as an employer or in any other capacity; and
  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**
This insurance does not apply to:
"Personal and advertising injury" to:
  (1) A person arising out of any:
    (a) Refusal to employ that person;
    (b) Termination of that person's employment; or
    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
  (2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.
This exclusion applies:
  (1) Whether the insured may be liable as an employer or in any other capacity; and
  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**CG 21 47 07 98 Page 1 of 1**
*//*CG 21 47 07 98

Copyright, Insurance Services Office, Inc., 1997


**STATE AUTO®**
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM
EXCLUSION (OTHER THAN CERTIFIED ACTS OF
TERRORISM); CAP ON LOSSES FROM
CERTIFIED ACTS OF TERRORISM**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:
This insurance does not apply to:
**TERRORISM**
"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is not a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:
1.  The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or
2.  The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
3.  Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:
1.  For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.
2.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":
    a.  The act resulted in aggregate losses in excess of $5 million; and

b.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3.  "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

**D.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**CG 21 72 12 02 Page 1 of 1**
*//*CG2172-200212

ISO Properties, Inc., 2002



**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:
This insurance does not apply to:
**TERRORISM PUNITIVE DAMAGES**
Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:
"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**CG 21 76 11 02   Page 1 of 1**
*//*CG2176-200211

ISO Properties, Inc., 2002


**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM
## (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. Applicability Of The Provisions Of This Endorsement
1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:
a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or
b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:
(1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or
(2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or
(3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.
The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.
2. If the provisions of this endorsement become applicable, such provisions:
a. Supersede any terrorism endorsement already endorsed to this policy that

addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and
b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.
3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:
1. "Terrorism" means activities against persons, organizations or property of any nature:
a. That involve the following or preparation for the following:
(1) Use or threat of force or violence; or
(2) Commission or threat of a dangerous act; or
(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and
b. When one or both of the following applies:

**CG 21 87 05 04 Page 1 of 2**
•//•CG 21 87 05 04

ISO Properties, Inc. 2004



**STATE AUTO®**
Insurance Companies

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

**C.** The following exclusion is added:
**EXCLUSION OF TERRORISM**
We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**6.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:
**a.** Physical injury that involves a substantial risk of death; or
**b.** Protracted and obvious physical disfigurement; or
**c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

**CG 21 87 05 04 Page 2 of 2**
*//*CG 21 87 05 04

ISO Properties, Inc. 2004


**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)

### SCHEDULE

---

**Terrorism Premium (Certified Acts)**
**(A) Premium through 12/31/05    $** See Below
**(B) Estimated Premium beyond 12/31/05 (refer to Paragraph C. below)    $** See Below

**Additional information, if any, concerning the terrorism premium:**

The Terrorism premiums displayed on the declaration pages of this policy represent the charge for Terrorism Coverage for the entire policy term. If the Terrorism Risk Insurance Act of 2002 is not continued or extended upon the 12/31/2005 expiration of the Act, a return premium may be due. The return premium will be the prorated portion from 12/31/2005 to the expiration of your policy term.

---

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**
In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**
The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

**C. Possibility Of Additional Or Return Premium**
The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insur-

ance Act of 2002. The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** of the Schedule may not be appropriate.
If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** of the Schedule and will charge additional premium or refund excess premium, if indicated.
If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

**IL 09 99 05 04 Page 1 of 1**
*//*IL 09 99 05 04

ISO Properties, Inc., 2004

23        Printed:
08/20/07    10:59:08



**STATE AUTO**®
Insurance Companies

# NOTICE TO ILLINOIS POLICYHOLDERS

The following information is provided for your convenience. Should you have any questions concerning your policy please contact your State Auto Insurance Companies agent or you may contact State Auto Insurance Companies, Customer Affairs and Information Department at 518 East Broad Street, Columbus, OH 43216. Phone: 1-800-444-9950, Extension 4822.

You may also contact the Illinois Insurance Department, Public Service Division, Springfield, Illinois 62767.

Please keep this information with your policy for future reference.

COMMERCIAL GENERAL LIABILITY
CG 02 00 07 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

    a. For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

    b. For a reason other than nonpayment of premium, we will mail the notice at least:

        (1) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

        (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

    a. Nonpayment of premium;

    b. The policy was obtained through a material misrepresentation;

    c. Any insured has violated any of the terms and conditions of the policy;

    d. The risk originally accepted has measurably increased;

    e. Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

    f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Condition 2, DUTIES IN THE EVENT OF OCCUR-RENCE, CLAIM OR SUIT (SECTION IV) is replaced by the following:

2. **Duties In The Event Of Occurrence, Offense, Claim or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and,

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and,

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and,

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

CG 01 98 08 90          Copyright, Insurance Services Office, Inc., 1990          □

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2003

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

   (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

   (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

   (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

   (i) Any insured; or

   (ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

   (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

   (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003
Exhibit A - Page 80 of 96

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

© ISO Properties, Inc., 2003

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

     © ISO Properties, Inc., 2003

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C;**

   b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A;** and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

© ISO Properties, Inc., 2003

Exhibit A - Page 87 of 96

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

Exhibit A - Page 88 of 96

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

Exhibit A - Page 89 of 96

    **b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

        Paragraph **f.** does not include that part of any contract or agreement:

      **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      **(1)** Power cranes, shovels, loaders, diggers or drills; or

      **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

        However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 © ISO Properties, Inc., 2003

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2003

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" as defined in the policy arising out of:

1. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

2. The use of asbestos in constructing or manufacturing any goods, product, or structure;

3. The removal of asbestos from any goods, product or structure;

4. The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

5. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts 1. through 4. above; or

6. Any obligation to share damages with or repay someone else who must pay damages in connection with parts 1. through 5. above.

SL 20 02 01 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## Exclusion – Lead Liability

The following exclusions are added to all coverages contained within.

      COMMERCIAL GENERAL LIABILITY COVERAGE FORM
      BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance does not apply to:

1.  Actual or alleged "bodily injury," arising out of the ingestion, inhalation or absorption of lead or lead compounds in any form.

2.  Actual or alleged "property damage" or "personal and advertising injury" arising out of any form of lead or lead compounds.

3.  Any loss, cost or expense arising out of any:

    a.  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead or lead compounds.

    b.  Claim or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form.

    c.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds, or

    d.  Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

SL 20 04 (11/02)


**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

**CG 24 26 07 04 Page 1 of 1**
*//*CG 24 26 07 04

ISO Properties, Inc., 2003

IB        Printed:
08/20/07   09:42:28

COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph 2., Exclusions, of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

This insurance does not apply to:

f.   Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

Copyright, Insurance Services Office, Inc., 1998

**E-FILED**
Friday, 15 February, 2008  12:14:34 PM
Clerk, U.S. District Court, ILCD

**AFFIDAVIT**

STATE OF INDIANA

COUNTY OF MARION

BEFORE ME, the undersigned authority, on this 29th day of January 2008

Personally appeared <u>Gary J. Morris</u>, a Manager for State Automobile Mutual

Insurance Company.

The affiant is known to me to be a credible person of lawful age, who first being duly

cautioned and sworn deposes and says that the attached specimen policy jacket,

declaration page and endorsements together to the best of my knowledge and belief

represent a true copy of policy number  <u>SPP 2413256</u>

_____
SIGNATURE OF AFFIANT

<u>Gary J. Morris</u>
PRINTED NAME OF AFFIANT

Subscribed and sworn to before me, this 29th day of January 2008
                                             DAY              MONTH

(seal)

_____
SIGNATURE OF NOTARY PUBLIC

<u>Carolyn M. Wertz</u>
PRINTED NAME OF NOTARY PUBLIC

<u>COUNTY OF Shelby</u>

STATE OF INDIANA

My commission expires October 16, 2009

SPP 2413256 01 20071023                                              13 12 2413256 A102307
                                    ORIGINAL COPY          OPTIPLAN-AGENT BILL
                                                                            13Y NAC

              STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY                      3

                                                                                     2

POLICY NUMBER:  SPP 2413256 01                                                       2

NAMED INSURED AND ADDRESS:                    AGENCY NAME, ADDRESS AND TELEPHONE:     2

    A-M LLC                                    SNYDER AND SNYDER AGENCY INC
    C/O JOHN HAMILTON                          PO BOX 1546
    702 N CLINTON                              BLOOMINGTON, IL          61702
    BLOOMINGTON, IL         61701
                                               309-664-1800

BRANCH:  13                                    AGENCY NUMBER: 0001030

POLICY PERIOD:     FROM: JULY 31, 2007     TO: JULY 31, 2008

                        P O L I C Y   C H A N G E S

        THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

--------------------------------------------------------------------------
POLICY CHANGE EFFECTIVE: 07/31/07


        AT YOUR REQUEST THE FOLLOWING CHANGES HAVE BEEN MADE:
    "COVERAGE FOR CERTIFIED ACTS FO TERRORISM HAS BEEN DELETED FROM THIS POLICY"











        THANK YOU FOR MAKING STATE AUTO YOUR COMMERCIAL COMPANY

 10/23/07
--------------------------------------------------------------------------

                                          --------------------------
IL 12 01 (04/93)                          AUTHORIZED REPRESENTATIVE

SPP 2413256 01 20070926    OPTIPLAN-AGENT BILL                  12 R 00 13  R
                                                               AC00001030

                    STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY            3

                SPECIAL ACCOUNT PROGRAM SUMMARY OF POLICIES AND PREMIUMS          2

    POLICY NUMBER   SPP 2413256 01              RENEWAL OF  SPP 2413256 00        2
                                   RENEWAL

    NAMED INSURED AND ADDRESS             AGENCY NAME, ADDRESS AND TELEPHONE NUMBER 2

        A-M LLC                              SNYDER AND SNYDER AGENCY INC
        C/O JOHN HAMILTON                    PO BOX 1546
        702 N CLINTON                        BLOOMINGTON, IL
        BLOOMINGTON, IL                      61702
        61701
                                        PHONE: 309-664-1800
    BRANCH: INDIANAPOLIS                 AGENCY NUMBER: 0001030

    POLICY PERIOD:      FROM: JULY 31, 2007  TO: JULY 31, 2008  AT
        12:01 AM  , STANDARD TIME, AT YOUR MAILING ADDRESS SHOWN ABOVE.

    IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
    POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

      SUMMARY OF POLICIES AND PREMIUMS AS OF ABOVE EFFECTIVE DATE                 2
    ---------------------------------------------------------------------------
    TYPE / DESCRIPTION OF INSURANCE                                    PREMIUM
    ---------------------------------------------------------------------------
    COMMERCIAL UMBRELLA LIABILITY                                    $2,050.00
    ---------------------------------------------------------------------------
    LIABILITY                                                          $201.00
    ---------------------------------------------------------------------------
    INLAND MARINE                                                    $3,090.00
    ---------------------------------------------------------------------------

    PREMIUMS ON PROVISIONAL OR DEPOSIT BASIS
    WILL BE SUBJECT TO ADJUSTMENT.

                            TOTAL ADVANCE PREMIUM:          $5,341.00
                            * PREMIUM AT INCEPTION:          $5,341.00

    * INCLUDES TERRORISM INSURANCE COVERAGE PREMIUM                     $91.00


    COUNTERSIGNED _____ BY _____
                                             (AUTHORIZED REPRESENTATIVE)


    FORM NO. SP2      01/86                  ISSUED 09/26/07    AGENT COPY

SPP 2413256 01 20070926   OPTIPLAN-AGENT BILL                12 R 00 13  R
                                                             AC00001030


                    STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY          3

                         POLICY SCHEDULE OF NAMES AND ADDRESSES                 2

POLICY NUMBER SPP 2413256 01                                                    2
                                      RENEWAL

NAMED INSURED AND ADDRESS                  AGENCY NAME, ADDRESS AND TELEPHONE NUMBER  2

    A-M LLC                                     SNYDER AND SNYDER AGENCY INC
    C/O JOHN HAMILTON                           PO BOX 1546
    702 N CLINTON                               BLOOMINGTON, IL
    BLOOMINGTON, IL                             61702
    61701
                                       PHONE: 309-664-1800
                                       AGENCY NUMBER: 0001030


                    LOCATIONS OF PREMISES YOU OWN, RENT OR OCCUPY                2


    LOCATION 0001                           LOCATION 0002
    1104 TEGAN                              1105 TEGAN
    NORMAL, IL                              NORMAL, IL
    MCLEAN COUNTY                           MCLEAN COUNTY
    61761                                   61761


    LOCATION 0003                           LOCATION 0004
    1106 TEGAN                              1107 TEGAN
    NORMAL, IL                              NORMAL, IL
    MCLEAN COUNTY                           MCLEAN COUNTY
    61761                                   61761


    LOCATION 0005                           LOCATION 0006
    1108 TEGAN                              1110 TEGAN
    NORMAL, IL                              NORMAL, IL
    MCLEAN COUNTY                           MCLEAN COUNTY
    61761                                   61761


    LOCATION 0007
    1112 TEGAN
    NORMAL, IL
    MCLEAN COUNTY
    61761


FORM NO. SNADEC    11/89              ISSUED 09/26/07    AGENT COPY

```
SPP 2413256 01 20070926                           13 12 2413256 R092607
                        ORIGINAL COPY          OPTIPLAN-AGENT BILL
                                                          13  NAC
```

STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY                3

COMMERCIAL UMBRELLA LIABILITY DECLARATIONS                       2

POLICY NUMBER:  SPP 2413256 01                                   2

NAMED INSURED AND ADDRESS:          AGENCY NAME, ADDRESS AND TELEPHONE:    2

```
     A-M LLC                          SNYDER AND SNYDER AGENCY INC
     C/O JOHN HAMILTON                PO BOX 1546
     702 N CLINTON                    BLOOMINGTON, IL        61702
     BLOOMINGTON, IL       61701
                                      309-664-1800
```

BRANCH:  13                          AGENCY NUMBER: 0001030

POLICY PERIOD:    FROM: JULY 31, 2007      TO: JULY 31, 2008     AT
           12:01 AM   STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

THESE DECLARATIONS PAGES CONTINUE THIS POLICY INFORCE FOR THE PERIOD
INDICATED UPON VALID PAYMENT OF THE PREMIUM WHEN DUE


ITEM 1: NAMED INSURED (IF DIFFERENT THAN SHOWN ABOVE):

ITEM 2: FORM OF NAMED INSURED'S BUSINESS: LIMITED LIABILITY CORPORATION

ITEM 3: RETROACTIVE DATE:

ITEM 4: LIMIT OF INSURANCE:
         POLICY AGGREGATE LIMIT  $ 5,000,000
         SELF-INSURED RETENTION  $              EACH INCIDENT OR OFFENSE
                                                NOT COVERED BY UNDERLYING
                                                INSURANCE

ITEM 5: FORM(S)/ENDORSEMENT(S) ATTACHED TO POLICY AT INCEPTION: CXS0001 (01/06)
CXS0002 (07/98)  CXS0012 (07/05) CXS2172 (12/02) CXS2176 (11/02)
CXS2187 (05/04) CXS2155 (09/99) CXS4005 (07/98) CXS3001 (07/98)

ITEM 6: PREMIUM COMPUTATION:
         TOTAL ESTIMATED PREMIUM (SUBJECT TO AUDIT) $ 2050
         TERRORISM INSURANCE COVERAGE INCLUDED         $ 0

         PREMIUM ADJUSTABLE AT RATE OF $        PER      OF
         SUBJECT TO MINIMUM PREMIUM OF $

ITEM 7: SCHEDULE OF UNDERLYING INSURANCE:

| TYPE | AUTO LIABLITY | GENERAL LIABILITY | EMPLOYERS LIAB. |
|------|---------------|-------------------|-----------------|
| COMPANY | STATE AUTO INSURANCE | STATE AUTO INSURANCE | |
| POLICY NO. | BAP 2176723 | SPP 2413256 | |
| POLICY PERIOD | FROM 07/31/07 TO 07/31/08 | FROM 07/31/07 TO 07/31/08 | FROM TO |
| LIMITS OF LIABILITY | EACH ACCIDENT $ 1,000,000 OR BODILY INJURY EACH PERSON $ BODILY INJURY EACH ACCIDENT $ PROPERTY DAMAGE EACH ACCIDENT $ | GENERAL AGGREGATE $ 2,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE $ 2,000,000 PERSONAL AND ADVERTISING INJURY $ 1,000,000 EACH OCCURRENCE $ 1,000,000 | BODILY INJURY EACH ACCIDENT $ BODILY INJURY BY DISEASE EACH EMPLOYEE $ BODILY INJURY BY DISEASE POLICY LIMIT $ |

IF GENERAL LIABILITY IS CLAIMS MADE, ITS RETROACTIVE DATE IS:

ISSUE DATE 09/26/07          COUNTERSIGNED BY:
                                              ------------------------
CXS 0002-D (03/03)                           AUTHORIZED REPRESENTATIVE

# COMMERCIAL UMBRELLA COVERAGE FORM

PLEASE READ THIS POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS. WE HAVE NO DUTY TO PROVIDE COVERAGE UNLESS THERE HAS BEEN FULL COMPLIANCE WITH ALL THE CONDITIONS – SECTION V – OF THIS POLICY.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us", and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section III – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions.

**Section I**    Insuring Agreements

In consideration of the payment of premium and in reliance upon representations you made to us during the process of obtaining this insurance and subject to the Limit of Insurance shown in the Declarations, and all the exclusions, terms and conditions of this policy, we agree with you as follows:

**Coverage A    Bodily Injury And Property Damage Liability**

1. **Insuring Agreement**

   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

      (1) The amount we will pay for "ultimate net loss" is limited as described in Section IV – Limit Of Insurance;

      (2) At our discretion, we may investigate any "occurrence" and settle any resulting "claim" or "suit";

      (3) We have a right and duty to defend the insured against any "suits" to which this insurance applies:

         (a) But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or

         (b) If the applicable limit of "underlying insurance" is exhausted.

         However, we will have no duty to defend the insured against any "suits" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply; and

      (4) Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages A and B.

      No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section II – Defense.

   b. It is agreed that this insurance only applies if:

      (1) The "bodily injury" or "property damage" occurs during the policy period of this policy;

      (2) With respect to your liability (other than under a contract) for "bodily injury" to your "employees" arising out of and in the course of their employment by you:

         (a) Any "bodily injury" by disease is caused or aggravated by the conditions of that employment; and

         (b) An "employee's" last day of last exposure to conditions causing or aggravating such disease occurs during the policy period of this policy; and

      (3) The "bodily injury" or "property damage" is caused by an "occurrence", and such "occurrence" takes place in the "coverage territory".

      (4) Prior to the policy period, no insured listed under Paragraph 1. of Section III – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section III – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section III – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. "Ultimate net loss" because of "bodily injury" includes damages sought by any person or organization for care or loss of services resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. "Bodily injury" or "property damage" either expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property;

b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract";

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; and

(c) The indemnitor insured's "underlying insurance" also deems these expenses to be damages;

c. Liability imposed on the insured or the insured's insurer, under any of the following laws:

(1) Employees' Retirement Income Security Act of 1974 (E.R.I.S.A.) as now or hereafter amended, or any similar state or other governmental law;

(2) Any uninsured motorists, underinsured motorists, or automobile no-fault or first party "bodily injury" or "property damage" law; or

(3) Any workers compensation, unemployment compensation or disability benefits law or any similar law.

d. The insured's liability (other than under an "insured contract") for "bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister, or other dependents of that "employee" as a consequence of d.(1) above.

But this exclusion **d.(1)** and **d.(2)** applies only with respect to:

(1) "Bodily injury" to any person in work subject to the Longshore and Harbor Workers Compensation Act (33 USC Sections 901-950), the Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), and any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

(2) "Bodily injury" to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an "employee" due to "bodily injury" arising out of or in the course of employment, or any amendments to those laws;

(3) "Bodily injury" to a master or member of the crew of any vessel;

(4) Fines or penalties imposed for violation of federal or state law;

(5) Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued there under, and any amendments to those laws;

(6) Punitive or exemplary damages because of "bodily injury" to any "employee" employed in violation of law;

(7) "Bodily injury" to an "employee" while employed in violation of law with the insured's actual knowledge or the actual knowledge of any of your "executive officers"; and

(8) "Bodily injury" to an "employee" if such employment is subject to the workers compensation laws of the states of Massachusetts, Missouri, New Jersey, New York or any other state which requires unlimited Employers Liability coverage in conjunction with primary Workers Compensation policies.

This exclusion d. applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such injury.

With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of their employment by you, exclusions **f.**, **g.**, and **h.** do not apply.

e. "Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Failure to promote an employee;

(c) Discipline, demotion, negligent evaluation or negligent reassignment;

(d) Termination of that person's employment;

(e) Employment-related practices, policies, acts or omissions, including, without limitation, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(f) Oral or written publication of materials that slanders, defames, or libels an "employee" or violates or invades an "employee's" right of privacy.

(2) The spouse, child, parent, brother or sister, or any other dependents of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraph **e.(1)** above is directed.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

f.  Pollution:

(1)  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants":

(a)  That are, or ever were, contained in any property that is, or ever was:

(i)  Being transported or towed by, handled, or handled for movement into, onto or from any "auto";

(ii)  Otherwise in the course of transit by or on behalf of the insured; or

(iii)  Being stored, disposed of, treated or processed in or upon any "auto";

(b)  At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any insured. However, this subparagraph f.1.(b) does not apply to:

(i)  "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

(ii)  "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your applicable "underlying insurance" as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than the additional insured; or

(iii)  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(c)  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(d)  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i)  Any insured; or

(ii)  Any person or organization for whom you may be legally responsible; or

(e)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph f.(1)(e) does not apply to:

(i)  "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment", any "auto" covered by applicable "underlying insurance" or the parts of either, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii)  "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii)  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(f)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

    (b) "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph (2) does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

Subparagraph (a) of part (1) of this exclusion f. does not apply if any applicable "underlying insurance" shown in the Schedule of Underlying Insurance provides coverage at the full limits of liability shown therein for such losses as are described in subparagraph (a) of part (1) for any "autos" involved in such operations.

(3) Exceptions:

    (a) Paragraphs f.(1)(c) through f.(1)(f) of this exclusion do not apply to pollutants that are not in or upon a "covered auto" if:

        (i) The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of a "covered auto"; and

        (ii) The discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage.

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or chartered, rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrong doing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of aircraft, or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) Watercraft while ashore on premises you own or rent;

(2) Watercraft you do not own that are:

    (a) Less than 26 feet long or the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance; and

    (b) Not being used to carry persons or property for a charge; or

(3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

h. "Bodily injury" or "property damage" arising out of the use of any "mobile equipment" or "auto" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

i.   "Bodily injury" or "property damage" however caused, arising, directly or indirectly, out of:

(1) War,  including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j.   "Property damage" to:

(1) Property you own, rent, or occupy; including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of any insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

Paragraph j.(2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs j.(3), j.(4), j.(5) and j.(6) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph j.(6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.   "Property damage" to "your product" arising out of it or any part of it.

l.   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

o. "Bodily injury" arising out of "personal and advertising injury."

p. Asbestos

  (1) "Bodily injury" or "property damage" arising out of, resulting from, caused by, or contributed to:

   (a) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

   (b) The use of asbestos in constructing or manufacturing any goods, product or structure;

   (c) The removal of asbestos from any goods, product or structure;

   (d) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

  (2) Any damages or any loss, cost or expense arising out of any claim or suit by or on behalf of any governmental authority requirement that any insured or any other person or entity should be, or should be responsible for:

   (a) Assessing the presence, absence or amount or effects of asbestos;

   (b) Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating asbestos; or

   (c) Responding to asbestos in any way other than as described in subparagraphs (1) and (2) above.

  (3) Any actual or alleged negligence in hiring, training, supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with actions described in subparagraphs (1) and (2) of this exclusion; or

  (4) Any obligation to share damages with or repay someone else who must pay damages in connection with any of the subsections above.

q. "Bodily injury" or "property damage" arising out of any form of lead or lead compounds. In addition, this insurance does not apply to any loss, cost or expense arising out of:

  (1) Any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead or lead compounds;

  (2) Any "claim" or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

  (3) Any actual or alleged negligence in hiring, training, supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds; or

  (4) Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

r. "Bodily injury" or "property damage" arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

s. Any obligation arising out of the administration of any employee benefit plan.

t. Any "wrongful act" of any director or "executive officer" of any insured in the discharge or performance of their duties as such.

u. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

  (1) Causing or contributing to the intoxication of any person;

  (2) The furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

  (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

  This exclusion u. applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

v. "Bodily injury" or "property damage":

  (1) With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability

Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

    (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) Resulting from the "hazardous properties" of "nuclear material", if:

    (a) The "nuclear material":

        (i) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

        (ii) Has been discharged or dispersed there from;

    (b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

    (c) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" include radioactive, toxic or explosive properties;

(2) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

(5) "Waste" means any waste material:

    (a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

    (b) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility";

(6) "Nuclear facility" means:

    (a) Any "nuclear reactor";

    (b) Any equipment or device designed or used for:

        (i) Separating the isotopes of uranium or plutonium;

        (ii) Processing or utilizing "spent fuel"; or

        (iii) Handling, processing or packaging "waste";

    (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

w. Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

x. "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## Coverage B    Personal And Advertising Injury Liability

### 1. Insuring Agreement

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

(1) The amount we will pay for the "ultimate net loss" is limited as described in Section IV – Limit Of Insurance;

(2) At our discretion, we may investigate any offense and settle any resulting "claim" or "suit";

(3) We have a right and duty to defend the insured against any "suits" to which this insurance applies:

(a) But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or

(b) If the applicable limit of "underlying insurance" is exhausted.

However, we will have no duty to defend the insured against any "suits" seeking damages for "personal and advertising injury" to which this insurance does not apply; and

(4) Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages A and B.

No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section II – Defense.

b. This insurance applies only to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury"

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of the insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(10) Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web-sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17.a. b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

(12) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

(13) Arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants" at any time;

(14) Arising out of:

(a) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

(b) The use of asbestos in constructing or manufacturing any good, product or structure;

(c) The removal of asbestos from any good, product or structure;

(d) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

(e) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts **(14) (a)** through **(14) (d)** of this exclusion; or

(f) Any obligation to share damages with or repay someone else who must pay damages in connection with parts **(14) (a)** through **(14) (e)** of this exclusion.

(15) Arising out of any form of lead or lead compounds. In addition, any loss, cost or expense arising out of:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead or lead compounds;

(b) "Claim" or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

(c) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds; or

(d) Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

(16) Arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

(17) Arising out of any "wrongful act" of any director or "executive officer" of any insured in the discharge or performance of their duties as such.

 Includes copyrighted material of
Insurance Services Office, Inc. with its permission

(18) To:

(a) A person arising out of any:

    (i)   Refusal to employ that person;

    (ii)  Failure to promote an employee;

    (iii) Discipline, demotion, negligent evaluation or negligent reassignment;

    (iv) Termination of that person's employment;

    (v)  Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

    (vi) Oral or written publication of materials that slanders, defames, or libels an "employee" or violates or invades an "employee's" right of privacy.

(b) The spouse, child, parent, brother or sister, or any other dependents of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraph (18) (a) of this exclusion were directed.

(c) This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "personal and advertising injury".

(19) However caused, arising, directly or indirectly, out of:

(a) War, including undeclared or civil war;

(b) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(c) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

(20) Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(a) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law, or

(b) The CAN SPAM Act of 2003, including any amendment of or addition to such law, or

(c) Any statute, ordinance, or regulation, other than the TCPA or CAN Spam Act of 2003, that prohibits or limits the sending, transmitting, communicating, or distribution of material or information.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

(2) "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**Section II  Defense**

1. When we have the duty to defend, or we investigate or settle any offense, "occurrence", "claim" or "suit", and then only to the extent that "underlying insurance" is not responsible for the costs shown below in items a. through f., we will pay on behalf of the insured:

a. Up to $250 for cost of bail bonds required because of accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies. We do not have to furnish these bonds.

b. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

d. All costs taxed against the insured in any "suit" we defend.

e. "Pre-judgment interest" awarded against the insured on that part of any judgment covered under this policy. If we offer the applicable Limit of Insurance in settlement of a "claim" or "suit", we will not pay for any "pre-judgment interest" imposed or earned after the date of such offer.

f. All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of any judgment that is within the applicable Limit of Insurance.

2. Payments under this section of the policy, as well as payments for all expenses we incur, will not reduce the Limit of Insurance.

3. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the offense or "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the conditions in this subparagraph f. are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid under Section II – Defense. Notwithstanding the provisions of paragraph 2.b.(2) of Coverage A. – Bodily Injury And Property Damage Liability (Section I), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

4. Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses under Section II – Defense ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph 3.f. above, are no longer met by the indemnitee.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

**Section III Who Is An Insured**

1. If you are designated in the Declarations as:

   a. An individual, you, as a natural person, and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Except with respect to any "auto", your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, or joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Except with respect to any "covered auto", each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for : -

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister, or other dependent of that co-"employee" as a consequence of paragraph **2.a.(1)(a)** above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **2.a.(1)(a)** or **2.a.(1)(b)** above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by; or

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

   e. Any person or organization qualifying as an insured under any policy of "underlying insurance".

      (1) Coverage afforded such insureds under this policy applies only to injury or damage:

         (a) Which is covered by this policy; and

         (b) Which is covered by the "underlying insurance" or would be covered but for the exhaustion of such policy's limits of insurance.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

      **(2)** This policy shall not afford such person or organization limits of insurance in excess of:

          **(a)** The minimum limit of insurance you agreed to provide; or

          **(b)** The limit of insurance under this policy, whichever is less.

  **f.** Any person or organization for whom you have agreed in writing prior to any "occurrence" or offense to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf, or facilities owned or used by you. This policy shall not afford such person or organization limits of insurance in excess of:

      **(1)** The minimum limit of insurance you agreed to provide; or

      **(2)** The limit of insurance under this policy, whichever is less.

**3.** With respect to any "covered auto", any person is an insured while operating such "covered auto" with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the "covered auto".

However, except with respect to your partners, "employees", or members of their households, the owner or anyone else from whom you hire or borrow a "covered auto" is an insured only if that "covered auto" is a trailer connected to a "covered auto" you own.

But no person or organization is an insured under this paragraph **3.** for:

  **a.** "Bodily injury" to a co-"employee" of the person operating the "covered auto";

  **b.** "Property damage" to property owned by the employer of any person who is an insured under this provision;

  **c.** Any "covered auto" you hire or borrow from one of your partners, "employees" or members of their households, if they are the owner of such "covered auto", unless:

      **(1)** Insurance is afforded to that owner for such "covered auto" by "underlying insurance", or would be afforded under such "underlying insurance" but for exhaustion of such policy's limits of insurance; or

      **(2)** Such "covered `auto" is a trailer connected to an "covered auto" you own;

  **d.** Any "covered auto" being used by a person employed in the business of selling, servicing, repairing, or parking "autos" unless they are your "employee"; or

  **e.** The movement of property to or from an "covered auto" except your "employees" or partners, the lessees or borrowers of such "covered auto", and any "employees" of such lessees or borrowers.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a named insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period set forth in the Declarations, whichever is earlier;

  **b.** Coverage is applicable only in excess of the Limits of "underlying insurance" as shown in the Declarations, and you must add such organization to your "underlying insurance" as soon as practicable, advising us of such additions. We may then make adjustment of premium charges as called for in Condition 9 – Maintenance of Underlying Insurance;

  **c.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **d.** Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the Declarations.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

## Section IV  Limit Of Insurance

1.  The Policy Aggregate Limit shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
    a.  Insureds;
    b.  "Claims" made or "suits" brought; or
    c.  Persons or organizations making "claims" or bringing "suits".
2.  The Policy Aggregate Limit is the most we will pay for:
    a.  All "ultimate net loss" under Coverage **A** and Coverage **B** combined, except "ultimate net loss" because of injury and damage arising from the "automobile hazard"; and
    b.  Each "occurrence" with regard to "ultimate net loss" because of injury and damage arising from the "automobile hazard".
3.  If the Policy Aggregate Limit is paid prior to this policy's termination date for losses other than losses arising from the "automobile hazard", this policy's premium is fully earned.
4.  The Policy Aggregate Limit applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

## Section V  Conditions

1.  **Appeals.** In the event the insured or any "underlying insurer" elects not to appeal a judgment for damages covered by this policy and which exceeds the "retained limit", we may elect, but have no duty, to do so. We shall be liable, in addition to the Limit of Insurance, for all costs and expenses incurred and interest on judgments incidental to such an appeal and for all such costs, expenses and interest on appeals in connection with our right and duty to defend the insured under this policy.
2.  **Bankruptcy.** Bankruptcy, insolvency, or receivership of the insured, the insured's estate or of any "underlying insurer" will not relieve us of our obligations under this policy. With regard to bankruptcy, insolvency, or receivership of any "underlying insurer", this policy shall not apply as a replacement of such bankrupt or insolvent insurer and our Limits of Insurance will apply only in excess of the required Limit(s) of Insurance stated in the Declarations of this policy.
3.  **Cancellation.**
    a.  The first named insured shown in the Declarations may cancel this policy by delivering it to us or any of our authorized agents or by sending us written notice stating when the future cancellation will take effect. Cancellation will become effective the date of delivery of the policy to us or upon such future date requested by the first named insured.
    b.  We may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least:
        (1) Ten (10) days before the effective date of cancellation if we cancel because of nonpayment of premium whether payable directly to us or payable to our agents or others under any installment payment plan, premium finance plan, extension of credit or other payment plan; or
        (2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason.
    c.  We will mail or deliver our notice to the first named insured's last mailing address known to us.
    d.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
    e.  If this policy is canceled, we will send the first named insured any premium refund due. If we or the first named insured cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered any refund of unearned premium.
    f.  If notice is mailed, proof of mailing will be sufficient proof of notice.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

4. **Changes.** This policy contains all the agreements between you and us concerning the insurance afforded. The first named insured shown in the Declarations is authorized to make changes in the terms of this policy upon our giving written consent. This policy's terms can be amended or waived only by endorsement to this policy issued by us and made a part of this policy.

5. **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

   a. You must see to it that we or our authorized representative are notified as soon as practicable of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:

      (1) How, when, and where the "occurrence" or alleged offense took place;

      (2) The insured's name and address;

      (3) The names and addresses of any injured persons or witnesses; and

      (4) The nature and location of any injury or damage arising out of the "occurrence" or offense.

      Notice of an "occurrence" or an offense is not notice of a "claim".

   b. If a "claim" is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we also receive written notice of the "claim" or "suit" as soon as practicable.

   c. You and any other insured involved in such "claim" or "suit" must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

   e. No insureds shall in any way jeopardize our rights after an "occurrence" or offense.

6. **Examination of Your Books and Records.** We may examine and audit your books and records as they relate to this policy at any time during the policy period set forth in the Declarations and up to three years afterward.

7. **Inspection and Surveys.**

   a. We have the right but are not obligated to:

      (1) Make inspections and surveys at any time;

      (2) Give you reports on the conditions we find; and

      (3) Recommend changes to such conditions.

   b. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We also do not warrant that conditions:

      (1) Are safe or healthful; or

      (2) Comply with laws, regulations, codes or standards.

   c. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

8. **Legal Action Against Us.**

   a. No person or organization has a right under this policy:

      (1) To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

      (2) To sue us under this policy unless all of its terms have been fully complied with.

b. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

9. **Maintenance of Underlying Insurance.**

a. You must keep the "underlying insurance" described in the Declarations, or renewal or replacement policies not more restrictive in their terms and conditions, in full force and effect during the policy period of this policy. The Limits of Insurance must be maintained without reduction other than by payment of losses covered thereunder. You must also inform us within 30 days of any termination of any policy of "underlying insurance", or replacement of any policy of "underlying insurance".

b. You must notify us immediately of any changes to the terms of any "underlying insurance" policies. We may adjust premium charges under this policy from the effective date of such changes to the terms of any "underlying insurance".

c. Your failure to comply with the foregoing paragraphs **9.a.** and **9.b.** will not invalidate this policy, but in the event of such failure, we shall be liable under this policy only to the extent that we would have been liable had you complied with these obligations.

10. **Other Insurance.** If other valid and collectible insurance is available to the insured for "ultimate net loss" we cover under this policy, our obligations under this policy are limited as follows:

a. This insurance is excess over:

(1) Any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance; and

(2) Any other insurance available to the insured, whether primary or excess, covering liability for damages arising out of premises or operations for which you have been added as an additional insured.

b. We will indemnify only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under this or any other insurance.

c. We will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all other insurers in accordance with provisions of Condition **16** below.

11. **Premium Audit.**

a. We will compute all premiums for this policy in accordance with our rules and rates.

b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first named insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first named insured, but not if such audit premium is less than the Minimum Premium shown in the Declarations.

c. The first named insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

12. **Premiums.** The first named insured shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

13. **Representations.** By accepting this policy, you agree that:

a. The information shown on the Declarations is accurate and complete;

b. The information is based upon representations you made to us in your application(s) for this policy;

c. We have issued this policy in reliance upon your representations; and

d. Except as otherwise provided in this policy or by law, this policy is void if you conceal or misrepresent any material facts concerning this policy, in your application for this policy or otherwise.

    Includes copyrighted material of Insurance Services Office, Inc. with its permission

14. **Separation of Insureds.** Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first named insured, this insurance applies:

a.  As if each named insured were the only named insured; and

b.  Separately to each insured against whom "claim" is made or "suit" is brought.

15. **Sole Agent.** The named insured first shown in the Declarations is authorized to act on behalf of all insureds with respect to giving or receiving notice of cancellation or nonrenewal, receiving refunds, and agreeing to any changes in this policy.

16. **Transfer Of Rights Of Recovery Against Others To Us.**

a.  If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and

b.  Any recoveries shall be applied first to reimburse any interests (including the insured) that may have paid any amounts in excess of our liability under this policy; then to reimburse us for any payment hereunder; and lastly to reimburse such interests (including the insured) as to which this policy is excess, as are entitled to the residue, if any.

c.  When we assist in pursuit of the insured's rights of recovery, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recoveries.

d.  If there should be no recovery as a result of proceedings instituted solely at our request, we shall bear all expenses of such proceedings.

17. **Transfer of Your Rights and Duties Under This Policy.**

a.  Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

b.  If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

18. **When Loss Payable.** Our liability for any portion of "ultimate net loss" shall not apply until the insured or any "underlying insurer" shall be obligated to actually pay the full and complete amount of the "retained limit". When "ultimate net loss" has been finally determined, the insured may make "claim" for payment under this policy as soon as practicable thereafter. Such insured's obligation to pay any amount of "ultimate net loss" must have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant or the claimant's legal representative and us.

19. **When We Do Not Renew.**

a.  If we decide not to renew this policy, we will mail or deliver to the first named insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date or such other period as may be required by law.

b.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**Section VI  Definitions**

1.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b.  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporter is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment, or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Automobile hazard" means liability arising out of the ownership, maintenance, use or entrustment of any "covered auto". Use includes operation and "loading or unloading".

4. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

5. "Claim" means any demand upon the insured for damages or services alleging liability of the insured as the result of an "occurrence" or offense.

6. "Covered auto" means only those "autos" to which "underlying insurance" applies.

7. "Coverage territory" means:

   a. The United Sates of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of :

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

11. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or by your fulfilling the terms of the contract or agreement.

12. "Insured contract" means:

    a. A contract for a lease of premises. However, that portion of a contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement; or

f. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law for injury to persons or property in the absence of any contract or agreement.

Paragraph **11.f. and g.** does not include that part of any contract or agreement:

(1) That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **11.g.(2)** above and supervisory, inspection, architectural or engineering activities ;

(4) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver; or

(5) That holds a person or organization engaged in the business of transporting property by "auto" for hire, harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority.

13. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

14. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

15. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

       **(1)** Power cranes, shovels, loaders, diggers or drills; or

       **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a., b., c.,** or **d.** immediately preceding that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in **a., b., c.,** or **d.** of this section maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

       **(1)** Equipment designed primarily for:

          **(a)** Snow removal;

          **(b)** Road maintenance, but not construction or resurfacing; or

          **(c)** Street cleaning;

       **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

       **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

       However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means:

    **a.** With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you; or

    **b.** With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you, "bodily injury" caused by accident or disease.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**18.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, without limitation, materials to be recycled, reconditioned or reclaimed.

**19.** "Pre-judgment interest" means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

20. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed;

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Those products or operations for which the applicable classification, under a policy of "underlying insurance", states that products-completed operations are subject to that policy's General Aggregate Limit.

21. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on created or used on, or transmitted to or from computer software, including systems and application software, hard or floppy disks, CD-ROMS, tapes drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

22. "Retained limit" means the greater of:

   a. The sum of amounts applicable to any "claim" or "suit" from:

      (1) "Underlying insurance", whether such "underlying insurance" is collectible or not; and

      (2) Other collectible primary insurance; or

   b. The "self-insured retention".

23. "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits

24. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or submits with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured must submit or submits with our consent.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

25. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

26. "Ultimate net loss" means the total amount of damages for which the insured is legally liable in payment of "bodily injury", "property damage" or "personal and advertising injury". "Ultimate net loss" must be fully determined as shown in Condition **18 – When Loss Payable**. "Ultimate net loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by any insured, by us or by any "underlying insurer".

27. "Underlying insurance" means the coverage(s) afforded under insurance policies designated in the Declarations and any renewals or replacements of those policies.

28. Underlying insurer" means any company issuing any policy of "underlying insurance".

29. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

30. "Wrongful act" means any actual or alleged error, misstatement or misleading statement, act, omission or neglect or breach of duty by a director or "executive officer" in discharge of their duties, individually or collectively, or any matter claimed against them solely by reason of their being directors or officers of your business.

    "Wrongful act" does not include "bodily injury", "property damage" or "personal and advertising injury" as defined in this coverage form.

31. "Your product":

    a. Means:

       (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

           (a) You;

           (b) Others trading under your name; or

           (c) A person or organization whose business or assets you have acquired; and

       (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

       (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

32. "Your work":

    a. Means:

       (1) Work or operations performed by you or on your behalf; and

       (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

       (2) The providing of or failure to provide warnings or instructions.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Conditions Applicable To State Automobile Mutual Insurance Company

1. Dividends. You are entitled to the proportionate part of any policyholder's dividend if declared by our Board of Directors in accordance with its by-laws.

2. Notice of Policyholders Meetings. While your policy is in force, you are one of our members and are entitled, in person or by proxy, to one vote at all meetings of the members. The annual meeting of the members is held at 9 o'clock A.M., Columbus time, on the first Friday of March of each year at our Home Office, 518 East Broad Street, Columbus, Ohio.

3. Non-assessable. This policy is non-assessable and the insured shall not be liable for the payment of any assessment nor for the payment of the premium other than that stated in this policy.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at Columbus, Ohio and countersigned on the Declarations Page by our duly authorized agent of the State Auto Insurance Companies.

*John R Lowther*

Secretary

*Robert H Moone*

President

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

**E-FILED**
Friday, 15 February, 2008 12:14:43 PM
Clerk, U.S. District Court, ILCD



# COMMERCIAL UMBRELLA

## LIABILITY POLICY

**State Automobile Mutual Insurance Company**
Corporate Office • 518 East Broad Street, Columbus, Ohio 43215 • 614-464-5000

**State Auto Property and Casualty Insurance Company**
12 S. Main Street • Greer, South Carolina 29651 • 864-877-5511

**Milbank Insurance Company**
101 Flynn Drive • Milbank, South Dakota 57252-1567 • 605-432-5551

**Farmers Casualty Insurance Company**
1300 Woodland Avenue • West Des Moines, Iowa 50265-0430 • 515-223-0148

Corporate Office
State Auto Insurance Companies • 518 East Broad Street • Columbus, Ohio 43215-3901 • 614-464-5000

CXS 0002 (07/98)

Exhibit B - Page 31 of 101

# COMMERCIAL UMBRELLA LIABILITY POLICY QUICK REFERENCE

READ YOUR POLICY CAREFULLY. This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself is a legal contract between you and your insurance company and sets forth, in detail, the rights and obligations of both you and your insurance company. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.

## DECLARATIONS PAGE(S)

Named Insured and Mailing Address
Agency name, address & telephone
Policy Period
Form of Named Insured's business
Retroactive date (if any)
Limit of Insurance
Forms/Endorsements attached
Premium
Schedule of underlying insurance

| | Form CXS0001, Beginning On Page |
|---|---|
| Section I — Insuring Agreement Coverage A. Bodily Injury and Property Damage Liability | 1 |
| Exclusions | 2 |
| Coverage B. Personal and Advertising Injury Liability | 6 |
| Exclusions | 8 |
| Section II — Defense | 10 |
| Section III — Who is an Insured | 11 |
| Section IV — Limits of Insurance | 12 |
| Section V — Conditions | 13 |
| Section VI — Definitions | 17 |
| Conditions Applicable to State Automobile Mutual Insurance Company | 21 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A. Paragraph 3., Cancellation, of Section V – Conditions is replaced by the following:

   3. Cancellation.

      a. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

     We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

        (1) For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

        (2) For a reason other than nonpayment of premium, we will mail the notice at least:

           (a) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

           (b) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

      b. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

        (1) Nonpayment of premium;

        (2) The policy was obtained through a material misrepresentation;

        (3) Any insured has violated any of the terms and conditions of the policy;

        (4) The risk originally accepted has measurably increased;

        (5) Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

        (6) A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

      c. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

      d. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

B. Paragraph 19., When We Do Not Renew, of Section V – Conditions is replaced by the following:

   19. When We Do Not Renew.

   If we decide not to renew or continue this policy we will mail you and your agent or broker written notice, stating the reason for nonrenewal at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that your have not accepted our offer.

   If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

CXS 00 12 (07/98)          Copyright, Insurance Services Office, Inc.          Page 1 of 2

C. The following condition is added to Section V – Conditions and supersedes any provision to the contrary:

   20. Mailing of Notices. We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

D. Paragraph 5., Duties In The Event Of Occurrence, Offense, Claim Or Suit, of Section V – Conditions is replaced by the following:

   5. Duties In The Event Of Occurrence, Offense, Claim or Suit.

      a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:

         (1) How, when and where the "occurrence" or offense took place;

         (2) The names and addresses of any injured persons and witnesses; and

         (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

      b. If a "claim" is made or "suit" is brought against any insured, you must:

         (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

         (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

      c. You and any other involved insured must:

         (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

         (2) Authorize us to obtain records and other information;

         (3) Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

         (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

      d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

COMMERCIAL UMBRELLA
CXS 21 72 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is not a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

1. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Form or underlying insurance.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**a.** The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.  However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less.  Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

**D.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

COMMERCIAL UMBRELLA
CXS 21 76 11 02

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

B. The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A. Applicability Of The Provisions Of This Endorsement
   1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:
      a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or
      b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:
         (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or
         (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or
         (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.
      The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.
   2. If the provisions of this endorsement become applicable, such provisions:
      a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for

claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and
      b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.
   3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:
   1. "Terrorism" means activities against persons, organizations or property of any nature:
      a. That involve the following or preparation for the following:
         (1) Use or threat of force or violence; or
         (2) Commission or threat of a dangerous act; or
         (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and
      b. When one or both of the following applies:
         (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
         (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**CXS 21 87 05 04  Page 1 of 2**
•//•CXS 21 87 05 04

Includes copyrighted material of
Insurance Services Office, Inc., with its permission

14
Printed:
08/20/07  10:27:49

**STATE AUTO**®
Insurance Companies

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:
EXCLUSION OF TERRORISM
We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:
   a. Physical injury that involves a substantial risk of death; or
   b. Protracted and obvious physical disfigurement; or
   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

**CXS 21 87 05 04   Page 2 of 2**
*//*CXS 21 87 05 04

Includes copyrighted material of
Insurance Services Office, Inc., with its permission

IS      Printed:
08/20/07   10:27:49

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Exclusion f. of Paragraph 2., Exclusions, of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

f.    This insurance does not apply to:

1.    "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

a.    At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

b.    At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

2.    Any loss, cost or expense arising out of any:

a.    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants"; or

b.    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CXS 21 55 (09/99)    Copyright, Insurance Services Office, Inc.


STATE AUTO®
Insurance Companies

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EMPLOYERS' LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Exclusion d. of paragraph 2., Exclusions, of Section I – Coverage A – Bodily Injury And Property Damage Liability is deleted and replaced by the following:

This insurance does not apply to "bodily injury" (other than liability assumed by the insured under an "insured contract") to:

1. An "employee" of the insured arising out of and in the course of:

    a.   Employment by the insured ; or

    b.   Performing duties related to the conduct of the insured's business; or

2. The spouse, child, parent, brother or sister of that "employee" as a consequence of 1. above.

This exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CXS 40 05 (07/98)



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FOLLOWING FORM – AUTO LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following is added to subparagraph a., of paragraph 1, Insuring Agreement, of Section I – Coverage A – Bodily Injury And Property Damage Liability:

(5)  This insurance only applies to the extent coverage is provided in "underlying insurance" for "bodily injury" or "property damage" arising out of the ownership, maintenance, use, "loading or unloading", or entrustment to others of any "auto":

    (a)  While away from premises you own, rent, or occupy; or

    (b)  Owned by or rented or loaned to any insured.

CXS 30 01 (07/98)



```
SPP 2413256 01 20070926   OPTIPLAN-AGENT BILL              12 R 00 13  R
                                                          AC00001030
```

STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY                3

COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS                  2

POLICY NUMBER SPP 2413256 01                                     2
                          RENEWAL

NAMED INSURED: A-M LLC                                           2

                          THE INSURED IS:  LIMITED LIAB COMPANY

```
LIMITS OF INSURANCE:                                            2
  EACH OCCURRENCE LIMIT              $1,000,000
  PERSONAL AND ADVERTISING INJURY   $1,000,000 ANY ONE PERSON OR ORGANIZATION
  MEDICAL EXPENSE LIMIT                 $5,000 ANY ONE PERSON
  DAMAGE TO PREMISES RENTED TO YOU    $100,000 ANY ONE PREMISES
  GENERAL AGGREGATE LIMIT
  (OTHER THAN PRODUCTS - COMPLETED OPERATIONS)    $2,000,000
  PRODUCTS- COMPLETED OPERATIONS AGGREGATE LIMIT  $2,000,000


* TOTAL ADVANCE GENERAL LIABILITY PREMIUM (SUBJECT TO AUDIT):        $201.00
* INCLUDES TERRORISM INSURANCE COVERAGE PREMIUM                        $1.00

FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY:
GL 4      07/98 *     CG 21 47 07/98 *     CG 21 72 12/02 *     CG 21 76 11/02 *
CG 21 87 05/04 *      IL 09 99 05/04 *     AU 413    01/91 *    CG 02 00 07/05 *
CG 00 01 12/04 *      SL 20 02 01/06 *     SL 20 04 01/06 *     CG 24 26 07/04 *
CG 00 67 03/05 *      SI 01 62 04/06 *     CG 21 55 09/99 *
```

```
COUNTERSIGNED _____ BY _____
                                           (AUTHORIZED REPRESENTATIVE)


FORM NO. GL4D     07/98              ISSUED 09/26/07    AGENT COPY
```

```
SPP 2413256 01 20070926   OPTIPLAN-AGENT BILL              12 R 00 13  R
                                                           AC00001030
```

```
           STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY          3

           COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE        2

    POLICY NUMBER SPP 2413256 01                                       2
                                    RENEWAL
    NAMED INSURED: A-M LLC                                             2
```

```
                                                      ESTIMATED       2
    LOC  ST TER CODE       PREMIUM BASIS      PER     RATE   PREMIUM  COV*2
       1 IL 014 47051           7 ACRES         1   $12.425     $87    O
    REAL ESTATE DEVELOPMENT PROPERTY
    PRODUCTS-COMPLETED OPERATIONS ARE INCLUDED,
    SUBJECT TO THE GENERAL AGGREGATE LIMIT.


                                                      ESTIMATED       2
    LOC  ST TER CODE       PREMIUM BASIS      PER     RATE   PREMIUM  COV*2
       1 IL 014 49451          15 ACRES         1    $4.663     $70    O
    VACANT LAND - OTHER THAN NOT-FOR-PROFIT
    PRODUCTS-COMPLETED OPERATIONS ARE INCLUDED,
    SUBJECT TO THE GENERAL AGGREGATE LIMIT.


                                                      ESTIMATED       2
    LOC  ST TER CODE       PREMIUM BASIS      PER     RATE   PREMIUM  COV*2
                                                                $1    O
    TERRORISM INSURANCE COVERAGE
```

```
    * COV O INDICATES PREMISES OPERATIONS
      COV P INDICATES PRODUCTS-COMPLETED OPERATIONS
```

```
    FORM NO. ES1       07/98        ISSUED 09/26/07    AGENT COPY
```





## QUICK REFERENCE
# COMMERCIAL GENERAL LIABILITY COVERAGE

Read your policy carefully. This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself is a legal contract between you and your insurance company and sets forth, in detail, the rights and obligations of both you and your insurance company. It is therefore important that you read your policy.

**DECLARATIONS PAGE**
Named Insured and Mailing Address
Policy Period
Description of Business and Location
Coverages and Limits of Insurance

**SECTION I — COVERAGES**                                                **Beginning on Page**
Coverage A —              Insuring Agreement ................................. 1
  Bodily Injury
  and Property            Exclusions ....................................... 1
  Damage Liability
Coverage B —              Insuring Agreement ................................. 5
  Personal and
  Advertising             Exclusions ....................................... 5
  Injury Liability
Coverage C—               Insuring Agreement ................................. 5
  Medical Payments        Exclusions ....................................... 6
Supplementary Payments .................................................... 6

**SECTION II — WHO IS AN INSURED** ........................................ 7

**SECTION III — LIMITS OF INSURANCE** ..................................... 8

**SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS** .................. 9
Bankruptcy ................................................................ 9
Duties in the Event of Occurrence, Claim or Suit .......................... 9
Legal Action Against Us ................................................... 9
Other Insurance ........................................................... 9
Premium Audit ............................................................. 10
Representations ........................................................... 10
Separation of Insureds .................................................... 10
Transfer of Rights of Recovery Against Others To Us ....................... 10
When We Do Not Renew ...................................................... 10

**SECTION V — DEFINITIONS** ............................................... 10

**COMMON POLICY CONDITIONS** (cover jacket)
Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy
Installment Payments

**ENDORSEMENTS**
Nuclear Energy Exclusion - in cover jacket
Calculation of Premium - in cover jacket
Any others, as indicted on the Declarations and Attached to this Policy.

**MUTUAL COMPANY POLICY CONDITIONS** - in cover jacket

# COMMON POLICY CONDITIONS

Subject to the laws of your state, some conditions may be changed by the attachment of a state amendatory endorsement.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## G. INSTALLMENT PAYMENTS

If you have elected to pay the premium on this policy in installments and you fail to pay an installment when due, we will assume you no longer want the insurance. In such event we will issue you a notice of cancellation as set forth under Policy Conditions. Such notice will specify the date and time of cancelation. If we receive an installment payment after the date of cancellation, we may, subject to the laws of your state, reinstate your policy, issue you a new policy with a new policy period or return the late payment to you.

---

# CONDITIONS APPLICABLE TO STATE AUTOMOBILE MUTUAL INSURANCE COMPANY

## DIVIDENDS

You are entitled to the proportionate part of any policyholder's dividend if declared by our Board of Directors in accordance with its By-Laws.

## NOTICE OF POLICYHOLDERS MEETINGS

While your policy is in force, you are one of our members and are entitled, in person or by proxy, to one vote at all meetings of the members. The annual meeting of the members is held at 9 o'clock A.M., Columbus time, on the first Friday of March of each year at our Home Office at 518 East Broad Street, Columbus, Ohio.

## NON-ASSESSABLE

This policy is non-assessable and the insured shall not be liable for the payment of any assessment nor for the payment of any premium other than that stated in this policy.

## ENDORSEMENTS MADE PART OF COVERAGE PARTS AS INDICATED

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSE-MENT (Broad Form)**

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured;" or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;"

"Nuclear material" means "source material," Special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on which site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

## CALCULATION OF PREMIUM ENDORSEMENT—Applicable to all Coverage Parts

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IN WITNESS WHEREOF, we have caused this policy to be signed by our Secretary and President at columbus, Ohio, and countersigned on the Decarations page by an authorized agent of the State Auto Insurance Companies.

*John R Lowther*
Secretary

*Robert H Moore*
President

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

   **(1)** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

   **(1)** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 72 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is not a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

1. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   **a.** The act resulted in aggregate losses in excess of $5 million; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

**D.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

© ISO Properties, Inc., 2002

CG 21 72 12 02    □

COMMERCIAL GENERAL LIABILITY
CG 21 76 11 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

B. The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COMMERCIAL GENERAL LIABILITY
CG 21 87 05 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

    © ISO Properties, Inc., 2004

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

POLICY NUMBER:

IL 09 99 05 04

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)

## SCHEDULE

| |
|---|
| **Terrorism Premium (Certified Acts)**<br>(A) Premium through 12/31/05    $<br>(B) Estimated Premium beyond 12/31/05 (refer to Paragraph C. below)    $<br><br>**Additional information, if any, concerning the terrorism premium:** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

IL 09 99 05 04                   © ISO Properties, Inc., 2004                   Page 1 of 2          □

**C. Possibility Of Additional Or Return Premium**

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act of 2002. The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.



STATE AUTO®
Insurance Companies

# NOTICE TO ILLINOIS POLICYHOLDERS

The following information is provided for your convenience. Should you have any questions concerning your policy please contact your State Auto Insurance Companies agent or you may contact State Auto Insurance Companies, Customer Affairs and Information Department at 518 East Broad Street, Columbus, OH 43216. Phone: 1-800-444-9950, Extension 4822.

You may also contact the Illinois Insurance Department, Public Service Division, Springfield, Illinois 62767.

Please keep this information with your policy for future reference.

AU413 (01/91)
*//*AU413-199101

26      Printed:
12/06/02   16:36:49

**E-FILED**
Friday, 15 February, 2008  12:14:55 PM
Clerk, U.S. District Court, ILCD

COMMERCIAL GENERAL LIABILITY
CG 02 00 07 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

A. **Cancellation** (Common Policy Conditions) is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

   a. For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   b. For a reason other than nonpayment of premium, we will mail the notice at least:

      (1) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

B. The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

C. **Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2003

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003

(2) Any loss, cost or expense arising out of any:

  (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

  (a) Less than 26 feet long; and

  (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

  (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

  (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

      © ISO Properties, Inc., 2003      CG 00 01 12 04   □

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

© ISO Properties, Inc., 2003

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

© ISO Properties, Inc., 2003

CG 00 01 12 04    □

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**COVERAGE C MEDICAL PAYMENTS**

1. **Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      **(1)** Products that are still in your physical possession; or

      **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

      **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

      **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 © ISO Properties, Inc., 2003

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance does not apply to:

A.  "Bodily injury," "property damage" or "personal and advertising injury" as defined in the policy arising out of:

    **1.**  Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

    **2.**  The use of asbestos in constructing or manufacturing any goods, product, or structure;

    **3.**  The removal of asbestos from any goods, product or structure;

    **4.**  The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

B.  Any damages or any loss, cost or expense arising out of any claim or suit by or on behalf of any governmental authority requirement that any insured or any other person or entity should be, or should be responsible for:

    **1.**  Assessing the presence, absence or amount or effects of asbestos;

    **2.**  Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating asbestos; or

C.  Responding to asbestos in any way other than as described in subparagraphs **A.** and **B.** above.

D.  Any actual or alleged negligence in hiring, training, supervision, instructions, recommendations, warnings or advice given or which should have been given to employees, consumers, or others in connection with **A.** and **B.** above; or

E.  Any obligation to share damages with or repay someone else who must pay damages in connection with any of the subsections above.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Exclusion – Lead Liability

The following exclusions are added to all coverages contained within.

      COMMERCIAL GENERAL LIABILITY COVERAGE FORM
      BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance does not apply to:

1. Actual or alleged "bodily injury," arising out of the ingestion, inhalation or absorption of lead or lead compounds in any form.

2. Actual or alleged "property damage" or "personal and advertising injury" arising out of any form of lead or lead compounds.

3. Any loss, cost or expense arising out of any:

    a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead or lead compounds;

    b. Claim or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

    c. Any actual or alleged negligence in hiring, training, supervision, instructions, recommendations, warnings or advice given or which should have been given to employees, consumers, or others in connection with lead or lead compounds; or

    d. Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

SL 20 04 01 06             Includes copyrighted material of            Page 1 of 1
                 Insurance Services Office, Inc. with its permission

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
CG 24 26 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**STATE AUTO**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES - DEFENSE COST REIMBURSEMENT

This endorsement modifies insurance provided under the following when written as part of a Commercial Package Policy containing liability coverage:

BUSINESSOWNERS LIABILITY COVERAGE FORM
COMMERCIAL AUTOMOBILE COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL UMBRELLA COVERAGE FORM
DIRECTORS, OFFICERS, AND TRUSTEES LIABILITY
EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
EMPLOYERS LIABILITY COVERAGE FORM
EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM
LIMITED EMPLOYERS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
PRODUCT WITHDRAWAL COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
TRUCKERS COVERAGE FORM

A. The provisions of Paragraphs **B., C.** and **D.** are added to all Insuring Agreements that set forth a duty to defend under:
1. Section I of the Commercial General Liability; Commercial Umbrella, Directors, Officers, and Trustees Liability, Employee Benefits Liability, Employers Liability, Employment–Related Practices Liability, Liquor Liability, Owners And Contractors Protective Liability, Products/Completed Operations Liability, Product Withdrawal, and Railroad Protective Liability;
2. Section **A.** of the Businessowners Liability;
3. Section II of the Employment Practices Liability;
4. Section II – Liability Coverage in Paragraph **A. Coverage** under the Commercial Business Auto, Garage, and Truckers Coverage Forms.

B. In event a claim or "suit" seeks damages to which this insurance arguably may not apply, we will, at our option:
1. Provide the insured with counsel and enter a defense of such claim or "suit" while proceeding to investigate the factual situation;
2. Pursue these courses of action without waiving any rights and without prejudice to us or to the insured;
3. Seek a "declaratory judgment" as to what our obligations are under the circumstances;

C. Should a court determine that the insurance does not apply and that we therefore had no duty to defend such claim or "suit", we may:
1. Withdraw from the defense of any such "suit" and afford the insured no further defense or other benefits related to such claim or "suit"; and
2. Be entitled to reimbursement from the insured after the insured is notified in writing, of all amounts paid by us for the defense provided in the underlying "suit" which we had no contractual duty to provide (other than by the terms of this endorsement)
3. Neither party shall have the right to seek reimbursement of any amounts or expenses paid by that party associated with the "declaratory judgment".

D. The following Definition is added:
"Declaratory judgment" means a judicial proceeding, including possible appeals there from, ultimately leading to a judgment intended to determine litigants' rights that were previously uncertain or doubtful.

**SI 01 62 04 06  Page 1 of 1**
•//•SI 01 62 04 06

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

8    Printed:
12/11/06  08:48:15

COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

```
SPP 2413256 01 20070926                        13 12 2413256 R092607
                           ORIGINAL COPY        OPTIPLAN-AGENT BILL
                                                              13  NAC
```

```
            STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY          3

                  COMMERCIAL INLAND MARINE DECLARATIONS                 2

    POLICY NUMBER:  SPP 2413256 01                                      2

    NAMED INSURED AND ADDRESS:            AGENCY NAME, ADDRESS AND TELEPHONE:   2

        A-M LLC                           SNYDER AND SNYDER AGENCY INC
        C/O JOHN HAMILTON                 PO BOX 1546
        702 N CLINTON                     BLOOMINGTON, IL       61702
        BLOOMINGTON, IL       61701
                                          309-664-1800

    BRANCH:  13                           AGENCY NUMBER: 0001030

    POLICY PERIOD:    FROM:  JULY 31, 2007       TO: JULY 31, 2008     AT
             12:01 AM   STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

    THESE DECLARATIONS PAGES CONTINUE THIS POLICY INFORCE FOR THE PERIOD
    INDICATED UPON VALID PAYMENT OF THE PREMIUM WHEN DUE
```

```
            COVERAGE PARTS THAT
            APPLY TO THIS POLICY              COVERAGE PART PREMIUM
        -----------------------              -------------------------
    BUILDERS RISK COVERAGE                   $3000
    TERRORISM INSURANCE COVERAGE             $  90
```

```
                TOTAL INLAND MARINE POLICY PREMIUM   $ 3090
```

```
    ENDORSEMENTS THAT APPLY TO THIS INLAND MARINE POLICY INCLUDE THE INLAND
    MARINE POLICY JACKET (FORM FI-102 04/96, WITH COMMON POLICY CONDITIONS AND
    OTHER PROVISION) AND THE FOLLOWING ADDITIONAL COVERAGE FORMS AND
    ENDORSEMENTS:

     CL0600 05/03
     CL0650 12/02
     CL1630 06/04
     IL0999 05/04
     IM3009 05/99
     CL0121 05/03
     IM0871 06/02
     IM7056 1.0
     IM7066 1.0
     IM7051 1.1
```

```
     ISSUE DATE 09/26/07          COUNTERSIGNED BY:
                                               -------------------------
                                               AUTHORIZED REPRESENTATIVE
```

```
    FI 101 D (04/96)
```

**STATE AUTO**
Insurance Companies

This endorsement changes
the policy
**- PLEASE READ THIS CAREFULLY**

# CERTIFIED TERRORISM LOSS

1. The following definitions are added.
   a. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
      1) to be an act of terrorism;
      2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;
      3) to have resulted in damage:
         a) within the United States; or
         b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission; and
      4) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

   No act will be certified by the Secretary of the Treasury as an act of terrorism if the act is committed as part of the course of a war declared by the Congress (except with respect to any coverage for workers' compensation) or if property and casualty insurance losses resulting from the act do not exceed $5,000,000 in the aggregate.

   b. "Certified terrorism loss" means loss that results from a "certified act of terrorism".
2. The "terms" of any terrorism exclusion that is part of or that is attached to this Coverage Part are amended by the following provision:
   This exclusion does not apply to "certified terrorism loss".
3. The following provision is added.
   If the Secretary of the Treasury determines that the amount of "certified terrorism loss" has exceeded the maximum annual liability as set forth by the Federal Terrorism Risk Insurance Act of 2002 or any amendments thereto, "we" will not pay for any portion of "certified terrorism loss" that exceeds the maximum annual liability.
4. The following provisions are added.
   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion; and
   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

**CL 06 00 05 03 Page 1 of 1**
•//•CL 06 00 05 03

Copyright, American Association of Insurance Services, Inc., 2003

**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BIOLOGICAL AND CHEMICAL NON-CERTIFIED ACT OF TERRORISM EXCLUSION AND WAR AND MILITARY ACTION EXCLUSION

1. The following definitions are added.
   a. "Non-certified act of terrorism" means a violent act or an act that is dangerous to human life, property, or infrastructure that:
      1) is committed by an individual or individuals; and
      2) appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion; and
      3) is not certified as a terrorist act pursuant to the Federal Terrorism Risk Insurance Act of 2002 or any amendments thereto.
   b. "Non-certified terrorism loss" means any loss that results from a "non-certified act of terrorism".

2. Under Perils Excluded (or under Exclusions in form GS-200), the War Exclusion, wherever it appears, is deleted and replaced by the following:
   **WAR AND MILITARY ACTION EXCLUSION**
   "We" will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
   a. War, including undeclared or civil war; or
   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
   With respect to any action that comes within the "terms" of this exclusion and involves nuclear reaction or radiation or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

3. The following Non-certified Act of Terrorism Exclusion is added. The Non-certified Act of Terrorism Exclusion applies only to an incident of "non-certified terrorism loss":

   a. that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
   b. in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

   However, the Non-certified Act of Terrorism Exclusion does not apply to any loss that results from an act that is not certified by the Secretary of the Treasury to be an act of terrorism solely because the property and casualty insurance losses resulting from that act do not exceed $5,000,000 in the aggregate.

   **NON-CERTIFIED ACT OF TERRORISM EXCLUSION**
   "We" will not pay for loss or damage caused directly or indirectly by a "non-certified act of terrorism", including action in hindering or defending against an actual or expected "non-certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

4. The following provisions are added.
   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion; and
   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

**CL 06 50 12 02  Page 1 of 1**
•//•CL 06 50 12 02

Copyright, American Association of Insurance Services, Inc., 2002

9
08/20/07   09:57:58

**STATE AUTO**
Insurance Companies

This endorsement changes
the policy
**- PLEASE READ THIS CAREFULLY -**

# CONDITIONAL TERRORISM EXCLUSION

## NOTICE

The Terrorism Risk Insurance Program (the Program), which was established by the federal law known as the Terrorism Risk Insurance Act of 2002, is scheduled to terminate on December 31, 2005.

The Terrorism Exclusion found in this endorsement will apply only if the federal government does not renew, extend, or otherwise continue the Program or if the conditions, definitions, or requirements of the Program are changed by the federal government and federal law no longer requires that we make Terrorism Coverage available to you.

1. The Terrorism Exclusion set forth by this endorsement becomes effective on the earliest of the following:
   a. the date that the federal Terrorism Risk Insurance Program (the Program) established by the Terrorism Risk Insurance Act of 2002 has terminated with respect to the type of insurance provided by the Coverage Part to which this endorsement applies; or
   b. the effective date of a renewal, extension, or continuation of the Program, if federal law no longer requires that "we" make terrorism coverage available to "you" and the Program has been renewed, extended, or continued subject to changes that:
      1) redefine terrorism; or
      2) increase "our" financial exposure under the Program; or
      3) impose requirements on insurance coverage for terrorism that differ from the terms, amounts, or other limitations that otherwise govern coverage for loss or damage under the "terms" of the Coverage Part to which this endorsement applies.

2. If the Terrorism Exclusion set forth by this endorsement becomes effective, this Terrorism Exclusion:
   a. supersedes any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the Coverage Part to which this endorsement applies, but only with respect to loss or damage caused by one or more incidents of terrorism that occur on or after the effective date of this Terrorism Exclusion; and

   b. remains in effect unless "we" notify "you" of changes to this Terrorism Exclusion.

3. If none of the conditions described above under items **1.a.** and **1.b.** occur, any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the Coverage Part to which this endorsement applies continue to apply until "we" notify "you" of changes to such other endorsements.

4. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:
   "Terrorism" means activities against persons, organizations, or property of any nature:
   a. that involve the following or preparation for the following:
      1) use or threat of force or violence; or
      2) commission or threat of a dangerous act; or
      3) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and
   b. when one or both of the following applies:
      1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
      2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

CL 16 30 06 04 Page 1 of 2
*//*CL 16 30 06 04

Copyright, American Association of Insurance Services Inc. 2003

13   Printed:
08/20/07   09:57:58

5. The following exclusion is added:
**TERRORISM EXCLUSION**
We" will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":
a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or
b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or
c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or
e. the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico, and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, "we" will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage

that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.
Item **5.e.** above describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Terrorism Exclusion will apply to that incident. When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Coverage Part to which this endorsement applies.
6. When the Terrorism Exclusion set forth by this endorsement applies due to an incident of "terrorism" described above under items **5.a.** or **5.b.**, that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the Coverage Part to which this endorsement applies.
7. The following provisions are added.
a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the Coverage Part to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that Coverage Part under:
1) exclusions that address war, military action, or nuclear hazard; or
2) any other exclusion.
b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the Coverage Part to which this endorsement applies under:
1) exclusions that address war, military action, or nuclear hazard; or
2) any other exclusion.

**CL 16 30 06 04 Page 2 of 2**
•//•CL 16 30 06 04

Copyright, American Association of Insurance Services Inc. 2003

14
08/20/07   09:57:58   Printed:

**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN
RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK
INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE
OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)

## SCHEDULE

Terrorism Premium (Certified Acts)
(A) Premium through 12/31/05    $ See Below
(B) Estimated Premium beyond 12/31/05 (refer to Paragraph C. below)    $ See Below

**Additional information, if any, concerning the terrorism premium:**

The Terrorism premiums displayed on the declaration pages of this policy represent the charge for Terrorism Coverage for the entire policy term. If the Terrorism Risk Insurance Act of 2002 is not continued or extended upon the 12/31/2005 expiration of the Act, a return premium may be due. The return premium will be the prorated portion from 12/31/2005 to the expiration of your policy term.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

**C. Possibility Of Additional Or Return Premium**

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insur-

ance Act of 2002. The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

**IL 09 99 05 04 Page 1 of 1**
*//*IL 09 99 05 04

ISO Properties, Inc., 2004

23    Printed:
06/20/07    10:59:08

AAIS
IM 30 09 Ed 05 99
Page 1 of 1

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## ILLINOIS

1.  Under Perils Excluded, if applicable, the following addition amends Criminal, Fraudulent, or Dishonest Acts:

    However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

    a.  arose out of a pattern of criminal domestic violence; and

    b.  the perpetrator of the loss is criminally prosecuted for the act causing the loss;

    this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

    "Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

2.  Under Other Conditions, the Appraisal condition is amended by the following addition:

    If "you" request an appraisal and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

3.  Under Other Conditions, the Misrepresentation, Concealment, or Fraud condition is deleted and replaced by:

    **Misrepresentation, Concealment, or Fraud** -- "We" do not provide coverage for an insured who has:

    a.  willfully concealed or misrepresented:

        1)  a material fact or circumstance with respect to this insurance; or
        2)  an insured's interest herein.

    b.  engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

4.  Under Other Conditions, the Suit Against Us condition is amended by the following addition:

    However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

**IM 30 09 Ed 05 99**
Copyright, American Association of Insurance Services, 1999

AAIS
CL 01 21 05 03
Page 1 of 2

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## ILLINOIS

1.  Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

**Cancellation --**

a.  "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

b.  "We" may cancel this policy by mailing "our" written notice of cancellation to "you" and any mortgagee or lienholder at the last mailing address known to "us". "Our" notice will include the reason or reasons for cancellation. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

c.  During the first 60 days this policy is in effect, "we" may cancel this policy for any reason. If "we" cancel for any reason other than those listed in d. or e. below, "we" will mail the notice of cancellation 30 days before the effective date of cancellation.

d.  For policies not issued to cover one- to four-family dwellings, "we" may cancel this policy at any time during the policy period, if the insured property consists of one or more buildings:

1)  to which, following a fire loss, permanent repairs have not commenced within 60 days after satisfactory adjustment of loss, unless such delay is a direct result of a labor dispute or weather conditions;
2)  that have been unoccupied for 60 consecutive days, except buildings which have a seasonal occupancy and buildings which are undergoing construction, repair, or reconstruction and are properly secured against unauthorized entry;

3)  for which, because of their physical condition, there is an outstanding demolition order, or which have been declared unsafe in accordance with applicable law; or
4)  to which heat, water, sewer service, or public lighting have not been connected for 30 consecutive days or more.

If "we" cancel this policy for reasons listed under d.1) through d.4) above, cancellation will be effective ten days after "you" and any mortgagee or lienholder have received "our" notice. The notice of cancellation will be sent by regular mail and certified mail, and "your" return premium, if any, will be calculated on a pro rata basis.

e.  "We" may cancel this policy at any time during the policy period if the premium has not been paid when due. If "we" cancel this policy for non-payment of premium, "we" will mail the cancellation notice at least ten days before the effective date of cancellation.

f.  If this policy has been in effect more than 60 days, or if it is a renewal of a policy issued by "us", "we" may cancel this policy according to the "terms" set forth under item d. or item e. above, or "we" may cancel if one or more of the following reasons apply:

1)  If this policy covers one- to four-family dwellings used for residential purposes or any personal property incidental to residential occupancies, "we" may cancel this coverage when:

a)  the policy was obtained by misrepresentation or fraud; or
b)  there has been an act that measurably increases the risk originally accepted.

Copyright, American Association of Insurance Services, Inc., 2003

2) If this policy covers any other type of property, "we" may cancel this coverage when:

a) the policy was obtained through a material misrepresentation;
b) any "insured" has violated any of the "terms" and conditions of the policy;
c) the risk originally accepted has measurably increased;
d) certification of the Director of the loss of reinsurance which provided coverage to "us" for all or a substantial part of the underlying risk insured; or
e) a determination by the Director that the continuation of the policy could place "us" in violation of the insurance laws of this state.

If "we" cancel this policy for any of the reasons listed under f.1) or f.2) above, "we" will mail the cancellation notice at least 60 days before the effective date of cancellation.

g. "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

2. Under Common Policy Conditions, the following condition is added:

**Nonrenewal --**

If "we" decide not to renew this policy, "we" will mail "our" notice of nonrenewal to "you" at least 60 days before the end of the policy period or anniversary date. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record and any mortgagee or lienholder at the last mailing address known to "us". Proof of mailing is sufficient proof of notice. "Our" notice will include the reasons for nonrenewal.

3. Under Common Policy Conditions, the following condition is added:

**Renewal --** If "we" decide to renew this policy with premium increases of 30% or higher, or impose changes in deductible or coverage that materially alter the policy, "we" will mail to "you" written notice of such increase or change in deductible or coverage at least 60 days before the renewal or anniversary date. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice. The 60-day prior notification because of premium increase is not necessary where increases exceeding 30% are due to changed conditions or increased or broadened coverage initiated by "you".

**CL 01 21 05 03**

Copyright, American Association of Insurance Services, Inc., 2003

AAIS
IM 08 71 06 02
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## ILLINOIS

1. Under Definitions, item b. of Pollutants is deleted.

2. Under Perils Excluded, Criminal, Fraudulent, or Dishonest Acts is amended to include the following:

   However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

   a. arose out of a pattern of criminal domestic violence; and

   b. the perpetrator of the loss is criminally prosecuted for the act causing the loss;

   this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   "Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

3. Appraisal is amended to include the following:

   If "you" request an appraisal and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

4. Misrepresentation, Concealment, or Fraud is deleted and replaced by the following:

   **Misrepresentation, Concealment, or Fraud** -- "We" do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or
      2) an insured's interest herein; or

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

5. Suit Against Us is amended to include the following:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

IM 08 71 06 02

Copyright, American Association of Insurance Services, Inc., 2002

SPP 2413256 01 20070926                                    13 12 2413256 R092607
                                    OPTIPLAN-AGENT BILL
                                                              13  NAC
AAIS
IM-7056 ED 1.0
PAGE 1 OF 1
--------------------------------------------------------------------
            B U I L D E R  S '  R I S K   D E C L A R A T I O N S

            (THE INFORMATION REQUIRED BELOW MAY BE SHOWN ON
            A SEPARATE SCHEDULE OR SUPPLEMENTAL "DECLARATIONS".)


--------------------------------------------------------------------
SCHEDULED LOCATIONS
--------------------------------------------------------------------

    LOCATION
      NO.                                           LIMIT

    1              SAVANNAH GREEN SUBDIVISION       $ 1000000

                                                    $

                                                    $


    SCAFFOLDING AND CONSTRUCTION FORMS              $

    COVERED PROPERTY IN TRANSIT                     $ 130,000

    COVERED PROPERTY AT UNSCHEDULED STORAGE LOCATIONS   $

    ANY ONE LOSS CAUSED BY "EARTH MOVEMENT" AND
    VOLCANIC ERUPTION                               $

    ANY ONE LOSS CAUSED BY "FLOOD" AND "GROUND WATER"   $

--------------------------------------------------------------------
  DEDUCTIBLE
--------------------------------------------------------------------


                                                DEDUCTIBLE
                                                  AMOUNT

    FOR ALL COVERED PERILS UNLESS A DIFFERENT
    DEDUCTIBLE IS INDICATED BELOW                   $ 1,000

    THEFT                                           $

    "EARTH MOVEMENT" AND VOLCANIC ERUPTION          $

    "FLOOD" AND "GROUND WATER"                      $

IM-7056 ED 1.0

```
SPP 2413256 01 20070926                          13 12 2413256 R092607
                                    OPTIPLAN-AGENT BILL
                                                          13  NAC

AAIS
IM-7066 ED 1.0
PAGE 1 OF 1
---------------------------------------------------------------------

           R E P O R T I N G   C O N D I T I O N S   S C H E D U L E

      (THE INFORMATION REQUIRED BELOW MAY BE SHOWN ON THE "DECLARATIONS.")


    ----------------------------        CHECK IF APPLICABLE:
       REPORTING CONDITIONS
    ----------------------------        |   | CONTINGENT COVERAGE
                                        |   |  LIMIT FOR ANY ONE LOSS  $
ADJUSTMENT PERIOD   REPORTING PERIOD
   (CHECK ONE)        (CHECK ONE)       |   | DIFFERENCE IN CONDITIONS:
                                        |   |  LIMIT FOR ANY ONE LOSS  $
   |   | MONTHLY     | X | MONTHLY
   |   | QUARTERLY   |   | QUARTERLY    RATES AND PREMIUM--
   |   | ANNUAL      |   | ANNUAL


   RATES AND PREMIUM --                 CONTINGENT COVERAGE RATE   $
                                        DIFFERENCE IN CONDITIONS   $
   RATES (PER $100)                     ALL OTHER COVERED PROPERTY
                                          RATE                     $
   .30/12=.025           $              DEPOSIT PREMIUM            $
                         $              MINIMUM PREMIUM            $
                         $
DEPOSIT PREMIUM      $ 3000
MINIMUM PREMIUM      $ 1000


----------------------------
CONTRACTORS' REPORTING
CONDITIONS
----------------------------



ADJUSTMENT PERIOD--  REPORTING PERIOD
   (CHECK ONE)          (CHECK ONE)

   |   | MONTHLY        |   | MONTHLY
   |   | QUARTERLY      |   | QUARTERLY
   |   | ANNUAL         |   | ANNUAL
```

```
IM-7066 ED 1.0
```

AAIS
IM-7051  Ed 1.1
Page 1 of 10

# BUILDERS' RISK COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Builders' Risk Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

4. "Earth movement" means any movement or vibration of the earth's surface (other than "sinkhole collapse") including but not limited to earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting, of earth.

5. "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

6. "Ground water" means:

   a.  water that backs up through a sewer or drain; or

   b.  water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into a building, sidewalk, driveway, foundation, swimming pool, or other structure.

7. "Limit" means the amount of coverage that applies.

8. "Pollutant" means:

   a.  any solid, liquid, gaseous, or thermal irritant or contaminant;

   b.  electromagnetic (visible or invisible) or sound emission; or

   c.  waste, including materials to be disposed of as well as recycled, reclaimed, or reconditioned.

9. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

10. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

Falling objects does not include loss to personal property in the open or to the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object.

Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

11. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

12. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow. It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

# PROPERTY COVERED

1. **Buildings and Structures** -- "We" cover direct physical loss caused by a covered peril to buildings and structures described on the "declarations" while in the course of construction, erection, or fabrication. This includes materials and supplies which will become a permanent part of the buildings or structures, foundations, excavations, grading, filling, attachments, and permanent fixtures.

2. **Scaffolding, Transit, and Storage Locations** -- When a "limit" is indicated on the "declarations" "we" cover direct physical loss caused by a covered peril to:

   a. scaffolding or construction forms provided the scaffolding or construction forms are located at a building or structure described on the "declarations";

   b. materials and supplies which will become a permanent part of buildings or structures described on the "declarations" while they are;

      1) in transit; or
      2) at an unscheduled storage location.

# PROPERTY NOT COVERED

1. **Aircraft or Watercraft** -- "We" do not cover aircraft or watercraft.

2. **Automobiles** -- "We" do not cover automobiles or any self-propelled vehicles that are designed for highway use.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Existing Buildings or Structures** -- "We" do not cover existing buildings or structures to which additions, alterations, improvements, or repairs are being made.

5. **Land** -- "We" do not cover land including land on which covered property is located.

6. **Money and Securities** -- "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

7. **Trees, Shrubs and Plants** -- "We" do not cover trees, shrubs, plants, and lawns.

8. **Waterborne Property** -- "We" do not cover property while waterborne except while in transit in the custody of a carrier for hire.

# ADDITIONAL COVERAGES

1. **Debris Removal** -- "We" pay the cost to remove the debris of covered property that

E-FILED
Friday, 15 February, 2008  12:15:07 PM
Clerk, U.S. District Court, ILCD

AAIS
IM-7051  Ed 1.1
Page 3 of 10

is caused by a covered peril. This coverage does not include costs to:

a.   extract "pollutants" from land or water; or

b.   remove, restore, or replace polluted land or water.

"We" will not pay any more under this coverage than 25% of the amount "we" pay for the direct loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

"We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2.  **Emergency Removal** -- "We" pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered peril. "We" pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to ten days after the property is first moved, but does not extend past the date on which this policy expires.

3.  **Fire Department Service Charges** -- "We" pay up to $1,000 to cover "your" liability, assumed by contract or agreement prior to the loss, for fire department service charges.

This coverage is limited to charges incurred when the fire department is called to save or protect covered property from a covered peril.

No deductible applies.

This is an additional "limit".

4.  **Pollutant Cleanup and Removal** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

"We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

The most "we" pay for each site or location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

This is an additional "limit".

## PERILS COVERED

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1.  "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

AAIS
IM-7051  Ed 1.1
Page 4 of 10

a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Earth Movement or Volcanic Eruption** -- "We" do not pay for loss caused by any "earth movement" (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano.

"We" do pay for direct loss by fire, explosion, or "volcanic action" resulting from either "earth movement" or eruption, explosion, or effusion of a volcano.

All volcanic eruptions that occur within a 168 hour period shall be considered a single loss.

This exclusion does not apply to covered property while in transit.

This exclusion does not apply when a "limit" is indicated for "earth movement" or volcanic eruption on the "declarations".

c. **Flood** -- "We" do not pay for loss caused by "flood", but if fire, explosion, or theft results "we" do cover the loss caused by the fire, explosion, or theft.

This exclusion does not apply to covered property while in transit.

This exclusion does not apply when a "limit" is indicated for "flood" on the "declarations".

d. **Ground Water** -- "We" do not pay for loss caused by "ground water" but if fire, explosion, or theft results "we" do cover the loss caused by the fire, explosion, or theft.

This exclusion does not apply to covered property while in transit.

This exclusion does not apply when a "limit" is indicated for "ground water" on the "declarations".

e. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. "We" do pay for direct loss by fire resulting from the nuclear hazard.

f. **Ordinance or Law** -- "We" do not pay for loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing its debris.

g. **Penalties** -- "We" do not pay for loss caused by penalties for noncompletion or non-compliance with any contract terms or conditions.

h. **War** -- "We" do not pay for loss caused by war. This means:

1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;
2) a warlike act by a military force or by military personnel;
3) the destruction, seizure, or use of the property for a military purpose; or
4) the discharge of a nuclear weapon even if it is accidental.

2. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

   a. **Contamination or Deterioration** – "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

   b. **Criminal, Fraudulent, or Dishonest Acts** – "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

      1) "you";
      2) others who have an interest in the property;
      3) others to whom "you" entrust the property;
      4) "your" partners, officers, directors, trustees, or joint adventurers; or
      5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

      This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

      This exclusion does not apply to covered property in the custody of a carrier for hire.

   c. **Explosion, Rupture, or Bursting** – "We" do not pay for loss caused by explosion, rupture, or bursting of steam boilers, steam or gas turbines, steam pipes, or steam engines. This exclusion applies only to loss or damage to the steam boilers, steam or gas turbines, steam pipes, or steam engines in which the loss occurred.

   d. **Freezing** – "We" do not pay for loss caused by water; other liquids; powder; or molten material that leaks or flows from plumbing, heating, air-conditioning systems, or appliances other than fire protective systems caused by freezing. This does not apply if "you" use reasonable care to maintain heat in the building or structure; or "you" drain the equipment and turn off the supply if the heat is not maintained.

   e. **Loss of Use** – "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

   f. **Materials and Workmanship** – "We" do not pay for loss caused by faulty, inadequate, or defective materials or workmanship. But if loss by a covered peril results "we" pay for the resulting loss.

   g. **Missing Property** – "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property. This exclusion does not apply to covered property in the custody of a carrier for hire.

   h. **Pollutants** – "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

i. **Rain, Snow, Ice, or Sleet** -- "We" do not pay for loss caused by or resulting from rain, snow, ice, or sleet to property in the open which is not part of the permanent building or structure. This exclusion does not apply to property in the custody of carriers for hire.

j. **Settling, Cracking, Shrinking, Bulging, or Expanding** -- "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, foundations, walls, ceilings, glass, or roofs. But if loss by a covered peril results "we" pay for the resulting loss.

k. **Temperature/Humidity** -- "We" do not pay for loss caused by humidity, dampness, dryness, or changes in or extremes of temperature.

l. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

m. **Wear and Tear** -- "We" do not pay for loss caused by wear and tear, marring, or scratching.

3. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by fire or explosion results "we" will pay for the resulting loss.

a. **Defects, Errors, and Omissions** -- "We" do not pay for loss which results from an act, defect, error, or omission (negligent or not) relating to:

1) design or specifications;
2) planning, zoning, development, siting, surveying, grading, or compaction.

b. **Electrical Currents** -- "We" do not pay for loss caused by arcing or by electrical currents other than lightning.

c. **Mechanical Breakdown** -- "We" do not pay for loss caused by mechanical breakdown including centrifugal force.

---

## WHAT MUST BE DONE IN CASE OF LOSS

---

1. **Notice** -- In case of a loss, "you" must:

a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

b. give notice to the police when the act that causes the loss is a crime.

2. **Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" will pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. However "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3. **Proof of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

a. the time, place, and circumstances of the loss;

b. other policies of insurance that may cover the loss;

c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

d. changes in title of the covered property during the policy period; and

e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination** -- "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** -- "You" must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property** -- "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1. **Replacement Cost** -- The value of covered property will be based on the replacement cost without any deduction for depreciation.

   The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

   This replacement cost provision does not apply to paragraphs 2. and 3. under Valuation.

2. **Pair or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3. **Loss to Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not cover more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "declarations" in any one occurrence.

AAIS
IM-7051  Ed 1.1
Page 8 of 10

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the covered property.

4. **Coinsurance** -- "We" only pay a part of the loss if the "limit" is less than 100% of the value of the covered property at the time of the loss. "Our" part of the loss is determined using the following steps:

   a. calculate 100% of the value of the covered property at the time of the loss;

   b. divide the "limit" for covered property by the result determined in 4.a. above;

   c. multiply the total amount of loss, after the application of any deductible, by the result determined in 4.b. above.

   The most "we" pay is the amount determined in 4.c. above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

   If there is more than one "limit" indicated on the "declarations" for this coverage part, this procedure applies separately to each "limit".

   If there is only one "limit" indicated on the "declarations" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

5. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

6. **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

   If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Our Options** -- "We" have the following options:

   a. pay the value of the loss;

   b. pay the cost of repairing or replacing the loss;

   c. rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

   d. take all or any part of the damaged property at the agreed or appraised value.

   "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

AAIS
IM-7051  Ed 1.1
Page 9 of 10

3. **Property of Others** -- Losses to property of others may be adjusted with and paid to:

   a. "you" on behalf of the owner; or

   b. the owner.

   If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit to Others** -- Insurance under this coverage shall not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   On "your" death, "we" cover the following as an insured:

   a. the person who has custody of "your" property until a legal representative is qualified and appointed; or

   b. "your" legal representative.

   This person or organization is an insured only with respect to property covered by this coverage.

   This coverage does not extend past the policy period indicated on the "declarations".

5. **Misrepresentation, Concealment or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein.

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

   c. any recovery expenses incurred by either are reimbursed first;

   d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8. **Restoration of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

   "You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

    a. all of the "terms" of this coverage have been complied with; and

    b. the suit has been brought within two years after "you" first have knowledge of the loss.

    If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

12. **Carriers For Hire** -- "You" may accept bills of lading or shipping receipts issued by carriers for hire that limit their liability to less than the replacement cost or actual cash value of the covered property.

13. **Occupancy and Use** -- This coverage is void if, without "our" prior written consent:

    a. the building or structure described on the "declarations" is occupied in whole or in part; or

    b. the building or structure described on the "declarations" is put to its intended use.

14. **When Coverage Ceases** -- Coverage ends when one of the following first occurs:

    a. this policy expires or is cancelled;

    b. the building or structure described on the "declarations" is accepted by the purchaser;

    c. "your" interest in the covered property ceases;

    d. "you" abandon construction with no intent to complete it; or

    e. the building or structure described on the "declarations" has been completed for more than 90 days.

IM-7051  Ed 1.1
Copyright MCMXCIV
American Association of Insurance Services

**E-FILED**
Friday, 15 February, 2008 12:15:19 PM
Clerk, U.S. District Court, ILCD

# AFFIDAVIT

STATE OF INDIANA

COUNTY OF MARION

BEFORE ME, the undersigned authority, on this 29th day of January 2008

Personally appeared <u>Gary J. Morris</u>, a Manager for State Automobile Mutual

Insurance Company.

The affiant is known to me to be a credible person of lawful age, who first being duly

cautioned and sworn deposes and says that the attached specimen policy jacket,

declaration page and endorsements together to the best of my knowledge and belief

represent a true copy of policy number   <u>SPP 2413242</u>

SIGNATURE OF AFFIANT

<u>Gary J. Morris</u>
PRINTED NAME OF AFFIANT

Subscribed and sworn to before me, this 29th day of January 2008
                                      DAY              MONTH

(seal)

SIGNATURE OF NOTARY PUBLIC

<u>Carolyn M. Wertz</u>
PRINTED NAME OF NOTARY PUBLIC

<u>COUNTY OF Shelby</u>

STATE OF INDIANA

My commission expires October 16, 2009

Exhibit C - Page 1 of 97

SPP 2413242 00 20070123                                    13 12 2413242 A012307
                            ORIGINAL COPY            OPTIPLAN-AGENT BILL
                                                                    13Y NAC

          STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY                    3

                                                                               2

POLICY NUMBER:  SPP 2413242 00                                                 2

NAMED INSURED AND ADDRESS:              AGENCY NAME, ADDRESS AND TELEPHONE:     2

    V-M LLC                             SNYDER AND SNYDER AGENCY INC
    C/O JOHN HAMILTON                   PO BOX 1546
    702 N CLINTON                       BLOOMINGTON, IL        61702
    BLOOMINGTON, IL       61701
                                        309-664-1800

BRANCH:  13                             AGENCY NUMBER: 0001030

POLICY PERIOD:    FROM:  JULY 31, 2006      TO: JULY 31, 2007

                    P O L I C Y   C H A N G E S

        THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

-----------------------------------------------------------------------------
    POLICY CHANGE EFFECTIVE: 07/31/06


        AT YOUR REQUEST THE FOLLOWING CHANGES HAVE BEEN MADE:
    DELETED INSTALLATION FLOATER AND ADDED BUILDERS RISK COVERAGE PER APP

-----------------------------------------------------------------------
    CORRECTION

        THANK YOU FOR MAKING STATE AUTO YOUR COMMERCIAL COMPANY

    01/23/07
-----------------------------------------------------------------------------

                                      -------------------------
IL 12 01 (04/93)                      AUTHORIZED REPRESENTATIVE

Exhibit C - Page 2 of 97

SPP 2413242 00 20070123

13 12 2413242 A012307
OPTIPLAN-AGENT BILL

13Y NAC

AAIS
IM-7056 ED 1.0
PAGE 1 OF 1
-----------------------------------------------------------------
            B U I L D E R S ' R I S K  D E C L A R A T I O N S

                (THE INFORMATION REQUIRED BELOW MAY BE SHOWN ON
                A SEPARATE SCHEDULE OR SUPPLEMENTAL "DECLARATIONS".)


-----------------------------------------------------------------------
SCHEDULED LOCATIONS
-----------------------------------------------------------------------

    LOCATION
      NO.                                            LIMIT

    1             SAVANNAH GREEN SUBDIVISION         $ 1000000

                                                     $

                                                     $


    SCAFFOLDING AND CONSTRUCTION FORMS               $

    COVERED PROPERTY IN TRANSIT                      $ 130000

    COVERED PROPERTY AT UNSCHEDULED STORAGE LOCATIONS  $

    ANY ONE LOSS CAUSED BY "EARTH MOVEMENT" AND
    VOLCANIC ERUPTION                                $

    ANY ONE LOSS CAUSED BY "FLOOD" AND "GROUND WATER"  $

------------------------------------------------------------------
  DEDUCTIBLE
------------------------------------------------------------------


                                            DEDUCTIBLE
                                              AMOUNT

    FOR ALL COVERED PERILS UNLESS A DIFFERENT
    DEDUCTIBLE IS INDICATED BELOW                    $ 1000

    THEFT                                            $

    "EARTH MOVEMENT" AND VOLCANIC ERUPTION           $

    "FLOOD" AND "GROUND WATER"                       $


IM-7056 ED 1.0

Exhibit C - Page 3 of 97

SPP 2413242 00 20070123

                                                    13 12 2413242 A012307
                                              OPTIPLAN-AGENT BILL
                                                                    13Y NAC

AAIS
IM7067 ED 1.0
PAGE 1 OF  MONTH AND YEAR        /

  B U I L D E R S'  R I S K  C O M P L E T E D  V A L U E  R E P O R T

NAMED INSURED:                           POLICY NO.

              LOCATION (INCLUDING STREET     TYPE OF    INTENDED
 JOB.NO.        ADDRESS, CITY AND STATE)      CONS      OCCUPANCY

  1       SAVANNAH GREEN SUBDIVISION


------------------------------------------------------------------
------------------------------------------------------------------

JOB NO.     DATE       DATE      TOTAL COMPLETED
           STARTED   COMPLETED   VALUE/CONTRACT $$    RATE     PREMIUM
                                                        $
                                                        $
                                                        $
                                                        $
                                                        $
                                                        $

                                                        $
                                                        $
                                                        $
                                                        $
                                                        $
                                                        $
                                                        $
                                                        $
                                                        $

------------------------------------------------------------------
------------------------------------------------------------------

  DATE                 AGENT                 SIGNATURE AND TITLE
                                             OF INSURED


IM-7067 ED 1.0

Exhibit C - Page 4 of 97

```
SPP 2413242 00 20060830   OPTIPLAN-AGENT BILL           12 N 00 13  R
                                                        AC00001030
```

STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY           3

SPECIAL ACCOUNT PROGRAM SUMMARY OF POLICIES AND PREMIUMS      2

POLICY NUMBER  SPP 2413242 00                                 2

NAMED INSURED AND ADDRESS           AGENCY NAME, ADDRESS AND TELEPHONE NUMBER 2

```
    V-M LLC                         SNYDER AND SNYDER AGENCY INC
    C/O JOHN HAMILTON               PO BOX 1546
    702 N CLINTON                   BLOOMINGTON, IL
    BLOOMINGTON, IL                 61702
    61701
                                    PHONE: 309-664-1800
  BRANCH: INDIANAPOLIS              AGENCY NUMBER: 0001030
```

POLICY PERIOD:        FROM: JULY 31, 2006  TO: JULY 31, 2007  AT
   12:01 AM  , STANDARD TIME, AT YOUR MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

SUMMARY OF POLICIES AND PREMIUMS AS OF ABOVE EFFECTIVE DATE          2
--------------------------------------------------------------------------------
TYPE / DESCRIPTION OF INSURANCE                              PREMIUM
--------------------------------------------------------------------------------
COMMERCIAL UMBRELLA LIABILITY                               $2,050.00
--------------------------------------------------------------------------------
LIABILITY                                                     $350.00
--------------------------------------------------------------------------------
INLAND MARINE                                              $3,090.00
--------------------------------------------------------------------------------

PREMIUMS ON PROVISIONAL OR DEPOSIT BASIS
WILL BE SUBJECT TO ADJUSTMENT.

                          TOTAL ADVANCE PREMIUM:    $5,490.00
                          * PREMIUM AT INCEPTION:   $5,490.00

* INCLUDES TERRORISM INSURANCE COVERAGE PREMIUM                $93.00


COUNTERSIGNED _____ BY _____
                                          (AUTHORIZED REPRESENTATIVE)


FORM NO. SP2     01/86                ISSUED 08/30/06    AGENT COPY

Exhibit C - Page 5 of 97

```
SPP 2413242 00 20060830   OPTIPLAN-AGENT BILL            12 N 00 13  R
                                                         AC00001030
```

STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY            3

POLICY SCHEDULE OF NAMES AND ADDRESSES            2

POLICY NUMBER SPP 2413242 00                                 2

NAMED INSURED AND ADDRESS        AGENCY NAME, ADDRESS AND TELEPHONE NUMBER  2

```
V-M LLC                          SNYDER AND SNYDER AGENCY INC
C/O JOHN HAMILTON                PO BOX 1546
702 N CLINTON                    BLOOMINGTON, IL
BLOOMINGTON, IL                  61702
61701
                                 PHONE: 309-664-1800
                                 AGENCY NUMBER: 0001030
```

LOCATIONS OF PREMISES YOU OWN, RENT OR OCCUPY            2

```
LOCATION 0001                    LOCATION 0002
1204 MONTGOMERY                  1309 ABERCORN
NORMAL, IL                       NORMAL, IL
MCLEAN COUNTY                    MCLEAN COUNTY
61761                            61761


LOCATION 0003                    LOCATION 0004
1305 ABERCORN                    1205 ABERCORN
NORMAL, IL                       NORMAL, IL
MCLEAN COUNTY                    MCLEAN COUNTY
61761                            61761


LOCATION 0005                    LOCATION 0006
1302 ABERCORN                    1402 ABERCORN
NORMAL, IL                       NORMAL, IL
MCLEAN COUNTY                    MCLEAN COUNTY
61761                            61761
```

```
FORM NO. SNADEC    11/89              ISSUED 08/30/06    AGENT COPY
```

Exhibit C - Page 6 of 97

SPP 2413242 00 20060830                                13 12 2413242 N083006
                          ORIGINAL COPY          OPTIPLAN-AGENT BILL
                                                           13  NAC

              STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY                    3

                  COMMERCIAL UMBRELLA LIABILITY DECLARATIONS                        2

POLICY NUMBER:  SPP 2413242 00                                                     2

NAMED INSURED AND ADDRESS:              AGENCY NAME, ADDRESS AND TELEPHONE:         2

    V-M LLC                             SNYDER AND SNYDER AGENCY INC
    C/O JOHN HAMILTON                   PO BOX 1546
    702 N CLINTON                       BLOOMINGTON, IL          61702
    BLOOMINGTON, IL        61701
                                        309-664-1800

BRANCH:  13                            AGENCY NUMBER: 0001030

POLICY PERIOD:   FROM:  JULY 31, 2006    TO:  JULY 31, 2007    AT
          12:01 AM   STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF
THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN
THIS POLICY.


ITEM 1: NAMED INSURED (IF DIFFERENT THAN SHOWN ABOVE):

ITEM 2: FORM OF NAMED INSURED'S BUSINESS: LIMITED LIABILITY CORPORATION

ITEM 3: RETROACTIVE DATE:

ITEM 4: LIMIT OF INSURANCE:
          POLICY AGGREGATE LIMIT  $ 5,000,000
          SELF-INSURED RETENTION  $              EACH INCIDENT OR OFFENSE
                                                 NOT COVERED BY UNDERLYING
                                                 INSURANCE

ITEM 5: FORM(S)/ENDORSEMENT(S) ATTACHED TO POLICY AT INCEPTION: CXS0001 (12/04)
    CXS0002 (07/98)  CXS0012 (07/05) CXS2172 (12/02) CXS2176 (11/02)
    CXS2187 (05/04) CXS2155 (09/99) CXS4005 (07/98)

ITEM 6: PREMIUM COMPUTATION:
          TOTAL ESTIMATED PREMIUM (SUBJECT TO AUDIT) $ 2050
          TERRORISM INSURANCE COVERAGE INCLUDED      $ 0

          PREMIUM ADJUSTABLE AT RATE OF $        PER       OF
          SUBJECT TO MINIMUM PREMIUM OF $

ITEM 7: SCHEDULE OF UNDERLYING INSURANCE:

| TYPE | AUTO LIABLITY | GENERAL LIABILITY | EMPLOYERS LIAB. |
|------|---------------|-------------------|-----------------|
| COMPANY | STATE AUTO INSURANCE | STATE AUTO INSURANCE | |
| POLICY NO. | BAP 2176715 | SPP 2413242 | |
| POLICY PERIOD | FROM 07/31/06  TO  07/31/06 | FROM 07/31/06  TO  07/31/06 | FROM  TO |
| LIMITS OF LIABILITY | EACH ACCIDENT  $ 1,000,000  OR  BODILY INJURY EACH PERSON  $  BODILY INJURY EACH ACCIDENT  $  PROPERTY DAMAGE EACH ACCIDENT  $ | GENERAL AGGREGATE  $ 2,000,000  PRODUCTS/COMPLETED OPERATIONS AGGREGATE  $ 2,000,000  PERSONAL AND ADVERTISING INJURY  $ 1,000,000  EACH OCCURRENCE  $ 1,000,000 | BODILY INJURY EACH ACCIDENT  $  BODILY INJURY BY DISEASE EACH EMPLOYEE  $  BODILY INJURY BY DISEASE POLICY LIMIT  $ |

IF GENERAL LIABILITY IS CLAIMS MADE, ITS RETROACTIVE DATE IS:

ISSUE DATE 08/30/06          COUNTERSIGNED BY:
                             ------------------------
CXS 0002-D (03/03)               AUTHORIZED REPRESENTATIVE

Exhibit C - Page 7 of 97

# COMMERCIAL UMBRELLA COVERAGE FORM

PLEASE READ THIS POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS. WE HAVE NO DUTY TO PROVIDE COVERAGE UNLESS THERE HAS BEEN FULL COMPLIANCE WITH ALL THE CONDITIONS – SECTION V – OF THIS POLICY.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us", and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section III – Who Is An Insured, beginning on page 11.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section VI – Definitions, beginning on page 17.

Section I Insuring Agreements

In consideration of the payment of premium and in reliance upon representations you made to us during the process of obtaining this insurance and subject to the Limit of Insurance shown in Item 4 of the Declarations, and all the exclusions, terms and conditions of this policy, we agree with you as follows:

Coverage A. Bodily Injury And Property Damage Liability

1. Insuring Agreement

   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

      (1) The amount we will pay for "ultimate net loss" is limited as described in Section IV – Limit Of Insurance;

      (2) At our discretion, we may investigate any "occurrence" and settle any resulting "claim" or "suit";

      (3) We have a right and duty to defend the insured against any "suits" to which this insurance applies:

         (a) But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or

         (b) If the applicable limit of "underlying insurance" is exhausted.

         However, we will have no duty to defend the insured against any "suits" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply; and

      (4) Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages A and B.

      No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section II – Defense.

   b. It is agreed that this insurance only applies if:

      (1) The "bodily injury" or "property damage" occurs during the policy period of this policy;

      (2) With respect to your liability (other than under a contract) for "bodily injury" to your "employees" arising out of and in the course of their employment by you:

         (a) Any "bodily injury" by disease is caused or aggravated by the conditions of that employment; and

         (b) An "employee's" last day of last exposure to conditions causing or aggravating such disease occurs during the policy period of this policy; and

      (3) The "bodily injury" or "property damage" is caused by an "occurrence", and such "occurrence" takes place in the "coverage territory".

      (4) Prior to the policy period, no insured listed under Paragraph 1. of Section III – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Exhibit C - Page 8 of 97

c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section III – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section III – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3)  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e.  "Ultimate net loss" because of "bodily injury" includes damages sought by any person or organization for care or loss of services resulting at any time from the "bodily injury".

2.  Exclusions. This insurance does not apply to:

a.  "Bodily injury" or "property damage" either expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or

(2)  Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract";

(b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; and

(c)  The indemnitor insured's "underlying insurance" also deems these expenses to be damages.

c.  Liability imposed on the insured or the insured's insurer, under any of the following laws:

(1)  Employees' Retirement Income Security Act of 1974 (E.R.I.S.A.) as now or hereafter amended, or any similar state or other governmental law;

(2)  Any uninsured motorists, underinsured motorists, or automobile no-fault or first party "bodily injury" or "property damage" law; or

(3)  Any workers compensation, unemployment compensation or disability benefits law or any similar law.

d.  The insured's liability (other than under an "insured contract") for "bodily injury" to:

(1)  An "employee" of the insured arising out of and in the course of:

(a)  Employment by the insured; or

(b)  Performing duties related to the conduct of the insured's business; or

(2)  The spouse, child, parent, brother or sister, or other dependents of that "employee" as a consequence of d.(1) above.

But this exclusion d.(1) and d.(2) applies only with respect to:

(1)  "Bodily injury" to any person in work subject to the Longshore and Harbor Workers Compensation Act (33 USC Sections 901-950), the Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-

942), and any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

(2) "Bodily injury" to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an "employee" due to "bodily injury" arising out of or in the course of employment, or any amendments to those laws;

(3) "Bodily injury" to a master or member of the crew of any vessel;

(4) Fines or penalties imposed for violation of federal or state law;

(5) Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws;

(6) Punitive or exemplary damages because of "bodily injury" to any "employee" employed in violation of law;

(7) "Bodily injury" to an "employee" while employed in violation of law with the insured's actual knowledge or the actual knowledge of any of your "executive officers"; and

(8) "Bodily injury" to an "employee" if such employment is subject to the workers compensation laws of the states of Massachusetts, Missouri, New Jersey, New York or any other state which requires unlimited Employers Liability coverage in conjunction with primary Workers Compensation policies.

This exclusion d. applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such injury.

With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of their employment by you, exclusions f., g., and h. do not apply.

e. "Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Failure to promote an employee;

(c) Discipline, demotion, negligent evaluation or negligent reassignment;

(d) Termination of that person's employment;

(e) Employment-related practices, policies, acts or omissions, including, without limitation, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(f) Oral or written publication of materials that slanders, defames or libels an "employee" or violates or invades an "employee's" right of privacy.

(2) The spouse, child, parent, brother or sister, or any other dependents of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraph e.(1) above is directed.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

f. Pollution:

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants":

(a) That are, or that are contained in any property that is:

(i) Being transported or towed by, handled, or handled for movement into, onto or from an "auto" covered by "underlying insurance";

(ii) Otherwise in the course of transit by or on behalf of the insured; or

(iii) Being stored, disposed of, treated or processed in or upon an "auto" covered by "underlying insurance";

CXS 00 01 12 04         Includes copyrighted material of          Page 3 of 22
              Insurance Services Office, Inc. with its permission

Exhibit C - Page 10 of 97

    (b) At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any insured. However, this subparagraph f.1.(b) does not apply to:

        (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

        (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than the additional insured; or

        (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    (c) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (d) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

        (i) Any insured; or

        (ii) Any person or organization for whom you may be legally responsible; or

    (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph f.(1)(e) does not apply to:

        (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

        (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

        (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

    (f) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

    (b) "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

(3) Exceptions:

(a) Paragraphs f.(1)(a) through f.(1)(e) of this exclusion do not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto" covered by "underlying insurance", or the parts of such an "auto", if:

  (i) The pollutants escape or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants; and

  (ii) The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in paragraphs f.(2) and f.(3) of the definition of "mobile equipment".

(b) Paragraphs f.(1)(c) through f.(1)(f) of this exclusion do not apply to pollutants that are not in or upon an "auto" covered by "underlying insurance" if:

  (i) The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto" covered by "underlying insurance"; and

  (ii) The discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage.

g. "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or chartered, rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrong doing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of aircraft, or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) Watercraft while ashore on premises you own or rent;

(2) Watercraft you do not own that are:

  (a) Less than 26 feet long; and

  (b) Not being used to carry persons or property for a charge; or

(3) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

h. "Bodily injury" or "property damage" arising out of the use of any "mobile equipment" or "auto" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i. "Bodily injury" or "property damage" however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j. "Property damage" to:

(1) Property you own, rent, or occupy; including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of any insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

Exhibit C - Page 12 of 97

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph j.(2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs j.(3), j.(4), j.(5) and j.(6) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph j.(6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.   "Property damage" to "your product" arising out of it or any part of it.

l.   "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.   Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o.   "Bodily injury" arising out of "personal and advertising injury."

p.   Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q.   "Bodily injury" or "property damage" arising out of:

(1) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

(2) The use of asbestos in constructing or manufacturing any goods, product or structure;

(3) The removal of asbestos from any goods, product or structure;

(4) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

(5) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with actions described in subparagraphs p.(1) through p.(4) of this exclusion; or

(6) Any obligation to share damages with or repay someone else who must pay damages in connection with actions described in parts p.(1) through p.(5) of this exclusion.

r.   "Bodily injury" or "property damage" arising out of any form of lead or lead compounds. In addition, this insurance does not apply to any loss, cost or expense arising out of:

(1) Any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead or lead compounds;

Exhibit C - Page 13 of 97

(2) Any "claim" or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

(3) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds; or

(4) Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

s.  "Bodily injury" or "property damage" arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

t.  Any obligation arising out of the administration of any employee benefit plan.

u.  Any "wrongful act" of any director or "executive officer" of any insured in the discharge or performance of their duties as such.

v.  "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion u. applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

w.  "Bodily injury" or "property damage":

(1) With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) Resulting from the "hazardous properties" of "nuclear material", if:

(a) The "nuclear material":

(i)  Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

(ii) Has been discharged or dispersed there from;

(b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" include radioactive, toxic or explosive properties;

(2) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Exhibit C - Page 14 of 97

(5) "Waste" means any waste material:

    (a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

    (b) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility";

(6) "Nuclear facility" means:

    (a) Any "nuclear reactor";

    (b) Any equipment or device designed or used for:

       (i) Separating the isotopes of uranium or plutonium;

       (ii) Processing or utilizing "spent fuel"; or

       (iii) Handling, processing or packaging "waste";

    (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

    (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

**Coverage B. Personal And Advertising Injury Liability**

1. Insuring Agreement

   a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

    (1) The amount we will pay for the "ultimate net loss" is limited as described in Section IV – Limit Of Insurance;

    (2) At our discretion, we may investigate any offense and settle any resulting "claim" or "suit";

    (3) We have a right and duty to defend the insured against any "suits" to which this insurance applies:

       (a) But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or

       (b) If the applicable limit of "underlying insurance" is exhausted.

      However, we will have no duty to defend the insured against any "suits" seeking damages for "personal and advertising injury" to which this insurance does not apply; and

    (4) Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages A and B.

No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section II – Defense.

   b. This insurance applies only to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions. This insurance does not apply to:

   a. "Personal and advertising injury"

    (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Exhibit C - Page 15 of 97

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of the insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(10) Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web-sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 16.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

(12) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

(13) Arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants" at any time;

(14) Arising out of:

(a) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

(b) The use of asbestos in constructing or manufacturing any good, product or structure;

(c) The removal of asbestos from any good, product or structure;

(d) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

(e) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts (14) (a) through (14) (d) of this exclusion; or

(f) Any obligation to share damages with or repay someone else who must pay damages in connection with parts (14) (a) through (14) (e) of this exclusion.

(15) Arising out of any form of lead or lead compounds. In addition, any loss, cost or expense arising out of:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead or lead compounds;

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Exhibit C - Page 16 of 97

(b) "Claim" or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

(c) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds; or

(d) Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

(16) Arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

(17) Arising out of any "wrongful act" of any director or "executive officer" of any insured in the discharge or performance of their duties as such.

(18) To:

(a) A person arising out of any:

(i) Refusal to employ that person;

(ii) Failure to promote an employee;

(iii) Discipline, demotion, negligent evaluation or negligent reassignment;

(iv) Termination of that person's employment;

(v) Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(vi) Oral or written publication of materials that slanders, defames or libels an "employee" or violates or invades an "employee's" right of privacy.

(b) The spouse, child, parent, brother or sister, or any other dependents of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraph (18) (a) of this exclusion were directed.

(c) This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "personal and advertising injury".

(19) However caused, arising, directly or indirectly, out of:

(a) War, including undeclared or civil war;

(b) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(c) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

(2) "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**Section II Defense**

1. When we have the duty to defend, or we investigate or settle any offense, "occurrence", "claim" or "suit", and then only to the extent that "underlying insurance" is not responsible for the costs shown below in items a. through f., we will pay on behalf of the insured:

a. Up to $250 for cost of bail bonds required because of accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies. We do not have to furnish these bonds.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Exhibit C - Page 17 of 97

    b.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

    c.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    d.  All costs taxed against the insured in any "suit" we defend.

    e.  "Pre-judgment interest" awarded against the insured on that part of any judgment covered under this policy. If we offer the applicable Limit of Insurance in settlement of a "claim" or "suit", we will not pay for any "pre-judgment interest" imposed or earned after the date of such offer.

    f.  All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of any judgment that is within the applicable Limit of Insurance.

2.  Payments under this section of the policy, as well as payments for all expenses we incur, will not reduce the Limit of Insurance.

3.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

    a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    b.  This insurance applies to such liability assumed by the insured;

    c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

    d.  The allegations in the "suit" and the information we know about the offense or "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

    e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    f.  The indemnitee:

      (1)  Agrees in writing to:

          (a)  Cooperate with us in the investigation, settlement or defense of the "suit";

          (b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

          (c)  Notify any other insurer whose coverage is available to the indemnitee; and

          (d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2)  Provides us with written authorization to:

          (a)  Obtain records and other information related to the "suit"; and

          (b)  Conduct and control the defense of the indemnitee in such "suit".

So long as the conditions in this subparagraph f. are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid under Section II – Defense. Notwithstanding the provisions of paragraph 2.b.(2) of Coverage A. – Bodily Injury And Property Damage Liability (Section I – Insuring Agreements), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

4.  Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses under Section II – Defense ends when:

    a.  We have used up the applicable limit of insurance in the payment of judgments or settlements; or

    b.  The conditions set forth above, or the terms of the agreement described in paragraph 3.f. above, are no longer met by the indemnitee.

**Section III  Who Is An Insured**

1.  If you are designated in the Declarations as:

Exhibit C - Page 18 of 97

a. An individual, you, as a natural person, and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Except with respect to any "auto", your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, or joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Except with respect to any "auto" or any "mobile equipment" registered in your name under any motor vehicle registration law, each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for :

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister, or other dependent of that co-"employee" as a consequence of paragraph 2.a.(1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs 2.a.(1)(a) or 2.a.(1)(b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by; or

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

You, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

e. Any person or organization qualifying as an insured under any policy of "underlying insurance".

(1) Coverage afforded such insureds under this policy applies only to injury or damage:

(a) Which is covered by this policy; and

(b) Which is covered by the "underlying insurance" or would be covered but for the exhaustion of such policy's limits of insurance.

(2) This policy shall not afford such person or organization limits of insurance in excess of:

(a) The minimum limit of insurance you agreed to provide; or

Exhibit C - Page 19 of 97

(b) The limit of insurance under this policy,

whichever is less.

f.  Any person or organization for whom you have agreed in writing prior to any "occurrence" or offense to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf, or facilities owned or used by you. This policy shall not afford such person or organization limits of insurance in excess of:

(1) The minimum limit of insurance you agreed to provide; or

(2) The limit of insurance under this policy,

whichever is less.

3.  With respect to any "auto" or any "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while operating such "auto" or "mobile equipment" with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the "auto" or registered "mobile equipment".

However, except with respect to your partners, "employees", or members of their households, the owner or anyone else from whom you hire or borrow an "auto" is an insured only if that "auto" is a trailer connected to an "auto" you own.

But no person or organization is an insured under this paragraph 3. for:

a.  "Bodily injury" to a co-"employee" of the person operating the "auto" or "mobile equipment";

b.  "Property damage" to property owned by the employer of any person who is an insured under this provision;

c.  Any "auto" you hire or borrow from one of your partners, "employees" or members of their households, if they are the owner of such "auto", unless:

(1) Insurance is afforded to that owner for such "auto" by "underlying insurance", or would be afforded under such "underlying insurance" but for exhaustion of such policy's limits of insurance; or

(2) Such "auto" is a trailer connected to an "auto" you own;

d.  Any "auto" being used by a person employed in the business of selling, servicing, repairing, or parking "autos" unless they are your "employee"; or

e.  The movement of property to or from an "auto" except your "employees" or partners, the lessees or borrowers of such "auto", and any "employees" of such lessees or borrowers.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a named insured if there is no other similar insurance available to that organization. However:

a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period set forth in the Declarations, whichever is earlier;

b.  Coverage is applicable only in excess of the Limits of "underlying insurance" as shown in Item 7 of the Declarations, and you must add such organization to your "underlying insurance" as soon as practicable, advising us of such additions. We may then make adjustment of premium charges as called for in Condition 9 – Maintenance of Underlying Insurance;

c.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

d.  Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the Declarations.

Section IV  Limit Of Insurance

1.  The Policy Aggregate Limit shown in Item 4 of the Declarations and the rules below fix the most we will pay regardless of the number of:

a.  Insureds;

b.  "Claims" made or "suits" brought; or

c.  Persons or organizations making "claims" or bringing "suits".

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Exhibit C - Page 20 of 97

2. The Policy Aggregate Limit is the most we will pay for:

    a. All "ultimate net loss" under Coverage A and Coverage B combined, except "ultimate net loss" because of injury and damage arising from the "automobile hazard"; and

    b. Each "occurrence" with regard to "ultimate net loss" because of injury and damage arising from the "automobile hazard".

3. If the Policy Aggregate Limit is paid prior to this policy's termination date for losses other than losses arising from the "automobile hazard", this policy's premium is fully earned.

4. The Policy Aggregate Limit applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

Section V Conditions

1. Appeals. In the event the insured or any "underlying insurer" elects not to appeal a judgment for damages covered by this policy and which exceeds the "retained limit", we may elect, but have no duty, to do so. We shall be liable, in addition to the Limit of Insurance, for all costs and expenses incurred and interest on judgments incidental to such an appeal and for all such costs, expenses and interest on appeals in connection with our right and duty to defend the insured under this policy.

2. Bankruptcy. Bankruptcy, insolvency, or receivership of the insured, the insured's estate or of any "underlying insurer" will not relieve us of our obligations under this policy. With regard to bankruptcy, insolvency, or receivership of any "underlying insurer", this policy shall not apply as a replacement of such bankrupt or insolvent insurer and our Limits of Insurance will apply only in excess of the required Limit(s) of Insurance stated in Item 7 of the Declarations of this policy.

3. Cancellation.

    a. The first named insured shown in the Declarations may cancel this policy by delivering it to us or any of our authorized agents or by sending us written notice stating when the future cancellation will take effect. Cancellation will become effective the date of delivery of the policy to us or upon such future date requested by the first named insured.

    b. We may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least:

        (1) Ten (10) days before the effective date of cancellation if we cancel because of nonpayment of premium whether payable directly to us or payable to our agents or others under any installment payment plan, premium finance plan, extension of credit or other payment plan; or

        (2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

    c. We will mail or deliver our notice to the first named insured's last mailing address known to us.

    d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    e. If this policy is canceled, we will send the first named insured any premium refund due. If we or the first named insured cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered any refund of unearned premium.

    f. If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Changes. This policy contains all the agreements between you and us concerning the insurance afforded. The first named insured shown in the Declarations is authorized to make changes in the terms of this policy upon our giving written consent. This policy's terms can be amended or waived only by endorsement to this policy issued by us and made a part of this policy.

5. Duties In The Event Of Occurrence, Offense, Claim Or Suit.

    a. You must see to it that we or our authorized representative are notified as soon as practicable of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:

        (1) How, when, and where the "occurrence" or alleged offense took place;

        (2) The insured's name and address; and

        (3) The names and addresses of any injured persons or witnesses; and

Exhibit C - Page 21 of 97

(4)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

Notice of an "occurrence" or an offense is not notice of a "claim".

b.  If a "claim" is made or "suit" is brought against any insured, you must:

(1)  Immediately record the specifics of the "claim" or "suit" and the date received; and

(2)  Notify us as soon as practicable.

You must see to it that we also receive written notice of the "claim" or "suit" as soon as practicable.

c.  You and any other insured involved in such "claim" or "suit" must:

(1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2)  Authorize us to obtain records and other information;

(3)  Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

e.  No insureds shall in any way jeopardize our rights after an "occurrence" or offense.

6.  Examination of Your Books and Records. We may examine and audit your books and records as they relate to this policy at any time during the policy period set forth in the Declarations and up to three years afterward.

7.  Inspection and Surveys.

a.  We have the right but are not obligated to:

(1)  Make inspections and surveys at any time;

(2)  Give you reports on the conditions we find; and

(3)  Recommend changes to such conditions.

b.  Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We also do not warrant that conditions:

(1)  Are safe or healthful; or

(2)  Comply with laws, regulations, codes or standards.

c.  This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

8.  Legal Action Against Us.

a.  No person or organization has a right under this policy:

(1)  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

(2)  To sue us under this policy unless all of its terms have been fully complied with.

b.  A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

9.  Maintenance of Underlying Insurance.

a.  You must keep the "underlying insurance" described in Item 7 of the Declarations, or renewal or replacement policies not more restrictive in their terms and conditions, in full force and effect during the policy period of this policy. The Limits of Insurance must be maintained without reduction other than by payment of losses covered thereunder. You must also inform us within 30 days of any termination of any policy of "underlying insurance", or replacement of any policy of "underlying insurance".

b.  You must notify us immediately of any changes to the terms of any "underlying insurance" policies. We may adjust premium charges under this policy from the effective date of such changes to the terms of any "underlying insurance".

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Exhibit C - Page 22 of 97

c.  Your failure to comply with the foregoing paragraphs 9.a. and 9.b. will not invalidate this policy, but in the event of such failure, we shall be liable under this policy only to the extent that we would have been liable had you complied with these obligations.

10.  Other Insurance. If other valid and collectible insurance is available to the insured for "ultimate net loss" we cover under this policy, our obligations under this policy are limited as follows:

a.  This insurance is excess over:
(1)  Any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance; and
(2)  Any other insurance available to the insured, whether primary or excess, covering liability for damages arising out of premises or operations for which you have been added as an additional insured.

b.  We will indemnify only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:
(1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
(2)  The total of all deductible and self-insured amounts under this or any other insurance.

c.  We will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all other insurers in accordance with provisions of Condition 16 below.

11.  Premium Audit.
a.  We will compute all premiums for this policy in accordance with our rules and rates.
b.  Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first named insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first named insured, but not if such audit premium is less than the Minimum Premium shown in the Declarations.
c.  The first named insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

12.  Premiums. The first named insured shown in the Declarations:
a.  Is responsible for the payment of all premiums; and
b.  Will be the payee for any return premiums we pay.

13.  Representations. By accepting this policy, you agree that:
a.  The information shown on the Declarations is accurate and complete;
b.  The information is based upon representations you made to us in your application(s) for this policy;
c.  We have issued this policy in reliance upon your representations; and
d.  Except as otherwise provided in this policy or by law, this policy is void if you conceal or misrepresent any material facts concerning this policy, in your application for this policy or otherwise.

14.  Separation of Insureds. Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first named insured, this insurance applies:
a.  As if each named insured were the only named insured; and
b.  Separately to each insured against whom "claim" is made or "suit" is brought.

15.  Sole Agent. The named insured first shown in Item 1 of the Declarations is authorized to act on behalf of all insureds with respect to giving or receiving notice of cancellation or nonrenewal, receiving refunds, and agreeing to any changes in this policy.

16.  Transfer Of Rights Of Recovery Against Others To Us.
a.  If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.
b.  Any recoveries shall be applied first to reimburse any interests (including the insured) that may have paid any amounts in excess of our liability under this policy; then to reimburse us for any payment hereunder;

Exhibit C - Page 23 of 97

and lastly to reimburse such interests (including the insured) as to which this policy is excess, as are entitled to the residue, if any.

   c.   When we assist in pursuit of the insured's rights of recovery, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recoveries.

   d.   If there should be no recovery as a result of proceedings instituted solely at our request, we shall bear all expenses of such proceedings.

17. Transfer of Your Rights and Duties Under This Policy.

   a.   Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

   b.   If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

18. When Loss Payable. Our liability for any portion of "ultimate net loss" shall not apply until the insured or any "underlying insurer" shall be obligated to actually pay the full and complete amount of the "retained limit". When "ultimate net loss" has been finally determined, the insured may make "claim" for payment under this policy as soon as practicable thereafter. Such insured's obligation to pay any amount of "ultimate net loss" must have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant or the claimant's legal representative and us.

19. When We Do Not Renew.

   a.   If we decide not to renew this policy, we will mail or deliver to the first named insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date or such other period as may be required by law.

   b.   If notice is mailed, proof of mailing will be sufficient proof of notice.


Section VI  Definitions

1.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

   a.   Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b.   Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporter is considered an advertisement.

2.  "Auto" means:

   a.   A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment, or

   b.   Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3.  "Automobile hazard" means liability arising out of the ownership, maintenance, use or entrustment of any "auto". Use includes operation and "loading or unloading".

4.  "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

5.  "Claim" means any demand upon the insured for damages or services alleging liability of the insured as the result of an "occurrence" or offense.

6.  "Coverage territory" means:

   a.   The United Sates of America  (including its territories and possessions), Puerto Rico and Canada;

   b.   International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

Exhibit C - Page 24 of 97

    c.  All other parts of the world if the injury or damage arises out of :

       (1)  Goods or products made or sold by you in the territory described in a. above;

       (2)  The activities of a person whose home is in the territory described in a. above , but is in the territory described in a. above, but is away for a short time on your business; or

       (3)  "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

7.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

8.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

9.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

10.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.  You have failed to fulfill the terms of a contract or agreement;

   If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or by your fulfilling the terms of the contract or agreement.

11.  "Insured contract" means:

    a.  A contract for a lease of premises. However, that portion of a contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b.  A sidetrack agreement;

    c.  Any easement or license agreement except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e.  An elevator maintenance agreement; or

    f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law for injury to persons or property in the absence of any contract or agreement.

   Paragraph 11.f. does not include that part of any contract or agreement:

       (1)  That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

       (2)  That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

          (a)  Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

          (b)  Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

       (3)  Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in 11.f.(2) above and supervisory, inspection, architectural or engineering activities ;

       (4)  That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver; or

Exhibit C - Page 25 of 97

(5) That holds a person or organization engaged in the business of transporting property by "auto" for hire, harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

12. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

13. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

14. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c., or d. immediately preceding that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c., or d. of this section maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered autos.

15. "Occurrence" means:

a. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you; or

b. With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you, "bodily injury" caused by accident or disease.

Exhibit C - Page 26 of 97

16. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a.  False arrest, detention or imprisonment;

   b.  Malicious prosecution;

   c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f.  The use of another's advertising idea in your "advertisement"; or

   g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

17. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, without limitation, materials to be recycled, reconditioned or reclaimed.

18. "Pre-judgment interest" means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

19. "Products-completed operations hazard":

   a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1)  Products that are still in your physical possession; or

      (2)  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a)  When all of the work called for in your contract has been completed;

         (b)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

         (c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b.  Does not include "bodily injury" or "property damage" arising out of:

      (1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3)  Those products or operations for which the applicable classification, under a policy of "underlying insurance", states that products-completed operations are subject to that policy's General Aggregate Limit.

20. "Property damage" means:

   a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on created or used on, or transmitted to or from computer software, including systems and application software, hard or floppy disks, CD-ROMS, tapes drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Exhibit C - Page 27 of 97

21. "Retained limit" means the greater of:
    a. The sum of amounts applicable to any "claim" or "suit" from:
       (1) "Underlying insurance", whether such "underlying insurance" is collectible or not; and
       (2) Other collectible primary insurance; or
    b. The "self-insured retention".
22. "Self-insured retention" means the amount in Item 4 of the Declarations.
23. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or submits with our consent; or
    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured must submit or submits with our consent.
24. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.
25. "Ultimate net loss" means the total amount of damages for which the insured is legally liable in payment of "bodily injury", "property damage" or "personal and advertising injury". "Ultimate net loss" must be fully determined as shown in Condition 18 – When Loss Payable. "Ultimate net loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by any insured, by us or by any "underlying insurer".
26. "Underlying insurance" means the coverage(s) afforded under insurance policies designated in Item 7 of the Declarations and any renewals or replacements of those policies.
27. Underlying insurer" means any company issuing any policy of "underlying insurance".
28. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.
29. "Wrongful act" means any actual or alleged error, misstatement or misleading statement, act, omission or neglect or breach of duty by a director or "executive officer" in discharge of their duties, individually or collectively, or any matter claimed against them solely by reason of their being directors or officers of your business.
    "Wrongful act" does not include "bodily injury", "property damage" or "personal and advertising injury" as defined in this coverage form.
30. "Your product":
    a. Means:
       (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
          (a) You;
          (b) Others trading under your name; or
          (c) A person or organization whose business or assets you have acquired; and
       (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:
       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
       (2) The providing of or failure to provide warnings or instructions.
    c. Does not include vending machines or other property rented to or located for the use of others but not sold.
31. "Your work":
    a. Means:

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Exhibit C - Page 28 of 97

    (1)  Work or operations performed by you or on your behalf; and

    (2)  Materials, parts or equipment furnished in connection with such work or operations.

  b.  Includes:

    (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    (2)  The providing of or failure to provide warnings or instructions.

Conditions Applicable To State Automobile Mutual Insurance Company

1.  Dividends. You are entitled to the proportionate part of any policyholder's dividend if declared by our Board of Directors in accordance with its by-laws.

2.  Notice of Policyholders Meetings. While your policy is in force, you are one of our members and are entitled, in person or by proxy, to one vote at all meetings of the members. The annual meeting of the members is held at 9 o'clock A.M., Columbus time, on the first Friday of March of each year at our Home Office, 518 East Broad Street, Columbus, Ohio.

3.  Non-assessable. This policy is non-assessable and the insured shall not be liable for the payment of any assessment nor for the payment of the premium other than that stated in this policy.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at Columbus, Ohio and countersigned on the Declarations Page by our duly authorized agent of the State Auto Insurance Companies.

*John R Lowther*

Secretary

*Robert H Moore*

President

Exhibit C - Page 29 of 97

**E-FILED**
Friday, 15 February, 2008  12:15:36 PM
Clerk, U.S. District Court, ILCD

# COMMERCIAL UMBRELLA

## LIABILITY POLICY

**State Automobile Mutual Insurance Company**
Corporate Office • 518 East Broad Street, Columbus, Ohio 43215 • 614-464-5000

**State Auto Property and Casualty Insurance Company**
12 S. Main Street • Greer, South Carolina 29651 • 803-877-9311

**Milbank Insurance Company**
100 Flynn Drive • Milbank, South Dakota 57252-1551 • 605-482-5551

**Farmers Casualty Insurance Company**
1300 Woodland Avenue • West Des Moines, Iowa 50265-1150 • 515-223-0438

Corporate Office:
State Auto Insurance Company • 518 East Broad Street • Columbus, Ohio 43216-3976 • 614-464-5000

CXS-0002 (07/98)

Exhibit C    Page 30 of 99

## COMMERCIAL UMBRELLA LIABILITY POLICY QUICK REFERENCE

READ YOUR POLICY CAREFULLY. This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself is a legal contract between you and your insurance company and sets forth, in detail, the rights and obligations of both you and your insurance company. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.

### DECLARATIONS PAGE(S)
Named Insured and Mailing Address
Agency name, address & telephone
Policy Period
Form of Named Insured's business
Retroactive date (if any)
Limit of Insurance
Forms/Endorsements attached
Premium
Schedule of underlying insurance

|  | Form CXS0001, Beginning On Page |
|---|---|
| Section I — Insuring Agreement | 1 |
| Coverage A. Bodily Injury and Property Damage Liability | |
| Exclusions | 2 |
| Coverage B. Personal and Advertising Injury Liability | 6 |
| Exclusions | 8 |
| Section II — Defense | 10 |
| Section III — Who is an insured | 11 |
| Section IV — Limits of Insurance | 12 |
| Section V — Conditions | 13 |
| Section VI — Definitions | 17 |
| Conditions Applicable to State Automobile Mutual Insurance Company | 21 |

Exhibit C - Page 31 of 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A. Paragraph 3., Cancellation, of Section V – Conditions is replaced by the following:

   3. Cancellation.

     a. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

     We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

       (1) For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

       (2) For a reason other than nonpayment of premium, we will mail the notice at least:

         (a) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

         (b) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

     b. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

       (1) Nonpayment of premium;

       (2) The policy was obtained through a material misrepresentation;

       (3) Any insured has violated any of the terms and conditions of the policy;

       (4) The risk originally accepted has measurably increased;

       (5) Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

       (6) A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

     c. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

     d. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

B. Paragraph 19., When We Do Not Renew, of Section V – Conditions is replaced by the following:

   19. When We Do Not Renew.

   If we decide not to renew or continue this policy we will mail you and your agent or broker written notice, stating the reason for nonrenewal at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that your have not accepted our offer.

   If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

 Copyright, Insurance Services Office, Inc.

Exhibit C - Page 32 of 97

C. The following condition is added to Section V – Conditions and supersedes any provision to the contrary:

    20. **Mailing of Notices.** We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

D. Paragraph 5., Duties In The Event Of Occurrence, Offense, Claim Or Suit, of Section V – Conditions is replaced by the following:

    5. **Duties In The Event Of Occurrence, Offense, Claim or Suit.**

        a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:

            (1) How, when and where the "occurrence" or offense took place;

            (2) The names and addresses of any injured persons and witnesses; and

            (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

        b. If a "claim" is made or "suit" is brought against any insured, you must:

            (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

            (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

        c. You and any other involved insured must:

            (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

            (2) Authorize us to obtain records and other information;

            (3) Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

            (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

        d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Copyright, Insurance Services Office, Inc.

COMMERCIAL UMBRELLA
CXS 21 72 12 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is not a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**2.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**3.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Form or underlying insurance.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**a.** The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002.  However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less.  Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

**D.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

COMMERCIAL UMBRELLA
CXS 21 76 11 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Exhibit C - Page 36 of 97

COMMERCIAL GENERAL LIABILITY
CXS 21 87 05 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

   The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

Exhibit C - Page 37 of 97

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

a. Physical injury that involves a substantial risk of death; or

b. Protracted and obvious physical disfigurement; or

c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Exclusion f. of Paragraph 2., Exclusions, of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

f.   This insurance does not apply to:

1.   "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of  "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

a.   At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

b.   At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

2.   Any loss, cost or expense arising out of any:

a.   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants"; or

b.   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**STATE AUTO**®
Insurance Companies

Exhibit C - Page 39 of 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EMPLOYERS' LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Exclusion d. of paragraph 2., Exclusions, of Section I – Coverage A – Bodily Injury And Property Damage Liability is deleted and replaced by the following:

This insurance does not apply to "bodily injury" (other than liability assumed by the insured under an "insured contract") to:

1.  An "employee" of the insured arising out of and in the course of:

    a.  Employment by the insured ; or

    b.  Performing duties related to the conduct of the insured's business; or

2.  The spouse, child, parent, brother or sister of that "employee" as a consequence of 1. above.

This exclusion applies:

1.  Whether the insured may be liable as an employer or in any other capacity; and

2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CXS 40 05 (07/98)



Exhibit C - Page 40 of 97

SPP 2413242 00 20060830   OPTIPLAN-AGENT BILL                12 N 00 13  R
                                                             AC00001030


                STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY              3

                   COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS             2

POLICY NUMBER SPP 2413242 00                                                    2

NAMED INSURED: V-M LLC                                                          2

                                        THE INSURED IS:  LIMITED LIAB COMPANY

LIMITS OF INSURANCE:                                                            2
 EACH OCCURRENCE LIMIT                    $1,000,000
 PERSONAL AND ADVERTISING INJURY          $1,000,000 ANY ONE PERSON OR ORGANIZATION
 MEDICAL EXPENSE LIMIT                         $5,000 ANY ONE PERSON
 DAMAGE TO PREMISES RENTED TO YOU          $100,000 ANY ONE PREMISES
 GENERAL AGGREGATE LIMIT
 (OTHER THAN PRODUCTS - COMPLETED OPERATIONS)      $2,000,000
 PRODUCTS- COMPLETED OPERATIONS AGGREGATE LIMIT    $2,000,000

* TOTAL ADVANCE GENERAL LIABILITY PREMIUM (SUBJECT TO AUDIT):            $350.00
* INCLUDES TERRORISM INSURANCE COVERAGE PREMIUM                           $3.00

FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY:
 GL 4     07/98        CG 21 47 07/98       CG 21 72 12/02      CG 21 76 11/02
 CG 21 87 05/04        IL 09 99 05/04       AU 413    01/91     CG 02 00 07/05
 CG 01 98 08/90        CG 00 01 12/04       SL 20 02 01/02      SL 20 04 11/02
 CG 24 26 07/04        CG 21 55 09/99


COUNTERSIGNED _____ BY _____
                                              (AUTHORIZED REPRESENTATIVE)


FORM NO. GL4D      07/98              ISSUED 08/30/06      AGENT COPY

Exhibit C - Page 41 of 97

SPP 2413242 00 20060830    OPTIPLAN-AGENT BILL              12 N 00 13  R
                                                           AC00001030


              STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY              3

              COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE            2

POLICY NUMBER SPP 2413242 00                                                 2

NAMED INSURED: V-M LLC                                                       2


                                                           ESTIMATED         2
LOC  ST TER CODE        PREMIUM BASIS       PER     RATE    PREMIUM       COV*2
   1 IL 014 47051          6 ACRES           1    $17.578     $105          O
REAL ESTATE DEVELOPMENT PROPERTY
PRODUCTS-COMPLETED OPERATIONS ARE INCLUDED,
SUBJECT TO THE GENERAL AGGREGATE LIMIT.


                                                           ESTIMATED         2
LOC  ST TER CODE        PREMIUM BASIS       PER     RATE    PREMIUM       COV*2
   1 IL 014 49451         55 ACRES           1     $4.402     $242          O
VACANT LAND - OTHER THAN NOT-FOR-PROFIT
PRODUCTS-COMPLETED OPERATIONS ARE INCLUDED,
SUBJECT TO THE GENERAL AGGREGATE LIMIT.


                                                           ESTIMATED         2
LOC  ST TER CODE        PREMIUM BASIS       PER     RATE    PREMIUM       COV*2
                                                             $3            O
TERRORISM INSURANCE COVERAGE

* COV O INDICATES PREMISES OPERATIONS
  COV P INDICATES PRODUCTS-COMPLETED OPERATIONS


FORM NO. ES1        07/98              ISSUED 08/30/06    AGENT COPY

Exhibit C - Page 42 of 97



# COMMERCIAL GENERAL LIABILITY

## INSURANCE POLICY

State Automobile Mutual Insurance Company

State Auto Property and Casualty Insurance Company

Milbank Insurance Company

Farmers Casualty Insurance Company

Exhibit C - Page 43 of 97

**QUICK REFERENCE**
# COMMERCIAL GENERAL LIABILITY COVERAGE

Read your policy carefully. This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself is a legal contract between you and your insurance company and sets forth, in detail, the rights and obligations of both you and your insurance company. It is therefore important that you read your policy.

## DECLARATIONS PAGE
- Named Insured and Mailing Address
- Policy Period
- Description of Business and Location
- Coverages and Limits of insurance

Beginning on Page

**SECTION I — COVERAGES**

Coverage A —
Bodily Injury and Property Damage Liability
- Insuring Agreement ............................................. 1
- Exclusions ..................................................... 1

Coverage B —
Personal and Advertising Injury Liability
- Insuring Agreement ............................................. 5
- Exclusions ..................................................... 5

Coverage C—
Medical Payments
- Insuring Agreement ............................................. 5
- Exclusions ..................................................... 6

Supplementary Payments ............................................ 6

**SECTION II — WHO IS AN INSURED** ................................. 7

**SECTION III — LIMITS OF INSURANCE** ............................. 8

**SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS** ......... 9
- Bankruptcy ..................................................... 9
- Duties in the Event of Occurrence, Claim or Suit ............... 9
- Legal Action Against Us ........................................ 9
- Other Insurance ................................................ 9
- Premium Audit .................................................. 10
- Representations ................................................ 10
- Separation of Insureds ......................................... 10
- Transfer of Rights of Recovery Against Others To Us ........... 10
- When We Do Not Renew ........................................... 10

**SECTION V — DEFINITIONS** ....................................... 10

## COMMON POLICY CONDITIONS (cover jacket)
- Cancellation
- Changes
- Examination of Your Books and Records
- Inspections and Surveys
- Premiums
- Transfer of Your Rights and Duties under this Policy
- Installment Payments

## ENDORSEMENTS
- Nuclear Energy Exclusion - in cover jacket
- Calculation of Premium - in cover jacket
- Any others, as indicted on the Declarations and Attached to this Policy.

## MUTUAL COMPANY POLICY CONDITIONS - in cover jacket

Exhibit C - Page 44 of 97

# COMMON POLICY CONDITIONS

Subject to the laws of your state, some conditions may be changed by the attachment of a state amendatory endorsement.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## G. INSTALLMENT PAYMENTS

If you have elected to pay the premium on this policy in installments and you fail to pay an installment when due, we will assume you no longer want the insurance. In such event we will issue you a notice of cancellation as set forth under Policy Conditions. Such notice will specify the date and time of cancelation. If we receive an installment payment after the date of cancellation, we may, subject to the laws of your state, reinstate your policy, issue you a new policy with a new policy period or return the late payment to you.

---

# CONDITIONS APPLICABLE TO STATE AUTOMOBILE MUTUAL INSURANCE COMPANY

## DIVIDENDS

You are entitled to the proportionate part of any policyholder's dividend if declared by our Board of Directors in accordance with its By-Laws.

## NOTICE OF POLICYHOLDERS MEETINGS

While your policy is in force, you are one of our members and are entitled, in person or by proxy, to one vote at all meetings of the members. The annual meeting of the members is held at 9 o'clock A.M., Columbus time, on the first Friday of March of each year at our Home Office at 518 East Broad Street, Columbus, Ohio.

## NON-ASSESSABLE

This policy is non-assessable and the insured shall not be liable for the payment of any assessment nor for the payment of any premium other than that stated in this policy.

Exhibit C - Page 45 of 97

## ENDORSEMENTS MADE PART OF COVERAGE PARTS AS INDICATED

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSE-MENT (Broad Form)**

**1.** The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage:"

     **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear ener-gy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

     **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expens-es incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear materi-al" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

     **(1)** The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been dis-charged or dispersed therefrom;

     **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, han-dled, used, processed, stored, transported or disposed of by or on behalf of an "insured;" or

     **(3)** The "bodily injury" or "property damage" aris-es out of the furnishing by an "insured" of ser-vices, materials, parts or equipment in con-nection with the planning, construction, main-tenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;"

"Nuclear material" means "source material," Special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel compo-nent, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes pro-duced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two para-graphs of the definition of "nuclear facility."

"Nuclear facility" means:

  **(a)** Any "nuclear reactor;"

  **(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) han-dling, processing or packaging "waste;"

  **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear materi-al" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located con-sists of or contains more than 25 grams of pluto-nium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or dispos-al of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on which site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reac-tion or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive conta-mination of property.

## CALCULATION OF PREMIUM ENDORSE-MENT—Applicable to all Coverage Parts

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effec-tive date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IN WITNESS WHEREOF, we have caused this policy to be signed by our Secretary and President at columbus, Ohio, and countersigned on the Decarations page by an authorized agent of the State Auto Insurance Companies.

_John R Lowther_
Secretary

_Robert H Moore_
President

Exhibit C - Page 46 of 97

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

　**(a)** Refusal to employ that person;

　**(b)** Termination of that person's employment; or

　**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

　**(a)** Refusal to employ that person;

　**(b)** Termination of that person's employment; or

　**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 07 98          Copyright, Insurance Services Office, Inc., 1997          Page 1 of 1          □

Exhibit C - Page 47 of 97

COMMERCIAL GENERAL LIABILITY
CG 21 72 12 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is not a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

1. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

   a. The act resulted in aggregate losses in excess of $5 million; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2002

Exhibit C - Page 48 of 97

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

**D.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

© ISO Properties, Inc., 2002

CG 21 72 12 02    □

Exhibit C - Page 49 of 97

COMMERCIAL GENERAL LIABILITY
CG 21 76 11 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COMMERCIAL GENERAL LIABILITY
CG 21 87 05 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

© ISO Properties, Inc., 2004

Exhibit C - Page 51 of 97

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2004
CG 21 87 05 04    □

Exhibit C - Page 52 of 97

POLICY NUMBER:

IL 09 99 05 04

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)

**SCHEDULE**

---

**Terrorism Premium (Certified Acts)**
**(A) Premium through 12/31/05     $**
**(B) Estimated Premium beyond 12/31/05 (refer to Paragraph C. below)     $**

**Additional information, if any, concerning the terrorism premium:**

---

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

---

**IL 09 99 05 04**                    © ISO Properties, Inc., 2004                    **Page 1 of 2**     □

Exhibit C - Page 53 of 97

**C. Possibility Of Additional Or Return Premium**

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act of 2002. The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

Exhibit C - Page 54 of 97


**STATE AUTO®**
Insurance Companies

# NOTICE TO ILLINOIS POLICYHOLDERS

The following information is provided for your convenience. Should you have any questions concerning your policy please contact your State Auto Insurance Companies agent or you may contact State Auto Insurance Companies, Customer Affairs and Information Department at 518 East Broad Street, Columbus, OH 43216. Phone: 1-800-444-9950, Extension 4822.

You may also contact the Illinois Insurance Department, Public Service Division, Springfield, Illinois 62767.

Please keep this information with your policy for future reference.

AU413 (01/91)
*//*AU413-199101

**E-FILED**
Friday, 15 February, 2008  12:15:45 PM
Clerk, U.S. District Court, ILCD

COMMERCIAL GENERAL LIABILITY
CG 02 00 07 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

   a. For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   b. For a reason other than nonpayment of premium, we will mail the notice at least:

      (1) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2004

Exhibit C - Page 56 of 97

COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Condition 2, DUTIES IN THE EVENT OF OCCUR-RENCE, CLAIM OR SUIT (SECTION IV) is replaced by the following:

**2. Duties In The Event Of Occurrence, Offense, Claim or Suit.**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and,

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and,

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and,

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Exhibit C - Page 57 of 97

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2003

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

Exhibit C - Page 62 of 97

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

### m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

### n. Pollution-Related

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

### o. War

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

Exhibit C - Page 64 of 97

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A;** and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

© ISO Properties, Inc., 2003
Exhibit C - Page 67 of 97     **CG 00 01 12 04** □

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

   (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

   (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

  (a) Snow removal;

  (b) Road maintenance, but not construction or resurfacing; or

  (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  f. The use of another's advertising idea in your "advertisement"; or

  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

  a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" as defined in the policy arising out of:

1.  Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

2.  The use of asbestos in constructing or manufacturing any goods, product, or structure;

3.  The removal of asbestos from any goods, product or structure;

4.  The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

5.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts 1. through 4. above; or

6.  Any obligation to share damages with or repay someone else who must pay damages in connection with parts 1. through 5. above.

SL 20 02 01 02

Exhibit C - Page 73 of 97

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## Exclusion – Lead Liability

The following exclusions are added to all coverages contained within.

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance does not apply to:

1. Actual or alleged "bodily injury," arising out of the ingestion, inhalation or absorption of lead or lead compounds in any form.

2. Actual or alleged "property damage" or "personal and advertising injury" arising out of any form of lead or lead compounds.

3. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead or lead compounds.

   b. Claim or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form.

   c. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds, or

   d. Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

Exhibit C – Page 74 of 97

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 24 26 07 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

COMMERCIAL GENERAL LIABILITY
CG 21 55 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

Exhibit C - Page 76 of 97

SPP 2413242 00 20060830                                    13 12 2413242 N083006
                            ORIGINAL COPY           OPTIPLAN-AGENT BILL
                                                                    13   NAC

              STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY                  3

                     COMMERCIAL INLAND MARINE DECLARATIONS                        2

    POLICY NUMBER:  SPP 2413242 00                                               2

    NAMED INSURED AND ADDRESS:                AGENCY NAME, ADDRESS AND TELEPHONE:    2

        V-M LLC                               SNYDER AND SNYDER AGENCY INC
        C/O JOHN HAMILTON                     PO BOX 1546
        702 N CLINTON                         BLOOMINGTON, IL        61702
        BLOOMINGTON, IL        61701
                                              309-664-1800

    BRANCH:  13                               AGENCY NUMBER: 0001030

    POLICY PERIOD:    FROM:  JULY 31, 2006        TO: JULY 31, 2007      AT
          12:01 AM   STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

    IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF
    THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN
    THIS POLICY.


            COVERAGE PARTS THAT
            APPLY TO THIS POLICY              COVERAGE PART PREMIUM
            -----------------------           -------------------------
    INSTALLATION COVERAGE                     $ 3000



    TERRORISM INSURANCE COVERAGE              $ 90



                    TOTAL INLAND MARINE POLICY PREMIUM    $ 3,090

    ENDORSEMENTS THAT APPLY TO THIS INLAND MARINE POLICY INCLUDE THE INLAND
    MARINE POLICY JACKET (FORM FI-102 04/96, WITH COMMON POLICY CONDITIONS AND
    OTHER PROVISION) AND THE FOLLOWING ADDITIONAL COVERAGE FORMS AND
    ENDORSEMENTS:

    CL0600 05/03
    CL0650 12/02
    CL1630 06/04
    IL0999 05/04
    IM3009 05/99
    CL0121 05/03
    IM0871 06/02
    IM7100 1.0
    IM7105 1.0


    ISSUE DATE 08/30/06          COUNTERSIGNED BY:
                                                 -------------------------
                                                 AUTHORIZED REPRESENTATIVE




    FI 101 D (04/96)

Exhibit C - Page 77 of 97


STATE AUTO®
Insurance Companies

This endorsement changes
the policy
- PLEASE READ THIS CAREFULLY

# CERTIFIED TERRORISM LOSS

1. The following definitions are added.
   a. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:
      1) to be an act of terrorism;
      2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;
      3) to have resulted in damage:
         a) within the United States; or
         b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission; and
      4) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
   No act will be certified by the Secretary of the Treasury as an act of terrorism if the act is committed as part of the course of a war declared by the Congress (except with respect to any coverage for workers' compensation) or if property and casualty insurance losses resulting from the act do not exceed $5,000,000 in the aggregate.

   b. "Certified terrorism loss" means loss that results from a "certified act of terrorism".

2. The "terms" of any terrorism exclusion that is part of or that is attached to this Coverage Part are amended by the following provision:
   This exclusion does not apply to "certified terrorism loss".

3. The following provision is added.
   If the Secretary of the Treasury determines that the amount of "certified terrorism loss" has exceeded the maximum annual liability as set forth by the Federal Terrorism Risk Insurance Act of 2002 or any amendments thereto, "we" will not pay for any portion of "certified terrorism loss" that exceeds the maximum annual liability.

4. The following provisions are added.
   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion; and
   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

**CL 06 00 05 03 Page 1 of 1**
*//*CL 06 00 05 03

Copyright, American Association of Insurance Services, Inc., 2003



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BIOLOGICAL AND CHEMICAL NON-CERTIFIED ACT OF TERRORISM EXCLUSION AND WAR AND MILITARY ACTION EXCLUSION

1. The following definitions are added.
   a. "Non-certified act of terrorism" means a violent act or an act that is dangerous to human life, property, or infrastructure that:
      1) is committed by an individual or individuals; and
      2) appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion; and
      3) is not certified as a terrorist act pursuant to the Federal Terrorism Risk Insurance Act of 2002 or any amendments thereto.
   b. "Non-certified terrorism loss" means any loss that results from a "non-certified act of terrorism".
2. Under Perils Excluded (or under Exclusions in form GS-200), the War Exclusion, wherever it appears, is deleted and replaced by the following:
   **WAR AND MILITARY ACTION EXCLUSION**
   "We" will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
   a. War, including undeclared or civil war; or
   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
   With respect to any action that comes within the "terms" of this exclusion and involves nuclear reaction or radiation or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.
3. The following Non-certified Act of Terrorism Exclusion is added. The Non-certified Act of Terrorism Exclusion applies only to an incident of "non-certified terrorism loss":

   a. that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
   b. in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

   However, the Non-certified Act of Terrorism Exclusion does not apply to any loss that results from an act that is not certified by the Secretary of the Treasury to be an act of terrorism solely because the property and casualty insurance losses resulting from that act do not exceed $5,000,000 in the aggregate.

   **NON-CERTIFIED ACT OF TERRORISM EXCLUSION**
   "We" will not pay for loss or damage caused directly or indirectly by a "non-certified act of terrorism", including action in hindering or defending against an actual or expected "non-certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
4. The following provisions are added.
   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion; and
   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

**CL 06 50 12 02   Page 1 of 1**
*//*CL 06 50 12 02

Copyright, American Association of Insurance Services, Inc., 2002



This endorsement changes
the policy
- PLEASE READ THIS CAREFULLY -

## CONDITIONAL TERRORISM EXCLUSION

## NOTICE

The Terrorism Risk Insurance Program (the Program), which was established by the federal law known as the Terrorism Risk Insurance Act of 2002, is scheduled to terminate on December 31, 2005.

The Terrorism Exclusion found in this endorsement will apply only if the federal government does not renew, extend, or otherwise continue the Program or if the conditions, definitions, or requirements of the Program are changed by the federal government and federal law no longer requires that we make Terrorism Coverage available to you.

1. The Terrorism Exclusion set forth by this endorsement becomes effective on the earliest of the following:
   a. the date that the federal Terrorism Risk Insurance Program (the Program) established by the Terrorism Risk Insurance Act of 2002 has terminated with respect to the type of insurance provided by the Coverage Part to which this endorsement applies; or
   b. the effective date of a renewal, extension, or continuation of the Program, if federal law no longer requires that "we" make terrorism coverage available to "you" and the Program has been renewed, extended, or continued subject to changes that:
      1) redefine terrorism; or
      2) increase "our" financial exposure under the Program; or
      3) impose requirements on insurance coverage for terrorism that differ from the terms, amounts, or other limitations that otherwise govern coverage for loss or damage under the "terms" of the Coverage Part to which this endorsement applies.
2. If the Terrorism Exclusion set forth by this endorsement becomes effective, this Terrorism Exclusion:
   a. supersedes any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the Coverage Part to which this endorsement applies, but only with respect to loss or damage caused by one or more incidents of terrorism that occur on or after the effective date of this Terrorism Exclusion; and

   b. remains in effect unless "we" notify "you" of changes to this Terrorism Exclusion.
3. If none of the conditions described above under items 1.a. and 1.b. occur, any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the Coverage Part to which this endorsement applies continue to apply until "we" notify "you" of changes to such other endorsements.
4. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:
   "Terrorism" means activities against persons, organizations, or property of any nature:
   a. that involve the following or preparation for the following:
      1) use or threat of force or violence; or
      2) commission or threat of a dangerous act; or
      3) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and
   b. when one or both of the following applies:
      1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
      2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

**CL 16 30 06 04 Page 1 of 2**
•//•CL 16 30 06 04

Copyright, American Association of Insurance Services Inc. 2003


**STATE AUTO**®
Insurance Companies

5. The following exclusion is added:
   **TERRORISM EXCLUSION**
   We" will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

   This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":
   a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or
   b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or
   c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
   d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or
   e. the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico, and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, "we" will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage

that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

Item **5.e.** above describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Terrorism Exclusion will apply to that incident. When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Coverage Part to which this endorsement applies.

6. When the Terrorism Exclusion set forth by this endorsement applies due to an incident of "terrorism" described above under items **5.a.** or **5.b.**, that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the Coverage Part to which this endorsement applies.

7. The following provisions are added.
   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the Coverage Part to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.
   b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the Coverage Part to which this endorsement applies under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

**CL 16 30 06 04 Page 2 of 2**
*//*CL 16 30 06 04

Copyright, American Association of Insurance Services Inc. 2003



**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN
RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK
INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE
OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM
# FOR CERTIFIED ACTS OF TERRORISM COVERAGE
# (PURSUANT TO TERRORISM RISK
# INSURANCE ACT OF 2002)

### SCHEDULE

Terrorism Premium (Certified Acts)
(A) Premium through 12/31/05    $ See Below
(B) Estimated Premium beyond 12/31/05 (refer to Paragraph C. below)    $ See Below

**Additional information, if any, concerning the terrorism premium:**

The Terrorism premiums displayed on the declaration pages of this policy represent the charge for Terrorism Coverage for the entire policy term. If the Terrorism Risk Insurance Act of 2002 is not continued or extended upon the 12/31/2005 expiration of the Act, a return premium may be due. The return premium will be the prorated portion from 12/31/2005 to the expiration of your policy term.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**
In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**
The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

**C. Possibility Of Additional Or Return Premium**
The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insur-

ance Act of 2002. The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** of the Schedule may not be appropriate.
If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** of the Schedule and will charge additional premium or refund excess premium, if indicated.
If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

**IL0999 (05/04)  Page 1 of 1**
*//*IL0999-200405

ISO Properties, Inc., 2004

AAIS
IM 30 09 Ed 05 99
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
# ILLINOIS

1. Under Perils Excluded, if applicable, the following addition amends Criminal, Fraudulent, or Dishonest Acts:

   However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

   a. arose out of a pattern of criminal domestic violence; and

   b. the perpetrator of the loss is criminally prosecuted for the act causing the loss;

   this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   "Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

2. Under Other Conditions, the Appraisal condition is amended by the following addition:

   If "you" request an appraisal and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

3. Under Other Conditions, the Misrepresentation, Concealment, or Fraud condition is deleted and replaced by:

   **Misrepresentation, Concealment, or Fraud** -- "We" do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or
      2) an insured's interest herein.

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

4. Under Other Conditions, the Suit Against Us condition is amended by the following addition:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

**IM 30 09 Ed 05 99**
Copyright, American Association of Insurance Services, 1999

Exhibit C - Page 83 of 97

AAIS
CL 01 21 05 03
Page 1 of 2

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## ILLINOIS

1. Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

**Cancellation --**

a. "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

b. "We" may cancel this policy by mailing "our" written notice of cancellation to "you" and any mortgagee or lienholder at the last mailing address known to "us". "Our" notice will include the reason or reasons for cancellation. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

c. During the first 60 days this policy is in effect, "we" may cancel this policy for any reason. If "we" cancel for any reason other than those listed in d. or e. below, "we" will mail the notice of cancellation 30 days before the effective date of cancellation.

d. For policies not issued to cover one- to four-family dwellings, "we" may cancel this policy at any time during the policy period, if the insured property consists of one or more buildings:

   1) to which, following a fire loss, permanent repairs have not commenced within 60 days after satisfactory adjustment of loss, unless such delay is a direct result of a labor dispute or weather conditions;

   2) that have been unoccupied for 60 consecutive days, except buildings which have a seasonal occupancy and buildings which are undergoing construction, repair, or reconstruction and are properly secured against unauthorized entry;

3) for which, because of their physical condition, there is an outstanding demolition order, or which have been declared unsafe in accordance with applicable law; or

4) to which heat, water, sewer service, or public lighting have not been connected for 30 consecutive days or more.

If "we" cancel this policy for reasons listed under d.1) through d.4) above, cancellation will be effective ten days after "you" and any mortgagee or lienholder have received "our" notice. The notice of cancellation will be sent by regular mail and certified mail, and "your" return premium, if any, will be calculated on a pro rata basis.

e. "We" may cancel this policy at any time during the policy period if the premium has not been paid when due. If "we" cancel this policy for non-payment of premium, "we" will mail the cancellation notice at least ten days before the effective date of cancellation.

f. If this policy has been in effect more than 60 days, or if it is a renewal of a policy issued by "us", "we" may cancel this policy according to the "terms" set forth under item d. or item e. above, or "we" may cancel if one or more of the following reasons apply:

   1) If this policy covers one- to four-family dwellings used for residential purposes or any personal property incidental to residential occupancies, "we" may cancel this coverage when:

      a) the policy was obtained by misrepresentation or fraud; or
      b) there has been an act that measurably increases the risk originally accepted.

Copyright, American Association of Insurance Services, Inc., 2003

Exhibit C - Page 84 of 97

AAIS
CL 01 21 05 03
Page 2 of 2

2) If this policy covers any other type of property, "we" may cancel this coverage when:

a) the policy was obtained through a material misrepresentation;

b) any "insured" has violated any of the "terms" and conditions of the policy;

c) the risk originally accepted has measurably increased;

d) certification of the Director of the loss of reinsurance which provided coverage to "us" for all or a substantial part of the underlying risk insured; or

e) a determination by the Director that the continuation of the policy could place "us" in violation of the insurance laws of this state.

If "we" cancel this policy for any of the reasons listed under f.1) or f.2) above, "we" will mail the cancellation notice at least 60 days before the effective date of cancellation.

g. "Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

2. Under Common Policy Conditions, the following condition is added:

**Nonrenewal** --

If "we" decide not to renew this policy, "we" will mail "our" notice of nonrenewal to "you" at least 60 days before the end of the policy period or anniversary date. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record and any mortgagee or lienholder at the last mailing address known to "us". Proof of mailing is sufficient proof of notice. "Our" notice will include the reasons for nonrenewal.

3. Under Common Policy Conditions, the following condition is added:

**Renewal** -- If "we" decide to renew this policy with premium increases of 30% or higher, or impose changes in deductible or coverage that materially alter the policy, "we" will mail to "you" written notice of such increase or change in deductible or coverage at least 60 days before the renewal or anniversary date. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice. The 60-day prior notification because of premium increase is not necessary where increases exceeding 30% are due to changed conditions or increased or broadened coverage initiated by "you".

CL 01 21 05 03

Copyright, American Association of Insurance Services, Inc., 2003

Exhibit C - Page 85 of 97

AAIS
IM 08 71 06 02
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## ILLINOIS

1. Under Definitions, item b. of Pollutants is deleted.

2. Under Perils Excluded, Criminal, Fraudulent, or Dishonest Acts is amended to include the following:

   However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

   a. arose out of a pattern of criminal domestic violence; and

   b. the perpetrator of the loss is criminally prosecuted for the act causing the loss;

   this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   "Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

3. Appraisal is amended to include the following:

   If "you" request an appraisal and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

4. Misrepresentation, Concealment, or Fraud is deleted and replaced by the following:

   **Misrepresentation, Concealment, or Fraud** -- "We" do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or
      2) an insured's interest herein; or

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

5. Suit Against Us is amended to include the following:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

IM 08 71 06 02

Copyright, American Association of Insurance Services, Inc., 2002

Exhibit C - Page 86 of 97

AAIS
IM-7100  Ed 1.0
Page 1 of 10            --PLEASE READ THIS CAREFULLY--

# INSTALLATION FLOATER COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Installation Floater Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

4. "Earth movement" means any movement or vibration of the earth's surface (other than "sinkhole collapse") including but not limited to earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting, of earth.

5. "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

6. "Ground water" means:

   a. water that backs up through a sewer or drain; or

   b. water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into a building, sidewalk, driveway, foundation, swimming pool, or other structure.

7. "Limit" means the amount of coverage that applies.

8. "Pollutant" means:

   a. any solid, liquid, gaseous, or thermal irritant or contaminant;

   b. electromagnetic (visible or invisible) or sound emission; or

   c. waste, including materials to be disposed of as well as recycled, reclaimed, or reconditioned.

9. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

10. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

Exhibit C - Page 87 of 97

AAIS
IM-7100  Ed 1.0
Page 2 of 10

Falling objects does not include loss to personal property in the open or to the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object.

Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

11. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

12. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow. It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

"We" cover direct physical loss to covered property caused by a covered peril while at a site of installation, fabrication, or erection described on the "declarations".

Covered Property consists of:

1. "Your" materials, supplies, machinery, fixtures, and equipment; and

2. similar property of others that is in "your" care, custody, and control

which will become a permanent part of "your" installation, fabrication, or erection project.

## PROPERTY NOT COVERED

1. **Airborne** – "We" do not cover property while airborne except while in transit on a regularly scheduled airline flight.

2. **Buildings, Structures, and Land** – "We" do not cover buildings, structures, or land. However, "we" do cover property that "you" install, fabricate, or erect in connection with any building or structure.

3. **Contraband** – "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Machinery, Tools, Equipment** – "We" do not cover machinery, tools, equipment, or similar property which will not become a permanent part of "your" installation, fabrication, or erection project.

5. **Money and Securities** – "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

6. **Trees, Shrubs and Plants** – "We" do not cover trees, shrubs, plants, and lawns.

7. **Waterborne Property** – "We" do not cover property while waterborne except while in transit in the custody of a carrier for hire.

## ADDITIONAL COVERAGES

1. **Transit and Storage Locations** – "We" cover direct physical loss to covered property caused by a covered peril while:

    a. in transit; or

    b. at an unscheduled storage location awaiting installation, fabrication, or erection.

Exhibit C – Page 88 of 97

E-FILED
Friday, 15 February, 2008  12:15:55 PM
Clerk, U.S. District Court, ILCD

AAIS
IM-7100  Ed 1.0
Page 3 of 10

The most "we" pay under this coverage is $2,500 plus the "limit" shown on the "declarations".

2. **Debris Removal** -- "We" pay the cost to remove the debris of covered property that is caused by a covered peril. This coverage does not include costs to:

   a.  extract "pollutants" from land or water; or

   b.  remove, restore, or replace polluted land or water.

"We" will not pay any more under this coverage than 25% of the amount "we" pay for the direct loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

"We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

3. **Emergency Removal** -- "We" pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered peril. "We" pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to ten days after the property is first moved, but does not extend past the date on which this policy expires.

4. **Pollutant Cleanup and Removal** -- "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period. The expenses are paid only if they

are reported to "us" in writing within 180 days from the date the covered peril occurs.

"We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

The most "we" pay for each site or location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

This is an additional "limit".

---

## PERILS COVERED

---

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

---

## PERILS EXCLUDED

---

1. "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a.  **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

     "We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

Exhibit C - Page 89 of 97

b. **Earth Movement or Volcanic Eruption** -- "We" do not pay for loss caused by any "earth movement" (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano.

"We" do pay for direct loss by fire, explosion, or "volcanic action" resulting from either "earth movement" or eruption, explosion, or effusion of a volcano.

All volcanic eruptions that occur within a 168 hour period shall be considered a single loss.

This exclusion does not apply when a "limit" is indicated for "earth movement" and volcanic eruption on the "declarations".

c. **Flood** -- "We" do not pay for loss caused by "flood" but if fire, explosion, or theft results "we" do cover the loss caused by the fire, explosion, or theft.

This exclusion does not apply to covered property while in transit.

This exclusion does not apply when a "limit" is indicated for "flood" on the "declarations".

d. **Ground Water** -- "We" do not pay for loss caused by "ground water" but if fire, explosion, or theft results "we" do cover the loss caused by the fire, explosion, or theft.

This exclusion does not apply to covered property while in transit.

This exclusion will not apply when a "limit" is indicated for "ground water" on the "declarations".

e. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. "We" do pay for direct loss by fire resulting from the nuclear hazard.

f. **Ordinance or Law** -- "We" do not pay for loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing its debris.

g. **Penalties** -- "We" do not pay for loss caused by penalties for noncompletion or non-compliance with any contract terms or conditions.

h. **War** -- "We" do not pay for loss caused by war. This means:

1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;
2) a warlike act by a military force or by military personnel;
3) the destruction, seizure, or use of the property for a military purpose; or
4) the discharge of a nuclear weapon even if it is accidental.

2. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss.

a. **Contamination or Deterioration** -- "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in the covered property that causes it to damage or destroy itself.

b. **Criminal, Fraudulent, or Dishonest Acts** -- "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts alone or in collusion with another by:

Exhibit C - Page 90 of 97

1) "you";
2) others who have an interest in the property;
3) others to whom "you" entrust the property;
4) "your" partners, officers, directors, trustees, or joint adventurers; or
5) the employees or agents of 1), 2), 3), or 4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

c.  **Explosion, Rupture, or Bursting --** "We" do not pay for loss caused by explosion, rupture, or bursting of steam boilers, steam or gas turbines, steam pipes, or steam engines.

This exclusion applies only to loss or damage to the steam boilers, steam or gas turbines, steam pipes, or steam engines in which the loss occurred.

d.  **Faults, Inadequacy, and Defects --** "We" do not pay for loss by faulty, inadequate, or defective:

1) planning or development;
2) survey, siting, or zoning; or
3) maintenance.

e.  **Loss of Use --** "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

f.  **Missing Property --** "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property. This exclusion does not apply to covered property in the custody of a carrier for hire.

g.  **Pollutants --** "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, seepage, migration, dispersal, or escape is caused by a "specified peril". "We" do pay for any resulting loss caused by a "specified peril".

h.  **Rain, Snow, Ice, or Sleet --** "We" do not pay for loss caused by or resulting from rain, snow, ice, or sleet to property in the open which is not part of the permanent building or structure.

This exclusion does not apply to property in the custody of carriers for hire.

i.  **Temperature/Humidity --** "We" do not pay for loss caused by humidity, dampness, dryness, or changes in or extremes of temperature.

j.  **Testing --** "We" do not pay for loss caused by testing including start-up, performance, stress, pressure, or overload testing of the covered property.

k.  **Voluntary Parting --** "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

l.  **Wear and Tear --** "We" do not pay for loss caused by wear and tear, marring or scratching.

3.  "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a covered peril results "we" will pay for the resulting loss.

Exhibit C - Page 91 of 97

a. **Defects, Errors, and Omissions --**
"We" do not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to:

1) design or specifications;
2) workmanship or construction;
3) repair, renovation, or remodeling; or
4) materials.

b. **Electrical Currents --** "We" do not pay for loss caused by arcing or by electrical currents other than lightning.

c. **Mechanical Breakdown --** "We" do not pay for loss caused by mechanical breakdown including centrifugal force.

d. **Settling, Cracking, Shrinking, Bulging, or Expanding --** "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, footings, foundations, walls, ceilings, or roofs.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice --** In case of a loss, "you" must:

   a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

   b. give notice to the police when the act that causes the loss is a crime.

2. **Protect Property --** "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" do pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. However, "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3. **Proof of Loss --** "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. the time, place, and circumstances of the loss;

   b. other policies of insurance that may cover the loss;

   c. "your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. changes in title of the covered property during the policy period; and

   e. estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

4. **Examination --** "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records --** "You" must produce records, including tax returns and bank microfilms of all cancelled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

6. **Damaged Property --** "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

Exhibit C - Page 92 of 97

AAIS
IM-7100  Ed 1.0
Page 7 of 10

7. **Volunteer Payments** -- "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

8. **Abandonment** -- "You" may not abandon the property to "us" without "our" written consent.

9. **Cooperation** -- "You" must cooperate with "us" in performing all acts required by this policy.

## VALUATION

1. **Actual Cost To Repair, Replace, or Rebuild** -- The value of covered property will be based on the lesser of the following amounts:

   a. the actual cost to repair, replace, or rebuild the covered property with materials of like kind and quality. The actual cost may include material, labor, and reasonable overhead expenses.

   b. the amount "you" actually spend to repair, replace, or rebuild the covered property.

   In no event will "we" pay more than the "limit" indicated on the "declarations".

   This valuation provision does not apply to paragraphs 2. and 3. under Valuation.

2. **Pair or Set** -- The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

3. **Loss to Parts** -- The value of a lost or damaged part of an item that consists of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## HOW MUCH WE PAY

1. **Insurable Interest** -- "We" do not pay for more than "your" insurable interest in any property.

2. **Deductible** -- "We" pay only that part of "your" loss over the deductible amount indicated on the "declarations" in any one occurrence.

3. **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

   a. the amount determined under Valuation;

   b. the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

   c. the "limit" that applies to the covered property.

4. **Coinsurance** -- When a coinsurance percentage is indicated on the "declarations" the following conditions apply. "We" only pay a part of the loss if the "limit" is less than value of the covered property multiplied by the percentage indicated on the "declarations". "Our" part of the loss is determined using the following steps:

   a. at the time of the loss, calculate the percentage of the value of the covered property as indicated on the "declarations";

   b. divide the "limit" for covered property by the result determined in 4.a. above;

   c. multiply the total amount of loss, after the application of any deductible, by the result determined in 4.b. above.

Exhibit C - Page 93 of 97

The most "we" pay is the amount determined in 4.c. above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

If there is more than one "limit" indicated on the "declarations" for this coverage, this procedure applies separately to each "limit".

If there is only one "limit" indicated on the "declarations" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

5. **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

6. **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" will not pay more than the applicable "limit".

## LOSS PAYMENT

1. **Our Options** -- "We" have the following options:

   a.  pay the value of the loss;

   b.  pay the cost of repairing or replacing the loss;

   c.  rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

   d.  take all or any part of the damaged property at the agreed or appraised value.

   "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2. **Your Losses** -- "We" will adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

3. **Property of Others** -- Losses to property of others may be adjusted with and paid to:

   a.  "you" on behalf of the owner; or

   b.  the owner.

   If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

Exhibit C - Page 94 of 97

AAIS
IM-7100 Ed 1.0
Page 9 of 10

The appraisers will then determine and state separately the amount of each loss.

The appraisers will also determine the value of covered property items at the time of the loss, if requested.

If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit to Others** -- Insurance under this coverage shall not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

On "your" death, "we" cover the following as an insured:

a. the person who has custody of "your" property until a legal representative is qualified and appointed; or

b. "your" legal representative.

This person or organization is an insured only with respect to property covered by this coverage.

This coverage does not extend past the policy period indicated on the "declarations".

5. **Misrepresentation, Concealment or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

a. "you" or any other insured have willfully concealed or misrepresented:

1) a material fact or circumstance that relates to this insurance or the subject thereof; or
2) "your" interest herein.

b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

a. "you" must notify "us" promptly if "you" recover property or receive payment;

b. "we" must notify "you" promptly if "we" recover property or receive payment;

c. any recovery expenses incurred by either are reimbursed first;

d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8. **Restoration of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

Exhibit C - Page 95 of 97

AAIS
IM-7100  Ed 1.0
Page 10 of 10

9.  **Subrogation** — If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

    "You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** — No one may bring a legal action against "us" under this coverage unless:

    a.  all of the "terms" of this coverage have been complied with; and

    b.  the suit has been brought within two years after "you" first have knowledge of the loss.

    If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** — "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

12. **Carriers For Hire** — "You" may accept bills of lading or shipping receipts issued by carriers for hire that limit their liability to less than the actual cash value of the covered property.

13. **When Coverage Ceases** — Coverage ends when one of the following first occurs:

    a.  this policy expires or is cancelled;

    b.  the covered property is accepted by the purchaser;

    c.  "your" insurable interest in the covered property ceases;

    d.  "you" abandon "your" installation, fabrication, or erection project with no intent to complete it;

    e.  the installation, fabrication, or erection project has been completed for more than 30 days; or

    f.  the covered property has been put to its intended use.  However, this does not apply to roofs or walls.

**IM-7100  Ed 1.0**
Copyright MCMXCIV
American Association of Insurance Services

Exhibit C - Page 96 of 97

```
SPP 2413242 00 20060830                              13 12 2413242 N083006
                                           OPTIPLAN-AGENT BILL
                                                                  13  NAC
AAIS
IM-7105 ED 1.0
PAGE 1 OF 1
---------------------------------------------------------------------
        I N S T A L L A T I O N  F L O A T E R  D E C L A R A T I O N S

              (THE INFORMATION REQUIRED BELOW MAY BE SHOWN ON
              A SEPARATE SCHEDULE OR SUPPLEMENTAL "DECLARATIONS".)


     -----------------------------------------------------------------
     SCHEDULE LOCATIONS
     -----------------------------------------------------------------

                                                    LIMIT
              SAVANNAH GREEN SUBDIVISION            $ 130,000
                                                    $
                                                    $



     COVERED PROPERTY IN TRANSIT                    $ 130,000

     COVERED PROPERTY AT UNSCHEDULED STORAGE LOCATIONS   $

     ANYONE LOSS CAUSED BY "EARTH MOVEMENT", AND
     VOLCANIC ERUPTION                              $

     ANY ONE LOSS CAUSED BY "FLOOD" AND "GROUND WATER"   $



     -----------------------------------------------------------------
     DEDUCTIBLE
     -----------------------------------------------------------------

                                            DEDUCTIBLE
                                            AMOUNT

     FOR ALL PERILS COVERED UNLESS A DIFFERENT
     DEDUCTIBLE IS SHOWN BELOW                  $ 1000

     "EARTH MOVEMENT" AND VOLCANIC ERUPTION     $

     "FLOOD" AND "GROUND WATER"                 $



     -----------------------------------------------------------------
     COINSURANCE
     -----------------------------------------------------------------

     (CHECK ONE, IF APPLICABLE)

     | X | 80%              |  | 90%            |  | 100%


     -----------------------------------------------------------------


     IM-7105 ED 1.0
```

Exhibit C - Page 97 of 97

E-FILED
Friday, 15 February, 2008  12:16:04 PM
Clerk, U.S. District Court, ILCD

## AFFIDAVIT

STATE OF INDIANA

COUNTY OF MARION

BEFORE ME, the undersigned authority, on this 29th day of January 2008

Personally appeared <u>Gary J. Morris</u>, a Manager for State Automobile Mutual

Insurance Company.

The affiant is known to me to be a credible person of lawful age, who first being duly

cautioned and sworn deposes and says that the attached specimen policy jacket,

declaration page and endorsements together to the best of my knowledge and belief

represent a true copy of policy number  <u>SPP 2413242</u>

_____
SIGNATURE OF AFFIANT

<u>Gary J. Morris</u>
PRINTED NAME OF AFFIANT

Subscribed and sworn to before me, this 29th day of January 2008
                                              DAY              MONTH

(seal)

_____
SIGNATURE OF NOTARY PUBLIC

<u>Carolyn M. Wertz</u>
PRINTED NAME OF NOTARY PUBLIC

<u>COUNTY OF Shelby</u>

STATE OF INDIANA

My commission expires October 16, 2009

```
SPP 2413242 01 20071023                              13 12 2413242 A102307
                           ORIGINAL COPY        OPTIPLAN-AGENT BILL
                                                                  13Y NAC

           STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY              3

                                                                          2

   POLICY NUMBER:  SPP 2413242 01                                         2

   NAMED INSURED AND ADDRESS:          AGENCY NAME, ADDRESS AND TELEPHONE: 2

       V-M LLC                            SNYDER AND SNYDER AGENCY INC
       C/O JOHN HAMILTON                  PO BOX 1546
       702 N CLINTON                      BLOOMINGTON, IL        61702
       BLOOMINGTON, IL      61701
                                          309-664-1800

   BRANCH:  13                            AGENCY NUMBER: 0001030

   POLICY PERIOD:    FROM:  JULY 31, 2007      TO:  JULY 31, 2008

                         P O L I C Y   C H A N G E S

         THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

   ------------------------------------------------------------------------
   POLICY CHANGE EFFECTIVE: 07/31/07


         AT YOUR REQUEST THE FOLLOWING CHANGES HAVE BEEN MADE:
   "COVERAGE FOR CERTIFIED ACTS OF TERRORISM HAS BEEN DELETED FROM THIS POLICY"
```

```
       THANK YOU FOR MAKING STATE AUTO YOUR COMMERCIAL COMPANY

   10/23/07
   ------------------------------------------------------------------------

                                        --------------------------
   IL 12 01 (04/93)                     AUTHORIZED REPRESENTATIVE
```

SPP 2413242 01 20070926   OPTIPLAN-AGENT BILL                    12 R 00 13  R
                                                                AC00001030


                  STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY              3

                SPECIAL ACCOUNT PROGRAM SUMMARY OF POLICIES AND PREMIUMS          2

         POLICY NUMBER  SPP 2413242 01              RENEWAL OF  SPP 2413242 00    2
                                        RENEWAL

         NAMED INSURED AND ADDRESS         AGENCY NAME, ADDRESS AND TELEPHONE NUMBER 2

             V-M LLC                          SNYDER AND SNYDER AGENCY INC
             C/O JOHN HAMILTON                PO BOX 1546
             702 N CLINTON                    BLOOMINGTON, IL
             BLOOMINGTON, IL                  61702
             61701
                                          PHONE: 309-664-1800
         BRANCH: INDIANAPOLIS             AGENCY NUMBER: 0001030

         POLICY PERIOD:      FROM: JULY 31, 2007  TO: JULY 31, 2008  AT
             12:01 AM  , STANDARD TIME, AT YOUR MAILING ADDRESS SHOWN ABOVE.

         IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS
         POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

             SUMMARY OF POLICIES AND PREMIUMS AS OF ABOVE EFFECTIVE DATE          2
         -----------------------------------------------------------------------------
         TYPE / DESCRIPTION OF INSURANCE                              PREMIUM
         -----------------------------------------------------------------------------

         COMMERCIAL UMBRELLA LIABILITY                               $2,050.00
         -----------------------------------------------------------------------------
         LIABILITY                                                     $321.00
         -----------------------------------------------------------------------------
         INLAND MARINE                                               $3,090.00
         -----------------------------------------------------------------------------

         PREMIUMS ON PROVISIONAL OR DEPOSIT BASIS
         WILL BE SUBJECT TO ADJUSTMENT.

                                        TOTAL ADVANCE PREMIUM:       $5,461.00
                                        * PREMIUM AT INCEPTION:      $5,461.00

         * INCLUDES TERRORISM INSURANCE COVERAGE PREMIUM                $93.00




         COUNTERSIGNED _____ BY _____
                                                    (AUTHORIZED REPRESENTATIVE)


         FORM NO. SP2     01/86                ISSUED 09/26/07   AGENT COPY

SPP 2413242 01 20070926   OPTIPLAN-AGENT BILL                  12 R 00 13  R
                                                              AC00001030


            STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY           3

                  POLICY SCHEDULE OF NAMES AND ADDRESSES                  2

POLICY NUMBER SPP 2413242 01                                             2
                              RENEWAL

NAMED INSURED AND ADDRESS        AGENCY NAME, ADDRESS AND TELEPHONE NUMBER  2

    V-M LLC                          SNYDER AND SNYDER AGENCY INC
    C/O JOHN HAMILTON                PO BOX 1546
    702 N CLINTON                    BLOOMINGTON, IL
    BLOOMINGTON, IL                  61702
    61701
                                 PHONE: 309-664-1800
                                 AGENCY NUMBER: 0001030

            LOCATIONS OF PREMISES YOU OWN, RENT OR OCCUPY                 2


    LOCATION 0001                    LOCATION 0002
    1304 OGLETHORP                   1306 OGLETHORP
    URBANA, IL                       URBANA, IL
    61802                            61802


    LOCATION 0003                    LOCATION 0004
    1308 OGLETHORP                   1310 OGLETHORP
    URBANA, IL                       URBANA, IL
    61802                            61802


    LOCATION 0005
    1312 OGLETHORP
    URBANA, IL
    61802


FORM NO. SNADEC    11/89              ISSUED 09/26/07    AGENT COPY

```
SPP 2413242 01 20070926                              13 12 2413242 R092607
                          ORIGINAL COPY      OPTIPLAN-AGENT BILL
                                                        13  NAC
```

STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY                 3

COMMERCIAL UMBRELLA LIABILITY DECLARATIONS                        2

POLICY NUMBER:  SPP 2413242 01                                    2

NAMED INSURED AND ADDRESS:          AGENCY NAME, ADDRESS AND TELEPHONE:   2

```
   V-M LLC                            SNYDER AND SNYDER AGENCY INC
   C/O JOHN HAMILTON                  PO BOX 1546
   702 N CLINTON                      BLOOMINGTON, IL        61702
   BLOOMINGTON, IL      61701
                                      309-664-1800
```

BRANCH: 13                          AGENCY NUMBER: 0001030

POLICY PERIOD:   FROM: JULY 31, 2007        TO: JULY 31, 2008    AT
         12:01 AM   STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

THESE DECLARATIONS PAGES CONTINUE THIS POLICY INFORCE FOR THE PERIOD
INDICATED UPON VALID PAYMENT OF THE PREMIUM WHEN DUE


ITEM 1: NAMED INSURED (IF DIFFERENT THAN SHOWN ABOVE):

ITEM 2: FORM OF NAMED INSURED'S BUSINESS: LIMITED LIABILITY CORP

ITEM 3: RETROACTIVE DATE:

ITEM 4: LIMIT OF INSURANCE:
         POLICY AGGREGATE LIMIT  $ 5,000,000
         SELF-INSURED RETENTION  $            EACH INCIDENT OR OFFENSE
                                              NOT COVERED BY UNDERLYING
                                              INSURANCE

ITEM 5: FORM(S)/ENDORSEMENT(S) ATTACHED TO POLICY AT INCEPTION: CXS0001 (01/06)
   CXS0002 (07/98)  CXS0012 (07/05) CXS2172 (12/02) CXS2176 (11/02)
   CXS2187 (05/04) CXS2155 (09/99) CXS4005 (07/98) CXS4007 (0798)

ITEM 6: PREMIUM COMPUTATION:
         TOTAL ESTIMATED PREMIUM (SUBJECT TO AUDIT) $ 2050
         TERRORISM INSURANCE COVERAGE INCLUDED        $ 0

         PREMIUM ADJUSTABLE AT RATE OF $          PER        OF
         SUBJECT TO MINIMUM PREMIUM OF $

ITEM 7: SCHEDULE OF UNDERLYING INSURANCE:

| TYPE | AUTO LIABLITY | GENERAL LIABILITY | EMPLOYERS LIAB. |
|------|---------------|-------------------|-----------------|
| COMPANY | STATE AUTO INSURANCE | STATE AUTO INSURANCE | |
| POLICY NO. | BAP 2176715 | SPP 2413242 | |
| POLICY PERIOD | FROM 07/31/07 TO  07/31/08 | FROM 07/31/07 TO  07/31/08 | FROM TO |
| LIMITS OF LIABILITY | EACH ACCIDENT $ 1,000,000 OR BODILY INJURY EACH PERSON $ BODILY INJURY EACH ACCIDENT $ PROPERTY DAMAGE EACH ACCIDENT $ | GENERAL AGGREGATE $ 2,000,000 PRODUCTS/COMPLETED OPERATIONS AGGREGATE $ 2,000,000 PERSONAL AND ADVERTISING INJURY $ 1,000,000 EACH OCCURRENCE $ 1,000,000 | BODILY INJURY EACH ACCIDENT $ BODILY INJURY BY DISEASE EACH EMPLOYEE $ BODILY INJURY BY DISEASE POLICY LIMIT $ |

IF GENERAL LIABILITY IS CLAIMS MADE, ITS RETROACTIVE DATE IS:
--------------------------------------------------------------------
ISSUE DATE 09/26/07          COUNTERSIGNED BY:
                                        ------------------------------
CXS 0002-D (03/03)                      AUTHORIZED REPRESENTATIVE

# COMMERCIAL UMBRELLA COVERAGE FORM

PLEASE READ THIS POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS. WE HAVE NO DUTY TO PROVIDE COVERAGE UNLESS THERE HAS BEEN FULL COMPLIANCE WITH ALL THE CONDITIONS – SECTION **V** – OF THIS POLICY.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us", and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **III** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** – Definitions.

**Section I**    Insuring Agreements

In consideration of the payment of premium and in reliance upon representations you made to us during the process of obtaining this insurance and subject to the Limit of Insurance shown in the Declarations, and all the exclusions, terms and conditions of this policy, we agree with you as follows:

**Coverage A    Bodily Injury And Property Damage Liability**

**1. Insuring Agreement**

   a.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

      **(1)** The amount we will pay for "ultimate net loss" is limited as described in Section **IV** – Limit Of Insurance;

      **(2)** At our discretion, we may investigate any "occurrence" and settle any resulting "claim" or "suit";

      **(3)** We have a right and duty to defend the insured against any "suits" to which this insurance applies:

         **(a)** But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or

         **(b)** If the applicable limit of "underlying insurance" is exhausted.

         However, we will have no duty to defend the insured against any "suits" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply; and

      **(4)** Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages **A** and **B**.

   No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section **II** – Defense.

   b.  It is agreed that this insurance only applies if:

      **(1)** The "bodily injury" or "property damage" occurs during the policy period of this policy;

      **(2)** With respect to your liability (other than under a contract) for "bodily injury" to your "employees" arising out of and in the course of their employment by you:

         **(a)** Any "bodily injury" by disease is caused or aggravated by the conditions of that employment; and

         **(b)** An "employee's" last day of last exposure to conditions causing or aggravating such disease occurs during the policy period of this policy; and

      **(3)** The "bodily injury" or "property damage" is caused by an "occurrence", and such "occurrence" takes place in the "coverage territory".

      **(4)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **III** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section III – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section III – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. "Ultimate net loss" because of "bodily injury" includes damages sought by any person or organization for care or loss of services resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. "Bodily injury" or "property damage" either expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property;

b. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract";

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged; and

(c) The indemnitor insured's "underlying insurance" also deems these expenses to be damages;

c. Liability imposed on the insured or the insured's insurer, under any of the following laws:

(1) Employees' Retirement Income Security Act of 1974 (E.R.I.S.A.) as now or hereafter amended, or any similar state or other governmental law;

(2) Any uninsured motorists, underinsured motorists, or automobile no-fault or first party "bodily injury" or "property damage" law; or

(3) Any workers compensation, unemployment compensation or disability benefits law or any similar law.

d. The insured's liability (other than under an "insured contract") for "bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister, or other dependents of that "employee" as a consequence of d.(1) above.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

But this exclusion **d.(1)** and **d.(2)** applies only with respect to:

(1) "Bodily injury" to any person in work subject to the Longshore and Harbor Workers Compensation Act (33 USC Sections 901-950), the Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), and any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

(2) "Bodily injury" to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an "employee" due to "bodily injury" arising out of or in the course of employment, or any amendments to those laws;

(3) "Bodily injury" to a master or member of the crew of any vessel;

(4) Fines or penalties imposed for violation of federal or state law;

(5) Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued there under, and any amendments to those laws;

(6) Punitive or exemplary damages because of "bodily injury" to any "employee" employed in violation of law;

(7) "Bodily injury" to an "employee" while employed in violation of law with the insured's actual knowledge or the actual knowledge of any of your "executive officers"; and

(8) "Bodily injury" to an "employee" if such employment is subject to the workers compensation laws of the states of Massachusetts, Missouri, New Jersey, New York or any other state which requires unlimited Employers Liability coverage in conjunction with primary Workers Compensation policies.

This exclusion d. applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such injury.

With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of their employment by you, exclusions **f.**, **g.**, and **h.** do not apply.

e. "Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Failure to promote an employee;

(c) Discipline, demotion, negligent evaluation or negligent reassignment;

(d) Termination of that person's employment;

(e) Employment-related practices, policies, acts or omissions, including, without limitation, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(f) Oral or written publication of materials that slanders, defames, or libels an "employee" or violates or invades an "employee's" right of privacy.

(2) The spouse, child, parent, brother or sister, or any other dependents of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraph **e.(1)** above is directed.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury".

**f.** Pollution:

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants":

**(a)** That are, or ever were, contained in any property that is, or ever was:

**(i)** Being transported or towed by, handled, or handled for movement into, onto or from any "auto";

**(ii)** Otherwise in the course of transit by or on behalf of the insured; or

**(iii)** Being stored, disposed of, treated or processed in or upon any "auto";

**(b)** At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any insured. However, this subparagraph **f.1.(b)** does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your applicable "underlying insurance" as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than the additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(c)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(d)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph **f.(1)(e)** does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment", any "auto" covered by applicable "underlying insurance" or the parts of either, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

**(f)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

    **(2)** Any loss, cost or expense arising out of any:

        **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

        **(b)** "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

    However, this paragraph **(2)** does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

Subparagraph **(a)** of part **(1)** of this exclusion **f.** does not apply if any applicable "underlying insurance" shown in the Schedule of Underlying Insurance provides coverage at the full limits of liability shown therein for such losses as are described in subparagraph **(a)** of part **(1)** for any "autos" involved in such operations.

    **(3)** Exceptions:

        **(a)** Paragraphs **f.(1)(c)** through **f.(1)(f)** of this exclusion do not apply to pollutants that are not in or upon a "covered auto" if:

            **(i)** The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of a "covered auto"; and

            **(ii)** The discharge, dispersal, release or escape of the pollutants is caused directly by such upset, overturn or damage.

**g.** "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or chartered, rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrong doing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of aircraft, or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

    **(1)** Watercraft while ashore on premises you own or rent;

    **(2)** Watercraft you do not own that are:

        **(a)** Less than 26 feet long or the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance; and

        **(b)** Not being used to carry persons or property for a charge; or

    **(3)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

**h.** "Bodily injury" or "property damage" arising out of the use of any "mobile equipment" or "auto" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i.  "Bodily injury" or "property damage" however caused, arising, directly or indirectly, out of:

    (1)  War,  including undeclared or civil war;

    (2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

j.  "Property damage" to:

    (1)  Property you own, rent, or occupy; including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

    (2)  Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

    (3)  Property loaned to you;

    (4)  Personal property in the care, custody or control of any insured;

    (5)  That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

    (6)  That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

Paragraph j.(2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs j.(3), j.(4), j.(5) and j.(6) of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph j.(6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k.  "Property damage" to "your product" arising out of it or any part of it.

l.  "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    (1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    (2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.  Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

    (1)  "Your product";

    (2)  "Your work"; or

    (3)  "Impaired property";

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

o.  "Bodily injury" arising out of "personal and advertising injury."

p.  Asbestos

   (1) "Bodily injury" or "property damage" arising out of, resulting from, caused by, or contributed to:

      (a) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

      (b) The use of asbestos in constructing or manufacturing any goods, product or structure;

      (c) The removal of asbestos from any goods, product or structure;

      (d) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

   (2) Any damages or any loss, cost or expense arising out of any claim or suit by or on behalf of any governmental authority requirement that any insured or any other person or entity should be, or should be responsible for:

      (a) Assessing the presence, absence or amount or effects of asbestos;

      (b) Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating asbestos; or

      (c) Responding to asbestos in any way other than as described in subparagraphs (1) and (2) above.

   (3) Any actual or alleged negligence in hiring, training, supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with actions described in subparagraphs (1) and (2) of this exclusion; or

   (4) Any obligation to share damages with or repay someone else who must pay damages in connection with any of the subsections above.

q.  "Bodily injury" or "property damage" arising out of any form of lead or lead compounds. In addition, this insurance does not apply to any loss, cost or expense arising out of:

   (1) Any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead or lead compounds;

   (2) Any "claim" or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

   (3) Any actual or alleged negligence in hiring, training, supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds; or

   (4) Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

r.  "Bodily injury" or "property damage" arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

s.  Any obligation arising out of the administration of any employee benefit plan.

t.  Any "wrongful act" of any director or "executive officer" of any insured in the discharge or performance of their duties as such.

u.  "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

   (1) Causing or contributing to the intoxication of any person;

   (2) The furnishing of alcoholic beverages to a person under legal drinking age or under the influence of alcohol; or

   (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion u. applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

v.  "Bodily injury" or "property damage":

   (1) With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

  (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

  (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) Resulting from the "hazardous properties" of "nuclear material", if:

  (a) The "nuclear material":

    (i) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

    (ii) Has been discharged or dispersed there from;

  (b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  (c) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" include radioactive, toxic or explosive properties;

(2) "Nuclear material" means "source material", "special nuclear material" or "by-product material";

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

(5) "Waste" means any waste material:

  (a) Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

  (b) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility";

(6) "Nuclear facility" means:

  (a) Any "nuclear reactor";

  (b) Any equipment or device designed or used for:

    (i) Separating the isotopes of uranium or plutonium;

    (ii) Processing or utilizing "spent fuel"; or

    (iii) Handling, processing or packaging "waste";

  (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

  (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

(8) "Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

w. Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

x. "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## Coverage B    Personal And Advertising Injury Liability

### 1. Insuring Agreement

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But:

(1) The amount we will pay for the "ultimate net loss" is limited as described in Section **IV** – Limit Of Insurance;

(2) At our discretion, we may investigate any offense and settle any resulting "claim" or "suit";

(3) We have a right and duty to defend the insured against any "suits" to which this insurance applies:

(a) But which are not covered by any "underlying insurance" shown in the Declarations or by any other primary policies that may apply; or

(b) If the applicable limit of "underlying insurance" is exhausted.

However, we will have no duty to defend the insured against any "suits" seeking damages for "personal and advertising injury" to which this insurance does not apply; and

(4) Both our right and duty to defend any existing or future "suits" end when we have exhausted the applicable Limit of Insurance in payment of judgments or settlements under Coverages **A** and **B**.

No other obligation or liability to pay or perform acts or services is covered unless explicitly provided for under Section **II** – Defense.

b. This insurance applies only to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **"Personal and advertising injury"**

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of the insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(10) Committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web-sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17.a. b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

(11) Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

(12) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

(13) Arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of "pollutants" at any time;

(14) Arising out of:

(a) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

(b) The use of asbestos in constructing or manufacturing any good, product or structure;

(c) The removal of asbestos from any good, product or structure;

(d) The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

(e) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with parts **(14) (a)** through **(14) (d)** of this exclusion; or

(f) Any obligation to share damages with or repay someone else who must pay damages in connection with parts **(14) (a)** through **(14) (e)** of this exclusion.

(15) Arising out of any form of lead or lead compounds. In addition, any loss, cost or expense arising out of:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of lead or lead compounds;

(b) "Claim" or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

(c) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with lead or lead compounds; or

(d) Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

(16) Arising out of the rendering of or failure to render any professional services. But, this exclusion does not apply to the extent such coverage is provided by the "underlying insurance" listed in the Schedule of Underlying Insurance.

(17) Arising out of any "wrongful act" of any director or "executive officer" of any insured in the discharge or performance of their duties as such.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

**(18)** To:

    **(a)** A person arising out of any:

        **(i)**   Refusal to employ that person;

        **(ii)**  Failure to promote an employee;

        **(iii)** Discipline, demotion, negligent evaluation or negligent reassignment;

        **(iv)** Termination of that person's employment;

        **(v)**  Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

        **(vi)** Oral or written publication of materials that slanders, defames, or libels an "employee" or violates or invades an "employee's" right of privacy.

    **(b)** The spouse, child, parent, brother or sister, or any other dependents of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraph **(18) (a)** of this exclusion were directed.

    **(c)** This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such "personal and advertising injury".

**(19)** However caused, arising, directly or indirectly, out of:

    **(a)** War, including undeclared or civil war;

    **(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **(c)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(20)** Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

    **(a)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law, or

    **(b)** The CAN SPAM Act of 2003, including any amendment of or addition to such law, or

    **(c)** Any statute, ordinance, or regulation, other than the TCPA or CAN Spam Act of 2003, that prohibits or limits the sending, transmitting, communicating, or distribution of material or information.

**b.** Any loss, cost or expense arising out of any:

    **(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to, or assess the effects of, "pollutants"; or

    **(2)** "Claim" or "suit" by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**Section II    Defense**

1. When we have the duty to defend, or we investigate or settle any offense, "occurrence", "claim" or "suit", and then only to the extent that "underlying insurance" is not responsible for the costs shown below in items **a.** through **f.**, we will pay on behalf of the insured:

    **a.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies. We do not have to furnish these bonds.

    **b.** The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

    c.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of any "claim" or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    d.  All costs taxed against the insured in any "suit" we defend.

    e.  "Pre-judgment interest" awarded against the insured on that part of any judgment covered under this policy. If we offer the applicable Limit of Insurance in settlement of a "claim" or "suit", we will not pay for any "pre-judgment interest" imposed or earned after the date of such offer.

    f.  All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before we have paid, offered to pay, or deposited in court that part of any judgment that is within the applicable Limit of Insurance.

**2.**  Payments under this section of the policy, as well as payments for all expenses we incur, will not reduce the Limit of Insurance.

**3.**  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

    a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    b.  This insurance applies to such liability assumed by the insured;

    c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

    d.  The allegations in the "suit" and the information we know about the offense or "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

    e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    f.  The indemnitee:

        (1)  Agrees in writing to:

            (a)  Cooperate with us in the investigation, settlement or defense of the "suit";

            (b)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

            (c)  Notify any other insurer whose coverage is available to the indemnitee; and

            (d)  Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

        (2)  Provides us with written authorization to:

            (a)  Obtain records and other information related to the "suit"; and

            (b)  Conduct and control the defense of the indemnitee in such "suit".

    So long as the conditions in this subparagraph **f.** are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid under Section II – Defense. Notwithstanding the provisions of paragraph **2.b.(2)** of Coverage **A.** – Bodily Injury And Property Damage Liability (Section I), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

**4.**  Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses under Section II – Defense ends when:

    a.  We have used up the applicable limit of insurance in the payment of judgments or settlements; or

    b.  The conditions set forth above, or the terms of the agreement described in paragraph **3.f.** above, are no longer met by the indemnitee.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

**Section III  Who Is An Insured**

1. If you are designated in the Declarations as:

    a. An individual, you, as a natural person, and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b. A partnership or joint venture, you are an insured. Except with respect to any "auto", your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, or joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Except with respect to any "covered auto", each of the following is also an insured:

    a. Your "volunteer workers" only while performing duties related to the conduct of your business, or "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for :

        (1) "Bodily injury" or "personal and advertising injury":

            (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

            (b) To the spouse, child, parent, brother or sister, or other dependent of that co-"employee" as a consequence of paragraph **2.a.(1)(a)** above;

            (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **2.a.(1)(a)** or **2.a.(1)(b)** above; or

            (d) Arising out of his or her providing or failing to provide professional health care services.

        (2) "Property damage" to property:

            (a) Owned, occupied or used by; or

            (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    b. Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager

    c. Any person or organization having proper temporary custody of your property if you die, but only:

        (1) With respect to liability arising out of the maintenance or use of that property; and

        (2) Until your legal representative has been appointed.

    d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

    e. Any person or organization qualifying as an insured under any policy of "underlying insurance".

        (1) Coverage afforded such insureds under this policy applies only to injury or damage:

            (a) Which is covered by this policy; and

            (b) Which is covered by the "underlying insurance" or would be covered but for the exhaustion of such policy's limits of insurance.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

    **(2)** This policy shall not afford such person or organization limits of insurance in excess of:

      **(a)** The minimum limit of insurance you agreed to provide; or

      **(b)** The limit of insurance under this policy, whichever is less.

**f.** Any person or organization for whom you have agreed in writing prior to any "occurrence" or offense to provide insurance such as is afforded by this policy, but only with respect to operations performed by you or on your behalf, or facilities owned or used by you. This policy shall not afford such person or organization limits of insurance in excess of:

    **(1)** The minimum limit of insurance you agreed to provide; or

    **(2)** The limit of insurance under this policy, whichever is less.

**3.** With respect to any "covered auto", any person is an insured while operating such "covered auto" with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the "covered auto".

However, except with respect to your partners, "employees", or members of their households, the owner or anyone else from whom you hire or borrow a "covered auto" is an insured only if that "covered auto" is a trailer connected to a "covered auto" you own.

But no person or organization is an insured under this paragraph **3.** for:

**a.** "Bodily injury" to a co-"employee" of the person operating the "covered auto";

**b.** "Property damage" to property owned by the employer of any person who is an insured under this provision;

**c.** Any "covered auto" you hire or borrow from one of your partners, "employees" or members of their households, if they are the owner of such "covered auto", unless:

    **(1)** Insurance is afforded to that owner for such "covered auto" by "underlying insurance", or would be afforded under such "underlying insurance" but for exhaustion of such policy's limits of insurance; or

    **(2)** Such "covered `auto" is a trailer connected to an "covered auto" you own;

**d.** Any "covered auto" being used by a person employed in the business of selling, servicing, repairing, or parking "autos" unless they are your "employee"; or

**e.** The movement of property to or from an "covered auto" except your "employees" or partners, the lessees or borrowers of such "covered auto", and any "employees" of such lessees or borrowers.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a named insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period set forth in the Declarations, whichever is earlier;

**b.** Coverage is applicable only in excess of the Limits of "underlying insurance" as shown in the Declarations, and you must add such organization to your "underlying insurance" as soon as practicable, advising us of such additions. We may then make adjustment of premium charges as called for in Condition **9** – Maintenance of Underlying Insurance;

**c.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**d.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the Declarations.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

## Section IV  Limit Of Insurance

1. The Policy Aggregate Limit shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a.  Insureds;

   b.  "Claims" made or "suits" brought; or

   c.  Persons or organizations making "claims" or bringing "suits".

2. The Policy Aggregate Limit is the most we will pay for:

   a.  All "ultimate net loss" under Coverage **A** and Coverage **B** combined, except "ultimate net loss" because of injury and damage arising from the "automobile hazard"; and

   b.  Each "occurrence" with regard to "ultimate net loss" because of injury and damage arising from the "automobile hazard".

3. If the Policy Aggregate Limit is paid prior to this policy's termination date for losses other than losses arising from the "automobile hazard", this policy's premium is fully earned.

4. The Policy Aggregate Limit applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

## Section V  Conditions

1. **Appeals.** In the event the insured or any "underlying insurer" elects not to appeal a judgment for damages covered by this policy and which exceeds the "retained limit", we may elect, but have no duty, to do so. We shall be liable, in addition to the Limit of Insurance, for all costs and expenses incurred and interest on judgments incidental to such an appeal and for all such costs, expenses and interest on appeals in connection with our right and duty to defend the insured under this policy.

2. **Bankruptcy.** Bankruptcy, insolvency, or receivership of the insured, the insured's estate or of any "underlying insurer" will not relieve us of our obligations under this policy. With regard to bankruptcy, insolvency, or receivership of any "underlying insurer", this policy shall not apply as a replacement of such bankrupt or insolvent insurer and our Limits of Insurance will apply only in excess of the required Limit(s) of Insurance stated in the Declarations of this policy.

3. **Cancellation.**

   a.  The first named insured shown in the Declarations may cancel this policy by delivering it to us or any of our authorized agents or by sending us written notice stating when the future cancellation will take effect. Cancellation will become effective the date of delivery of the policy to us or upon such future date requested by the first named insured.

   b.  We may cancel this policy by mailing or delivering to the first named insured written notice of cancellation at least:

      (1) Ten (10) days before the effective date of cancellation if we cancel because of nonpayment of premium whether payable directly to us or payable to our agents or others under any installment payment plan, premium finance plan, extension of credit or other payment plan; or

      (2) Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

   c.  We will mail or deliver our notice to the first named insured's last mailing address known to us.

   d.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

   e.  If this policy is canceled, we will send the first named insured any premium refund due. If we or the first named insured cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered any refund of unearned premium.

   f.  If notice is mailed, proof of mailing will be sufficient proof of notice.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

4. **Changes.** This policy contains all the agreements between you and us concerning the insurance afforded. The first named insured shown in the Declarations is authorized to make changes in the terms of this policy upon our giving written consent. This policy's terms can be amended or waived only by endorsement to this policy issued by us and made a part of this policy.

5. **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

   a. You must see to it that we or our authorized representative are notified as soon as practicable of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:

      (1) How, when, and where the "occurrence" or alleged offense took place;

      (2) The insured's name and address;

      (3) The names and addresses of any injured persons or witnesses; and

      (4) The nature and location of any injury or damage arising out of the "occurrence" or offense.

      Notice of an "occurrence" or an offense is not notice of a "claim".

   b. If a "claim" is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the "claim" or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we also receive written notice of the "claim" or "suit" as soon as practicable.

   c. You and any other insured involved in such "claim" or "suit" must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

   e. No insureds shall in any way jeopardize our rights after an "occurrence" or offense.

6. **Examination of Your Books and Records.** We may examine and audit your books and records as they relate to this policy at any time during the policy period set forth in the Declarations and up to three years afterward.

7. **Inspection and Surveys.**

   a. We have the right but are not obligated to:

      (1) Make inspections and surveys at any time;

      (2) Give you reports on the conditions we find; and

      (3) Recommend changes to such conditions.

   b. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We also do not warrant that conditions:

      (1) Are safe or healthful; or

      (2) Comply with laws, regulations, codes or standards.

   c. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

8. **Legal Action Against Us.**

   a. No person or organization has a right under this policy:

      (1) To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

      (2) To sue us under this policy unless all of its terms have been fully complied with.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

b. A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

9. **Maintenance of Underlying Insurance.**

a. You must keep the "underlying insurance" described in the Declarations, or renewal or replacement policies not more restrictive in their terms and conditions, in full force and effect during the policy period of this policy. The Limits of Insurance must be maintained without reduction other than by payment of losses covered thereunder. You must also inform us within 30 days of any termination of any policy of "underlying insurance", or replacement of any policy of "underlying insurance".

b. You must notify us immediately of any changes to the terms of any "underlying insurance" policies. We may adjust premium charges under this policy from the effective date of such changes to the terms of any "underlying insurance".

c. Your failure to comply with the foregoing paragraphs **9.a.** and **9.b.** will not invalidate this policy, but in the event of such failure, we shall be liable under this policy only to the extent that we would have been liable had you complied with these obligations.

10. **Other Insurance.** If other valid and collectible insurance is available to the insured for "ultimate net loss" we cover under this policy, our obligations under this policy are limited as follows:

a. This insurance is excess over:

(1) Any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance; and

(2) Any other insurance available to the insured, whether primary or excess, covering liability for damages arising out of premises or operations for which you have been added as an additional insured.

b. We will indemnify only our share of the amount of "ultimate net loss", if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under this or any other insurance.

c. We will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all other insurers in accordance with provisions of Condition **16** below.

11. **Premium Audit.**

a. We will compute all premiums for this policy in accordance with our rules and rates.

b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first named insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first named insured, but not if such audit premium is less than the Minimum Premium shown in the Declarations.

c. The first named insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

12. **Premiums.** The first named insured shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

13. **Representations.** By accepting this policy, you agree that:

a. The information shown on the Declarations is accurate and complete;

b. The information is based upon representations you made to us in your application(s) for this policy;

c. We have issued this policy in reliance upon your representations; and

d. Except as otherwise provided in this policy or by law, this policy is void if you conceal or misrepresent any material facts concerning this policy, in your application for this policy or otherwise.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

14. **Separation of Insureds.** Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first named insured, this insurance applies:

    **a.** As if each named insured were the only named insured; and

    **b.** Separately to each insured against whom "claim" is made or "suit" is brought.

15. **Sole Agent.** The named insured first shown in the Declarations is authorized to act on behalf of all insureds with respect to giving or receiving notice of cancellation or nonrenewal, receiving refunds, and agreeing to any changes in this policy.

16. **Transfer Of Rights Of Recovery Against Others To Us.**

    **a.** If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and

    **b.** Any recoveries shall be applied first to reimburse any interests (including the insured) that may have paid any amounts in excess of our liability under this policy; then to reimburse us for any payment hereunder; and lastly to reimburse such interests (including the insured) as to which this policy is excess, as are entitled to the residue, if any.

    **c.** When we assist in pursuit of the insured's rights of recovery, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recoveries.

    **d.** If there should be no recovery as a result of proceedings instituted solely at our request, we shall bear all expenses of such proceedings.

17. **Transfer of Your Rights and Duties Under This Policy.**

    **a.** Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

    **b.** If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

18. **When Loss Payable.** Our liability for any portion of "ultimate net loss" shall not apply until the insured or any "underlying insurer" shall be obligated to actually pay the full and complete amount of the "retained limit". When "ultimate net loss" has been finally determined, the insured may make "claim" for payment under this policy as soon as practicable thereafter. Such insured's obligation to pay any amount of "ultimate net loss" must have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant or the claimant's legal representative and us.

19. **When We Do Not Renew.**

    **a.** If we decide not to renew this policy, we will mail or deliver to the first named insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date or such other period as may be required by law.

    **b.** If notice is mailed, proof of mailing will be sufficient proof of notice.

## Section VI  Definitions

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

    **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporter is considered an advertisement.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

2. "Auto" means:

    **a.** A land motor vehicle, trailer or semi trailer designed for travel on public roads, including any attached machinery or equipment, or

    **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment".

3. "Automobile hazard" means liability arising out of the ownership, maintenance, use or entrustment of any "covered auto". Use includes operation and "loading or unloading".

4. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

5. "Claim" means any demand upon the insured for damages or services alleging liability of the insured as the result of an "occurrence" or offense.

6. "Covered auto" means only those "autos" to which "underlying insurance" applies.

7. "Coverage territory" means:

    **a.** The United Sates of America  (including its territories and possessions), Puerto Rico and Canada;

    **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

    **c.** All other parts of the world if the injury or damage arises out of :

        **(1)** Goods or products made or sold by you in the territory described in **a.** above;

        **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

        **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

    provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

8. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

9. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

11. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement;

    If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or by your fulfilling the terms of the contract or agreement.

12. "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of a contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement; or

f. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law for injury to persons or property in the absence of any contract or agreement.

Paragraph **11.f.** and **g.** does not include that part of any contract or agreement:

(1) That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

  (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

  (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **11.g.(2)** above and supervisory, inspection, architectural or engineering activities ;

(4) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees," if the "auto" is loaned, leased or rented with a driver; or

(5) That holds a person or organization engaged in the business of transporting property by "auto" for hire, harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority.

13. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

14. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

15. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

    **d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a.**, **b.**, **c.**, or **d.** immediately preceding that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in **a.**, **b.**, **c.**, or **d.** of this section maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        **(1)** Equipment designed primarily for:

            **(a)** Snow removal;

            **(b)** Road maintenance, but not construction or resurfacing; or

            **(c)** Street cleaning;

        **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

    However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means:

    **a.** With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you; or

    **b.** With respect to your liability (other than under a contract or agreement) for "bodily injury" to your "employees" arising out of and in the course of employment by you, "bodily injury" caused by accident or disease.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement."

**18.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes, without limitation, materials to be recycled, reconditioned or reclaimed.

**19.** "Pre-judgment interest" means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

20. "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

     **(1)** Products that are still in your physical possession; or

     **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

       **(a)** When all of the work called for in your contract has been completed;

       **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

       **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

     Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **b.** Does not include "bodily injury" or "property damage" arising out of:

     **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

     **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

     **(3)** Those products or operations for which the applicable classification, under a policy of "underlying insurance", states that products-completed operations are subject to that policy's General Aggregate Limit.

21. "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on created or used on, or transmitted to or from computer software, including systems and application software, hard or floppy disks, CD-ROMS, tapes drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

22. "Retained limit" means the greater of:

   **a.** The sum of amounts applicable to any "claim" or "suit" from:

     **(1)** "Underlying insurance", whether such "underlying insurance" is collectible or not; and

     **(2)** Other collectible primary insurance; or

   **b.** The "self-insured retention".

23. "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits

24. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or submits with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured must submit or submits with our consent.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

25. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

26. "Ultimate net loss" means the total amount of damages for which the insured is legally liable in payment of "bodily injury", "property damage" or "personal and advertising injury". "Ultimate net loss" must be fully determined as shown in Condition **18 – When Loss Payable**. "Ultimate net loss" shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of "ultimate net loss" shall not include any expenses incurred by any insured, by us or by any "underlying insurer".

27. "Underlying insurance" means the coverage(s) afforded under insurance policies designated in the Declarations and any renewals or replacements of those policies.

28. Underlying insurer" means any company issuing any policy of "underlying insurance".

29. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

30. "Wrongful act" means any actual or alleged error, misstatement or misleading statement, act, omission or neglect or breach of duty by a director or "executive officer" in discharge of their duties, individually or collectively, or any matter claimed against them solely by reason of their being directors or officers of your business.

    "Wrongful act" does not include "bodily injury", "property damage" or "personal and advertising injury" as defined in this coverage form.

31. "Your product":

    a. Means:

       (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

           (a) You;

           (b) Others trading under your name; or

           (c) A person or organization whose business or assets you have acquired; and

       (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

       (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

32. "Your work":

    a. Means:

       (1) Work or operations performed by you or on your behalf; and

       (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

       (2) The providing of or failure to provide warnings or instructions.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Conditions Applicable To State Automobile Mutual Insurance Company

1. **Dividends.** You are entitled to the proportionate part of any policyholder's dividend if declared by our Board of Directors in accordance with its by-laws.

2. **Notice of Policyholders Meetings.** While your policy is in force, you are one of our members and are entitled, in person or by proxy, to one vote at all meetings of the members. The annual meeting of the members is held at 9 o'clock A.M., Columbus time, on the first Friday of March of each year at our Home Office, 518 East Broad Street, Columbus, Ohio.

3. **Non-assessable.** This policy is non-assessable and the insured shall not be liable for the payment of any assessment nor for the payment of the premium other than that stated in this policy.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at Columbus, Ohio and countersigned on the Declarations Page by our duly authorized agent of the State Auto Insurance Companies.

*John R Lowther*

Secretary

*Robert H Moone*

President

CXS 00 01 01 06

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

Page 24 of 24

**E-FILED**
Friday, 15 February, 2008 12:16:15 PM
Clerk, U.S. District Court, ILCD

# COMMERCIAL UMBRELLA

# LIABILITY POLICY

**State Automobile Mutual Insurance Company**
Corporate Office • 518 East Broad Street • Columbus, Ohio 43216 • (614) 464-5000

**State Auto Property and Casualty Insurance Company**
123 S. Main Street • Greer, South Carolina 29651 • (803) 877-5411

**Milbank Insurance Company**
100 Plum Drive • Milbank, South Dakota 57252-1590 • (605) 432-5511

**Farmers Casualty Insurance Company**
1800 Woodland Avenue • West Des Moines, Iowa 50265-1580 • (515) 223-0130

Corporate Office
State Auto Insurance Companies • 518 East Broad Street • Columbus, Ohio 43216-5091 • (614) 464-5000

CXS-0002 (07/98)

# COMMERCIAL UMBRELLA LIABILITY POLICY QUICK REFERENCE

READ YOUR POLICY CAREFULLY. This cover sheet provides only a brief outline of some of the important features of your Policy. This is not the insurance contract and only the actual policy provisions will control. The Policy itself is a legal contract between you and your insurance company and sets forth, in detail, the rights and obligations of both you and your insurance company. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.

### DECLARATIONS PAGE(S)
Named Insured and Mailing Address
Agency name, address & telephone
Policy Period
Form of Named Insured's business
Retroactive date (if any)
Limit of Insurance
Forms/Endorsements attached
Premium
Schedule of underlying insurance

| | Form CXS0001<br>Beginning On Page |
|---|---|
| Section I — Insuring Agreement | |
| Coverage A: Bodily Injury and Property Damage Liability | 1 |
| Exclusions | 1 |
| Coverage B: Personal and Advertising Injury Liability | 6 |
| Exclusions | 6 |
| Section II — Defense | 10 |
| Section III — Who is an Insured | 11 |
| Section IV — Limits of Insurance | 12 |
| Section V — Conditions | 13 |
| Section VI — Definitions | 17 |
| Conditions Applicable to State Automobile Mutual Insurance Company | 23 |

**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A. Paragraph **3.**, Cancellation, of Section **V** – Conditions is replaced by the following:
   3. Cancellation.
     a. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.
     We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:
       (1) For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.
       (2) For a reason other than nonpayment of premium, we will mail the notice at least:
         (a) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.
         (b) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.
     b. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:
       (1) Nonpayment of premium;
       (2) The policy was obtained through a material misrepresentation;
       (3) Any insured has violated any of the terms and conditions of the policy;
       (4) The risk originally accepted has measurably increased;
       (5) Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or
       (6) A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.
     c. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
     d. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

B. Paragraph **19.**, When We Do Not Renew, of Section **V** – Conditions is replaced by the following:
   19. When We Do Not Renew.
   If we decide not to renew or continue this policy we will mail you and your agent or broker written notice, stating the reason for nonrenewal at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that your have not accepted our offer.
   If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

C. The following condition is added to Section **V** – Conditions and supersedes any provision to the contrary:
   20. Mailing of Notices. We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

D. Paragraph **5.**, Duties In The Event Of Occurrence, Offense, Claim Or Suit, of Section **V** – Conditions is replaced by the following:
   5. Duties In The Event Of Occurrence, Offense, Claim or Suit.
     a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a "claim". To the extent possible, notice should include:
       (1) How, when and where the "occurrence" or offense took place;
       (2) The names and addresses of any injured persons and witnesses; and
       (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
     b. If a "claim" is made or "suit" is brought against any insured, you must:
       (1) Immediately record the specifics of the "claim" or "suit" and the date received; and
       (2) Notify us as soon as practicable.

**CXS 00 12 07 05    Page 1 of 2**
*//*CXS 00 12 07 05

Copyright, Insurance Services Office, Inc.

115    Printed:
08/20/07    10:23:43

**STATE AUTO®**
Insurance Companies

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:
   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";
   (2) Authorize us to obtain records and other information;
   (3) Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and
   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**CXS 00 12 07 05   Page 2 of 2**
*//*CXS 00 12 07 05

Copyright, Insurance Services Office, Inc.


**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

**A.** The following exclusion is added:
This insurance does not apply to:
**TERRORISM**
"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is not a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:
1. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or
2. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
3. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:
1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Form or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Form or underlying insurance.
2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":
   a. The act resulted in aggregate losses in excess of $5 million; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

**D.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

CXS 21 72 12 02 Page 1 of 1
•//•CXS 21 72 12 02

ISO Properties, Inc., 2002

26
08/20/07    Printed:
10:27:49

Exhibit D – Page 34 of 99


**STATE AUTO**®
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

**A.** The following exclusion is added:
This insurance does not apply to:
**TERRORISM PUNITIVE DAMAGES**
Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:
"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**1.** The act resulted in aggregate losses in excess of $5 million; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**CXS 21 76 11 02 Page 1 of 1**
•//•CXS 21 76 11 02

ISO Properties, Inc., 2001

2
08/20/07    Printed:
10:27:49


**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

A. Applicability Of The Provisions Of This Endorsement
1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:
   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or
   b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:
      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or
      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or
      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.
   The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.
2. If the provisions of this endorsement become applicable, such provisions:
   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for

claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and
   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.
3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:
1. "Terrorism" means activities against persons, organizations or property of any nature:
   a. That involve the following or preparation for the following:
      (1) Use or threat of force or violence; or
      (2) Commission or threat of a dangerous act; or
      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and
   b. When one or both of the following applies:
      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

CXS 21 87 05 04   Page 1 of 2
*//*CXS 21 87 05 04

Includes copyrighted material of
Insurance Services Office, Inc., with its permission

14   Printed:
06/20/07   10:27:49

**STATE AUTO®**
Insurance Companies

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:
EXCLUSION OF TERRORISM
We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or
2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or
3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or
6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:
   a. Physical injury that involves a substantial risk of death; or
   b. Protracted and obvious physical disfigurement; or
   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

**CXS 21 87 05 04  Page 2 of 2**
•//•CXS 21 87 05 04

Includes copyrighted material of
Insurance Services Office, Inc., with its permission


**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Exclusion **f.** of Paragraph **2.,** Exclusions, of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability is replaced by the following:

**f.**  This insurance does not apply to:

    **1.**  "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

       This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

       **a.**  At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

       **b.**  At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

    **2.**  Any loss, cost or expense arising out of any:

       **a.**  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants"; or

       **b.**  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**CXS 21 55 09 99 Page 1 of 1**
∗//∗CXS 21 55 09 99

Copyright, Insurance Services Office, Inc.


**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - EMPLOYERS' LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

Exclusion **d.** of paragraph **2.**, Exclusions, of Section I - Coverage **A** - Bodily Injury And Property Damage Liability is deleted and replaced by the following:

This insurance does not apply to "bodily injury" (other than liability assumed by the insured under an "insured contract") to:

1. An "employee" of the insured arising out of and in the course of:
   a. Employment by the insured; or
   b. Performing duties related to the conduct of the insured's business; or
2. The spouse, child, parent, brother or sister of that "employee" as a consequence of **1.** above.

This exclusion applies:
1. Whether the insured may be liable as an employer or in any other capacity; and
2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**CXS 40 05 07 98 Page 1 of 1**
•//•CXS 40 05 07 98


**STATE AUTO®**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - OWNED AUTO

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM

The following exclusion is added to paragraph **2.**, Exclusions, of Section I – Coverage **A** – Bodily Injury And Property Damage Liability:

This insurance does not apply to "bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading or unloading" or entrustment to others of any "auto" owned by you.

**CXS 40 07 07 98 Page 1 of 1**
*//*CXS 40 07 07 98

```
SPP 2413242 01 20070926   OPTIPLAN-AGENT BILL              12 R 00 13  R
                                                           AC00001030
```

```
            STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY          3


            COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS            2

POLICY NUMBER SPP 2413242 01                                           2
                              RENEWAL

NAMED INSURED: V-M LLC                                                 2

                                THE INSURED IS:  LIMITED LIAB COMPANY

LIMITS OF INSURANCE:                                                   2
  EACH OCCURRENCE LIMIT                  $1,000,000
    PERSONAL AND ADVERTISING INJURY      $1,000,000 ANY ONE PERSON OR ORGANIZATION
    MEDICAL EXPENSE LIMIT                   $5,000 ANY ONE PERSON
    DAMAGE TO PREMISES RENTED TO YOU       $100,000 ANY ONE PREMISES
  GENERAL AGGREGATE LIMIT
    (OTHER THAN PRODUCTS - COMPLETED OPERATIONS)      $2,000,000
    PRODUCTS- COMPLETED OPERATIONS AGGREGATE LIMIT    $2,000,000


* TOTAL ADVANCE GENERAL LIABILITY PREMIUM (SUBJECT TO AUDIT):          $321.00
* INCLUDES TERRORISM INSURANCE COVERAGE PREMIUM                          $3.00

FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY:
GL 4     07/98 *   CG 21 47 07/98 *   CG 21 72 12/02 *   CG 21 76 11/02 *
CG 21 87 05/04 *   IL 09 99 05/04 *   AU 413    01/91 *   CG 02 00 07/05 *
CG 00 01 12/04 *   SL 20 02 01/06 *   SL 20 04 01/06 *   CG 24 26 07/04 *
CG 00 67 03/05 *   SI 01 62 04/06 *   CG 21 55 09/99 *
```

```
COUNTERSIGNED _____ BY _____
                                          (AUTHORIZED REPRESENTATIVE)


FORM NO. GL4D      07/98              ISSUED 09/26/07     AGENT COPY
```

```
SPP 2413242 01 20070926    OPTIPLAN-AGENT BILL              12 R 00 13  R
                                                           AC00001030
```

STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY                    3

COMMERCIAL GENERAL LIABILITY CLASSIFICATION SCHEDULE                  2

POLICY NUMBER SPP 2413242 01                                          2
                              RENEWAL
NAMED INSURED: V-M LLC                                                2


| LOC  ST TER CODE | PREMIUM BASIS | PER | RATE | ESTIMATED PREMIUM | 2 COV*2 |
|---|---|---|---|---|---|
| 1 IL 014 47051 | 5 ACRES | 1 | $12.425 | $62 | O |

REAL ESTATE DEVELOPMENT PROPERTY
PRODUCTS-COMPLETED OPERATIONS ARE INCLUDED,
SUBJECT TO THE GENERAL AGGREGATE LIMIT.


| LOC  ST TER CODE | PREMIUM BASIS | PER | RATE | ESTIMATED PREMIUM | 2 COV*2 |
|---|---|---|---|---|---|
| 1 IL 014 49451 | 55 ACRES | 1 | $4.663 | $256 | O |

VACANT LAND - OTHER THAN NOT-FOR-PROFIT
PRODUCTS-COMPLETED OPERATIONS ARE INCLUDED,
SUBJECT TO THE GENERAL AGGREGATE LIMIT.


| LOC  ST TER CODE | PREMIUM BASIS | PER | RATE | ESTIMATED PREMIUM | 2 COV*2 |
|---|---|---|---|---|---|
| | | | | $3 | O |

TERRORISM INSURANCE COVERAGE

* COV O INDICATES PREMISES OPERATIONS
  COV P INDICATES PRODUCTS-COMPLETED OPERATIONS


```
FORM NO. ES1       07/98          ISSUED 09/26/07    AGENT COPY
```



**STATE AUTO®**
Insurance Companies

# COMMERCIAL GENERAL LIABILITY

## INSURANCE POLICY

*State Automobile Mutual Insurance Company*

*State Auto Property and Casualty Insurance Company*

**Milbank Insurance Company**

**Farmers Casualty Insurance Company**

**QUICK REFERENCE**

# COMMERCIAL GENERAL LIABILITY COVERAGE

Read your policy carefully. This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself is a legal contract between you and your insurance company and sets forth, in detail, the rights and obligations of both you and your insurance company. It is therefore important that you read your policy.

**DECLARATIONS PAGE**
- Named Insured and Mailing Address
- Policy Period
- Description of Business and Location
- Coverages and Limits of insurance

**SECTION I — COVERAGES**                                                    **Beginning on Page**

Coverage A —                   Insuring Agreement ............................. 1
  Bodily Injury
  and Property                 Exclusions ................................. 1
  Damage Liability
Coverage B —                   Insuring Agreement ............................. 5
  Personal and
  Advertising                  Exclusions ................................. 5
  Injury Liability
Coverage C—                    Insuring Agreement ............................. 5
  Medical Payments             Exclusions ................................. 6
Supplementary Payments ....................................................... 6

**SECTION II — WHO IS AN INSURED** ........................................... 7

**SECTION III — LIMITS OF INSURANCE** ........................................ 8

**SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS** ..................... 9
Bankruptcy ................................................................... 9
Duties in the Event of Occurrence, Claim or Suit ............................. 9
Legal Action Against Us ...................................................... 9
Other Insurance .............................................................. 9
Premium Audit ................................................................ 10
Representations .............................................................. 10
Separation of Insureds ....................................................... 10
Transfer of Rights of Recovery Against Others To Us .......................... 10
When We Do Not Renew ......................................................... 10

**SECTION V — DEFINITIONS** .................................................. 10

**COMMON POLICY CONDITIONS (cover jacket)**
- Cancellation
- Changes
- Examination of Your Books and Records
- Inspections and Surveys
- Premiums
- Transfer of Your Rights and Duties under this Policy
- Installment Payments

**ENDORSEMENTS**
- Nuclear Energy Exclusion - in cover jacket
- Calculation of Premium - in cover jacket
- Any others, as indicted on the Declarations and Attached to this Policy.

**MUTUAL COMPANY POLICY CONDITIONS - in cover jacket**

# COMMON POLICY CONDITIONS

Subject to the laws of your state, some conditions may be changed by the attachment of a state amendatory endorsement.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## G. INSTALLMENT PAYMENTS

If you have elected to pay the premium on this policy in installments and you fail to pay an installment when due, we will assume you no longer want the insurance. In such event we will issue you a notice of cancellation as set forth under Policy Conditions. Such notice will specify the date and time of cancelation. If we receive an installment payment after the date of cancellation, we may, subject to the laws of your state, reinstate your policy, issue you a new policy with a new policy period or return the late payment to you.

# CONDITIONS APPLICABLE TO STATE AUTOMOBILE MUTUAL INSURANCE COMPANY

## DIVIDENDS

You are entitled to the proportionate part of any policyholder's dividend if declared by our Board of Directors in accordance with its By-Laws.

## NOTICE OF POLICYHOLDERS MEETINGS

While your policy is in force, you are one of our members and are entitled, in person or by proxy, to one vote at all meetings of the members. The annual meeting of the members is held at 9 o'clock A.M., Columbus time, on the first Friday of March of each year at our Home Office at 518 East Broad Street, Columbus, Ohio.

## NON-ASSESSABLE

This policy is non-assessable and the insured shall not be liable for the payment of any assessment nor for the payment of any premium other than that stated in this policy.

## ENDORSEMENTS MADE PART OF COVERAGE PARTS AS INDICATED

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSE-MENT (Broad Form)**

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

   (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured;" or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;"

"Nuclear material" means "source material," Special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on which site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

## CALCULATION OF PREMIUM ENDORSEMENT—Applicable to all Coverage Parts

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IN WITNESS WHEREOF, we have caused this policy to be signed by our Secretary and President at columbus, Ohio, and countersigned on the Decarations page by an authorized agent of the State Auto Insurance Companies.

John R Lowther
Secretary

Robert H Moore
President

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

   **(1)** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

   **(1)** A person arising out of any:

      **(a)** Refusal to employ that person;

      **(b)** Termination of that person's employment; or

      **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 21 72 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is not a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**2.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**3.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**a.** The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

CG 21 72 12 02 © ISO Properties, Inc., 2002 Page 1 of 2 ☐

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, "other act of terrorism" does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

**D.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

© ISO Properties, Inc.,  2002

**CG 21 72 12 02**     ☐

COMMERCIAL GENERAL LIABILITY
CG 21 76 11 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

    © ISO Properties, Inc., 2002

COMMERCIAL GENERAL LIABILITY
CG 21 87 05 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part or Policy; or

   b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

CG 21 87 05 04               © ISO Properties, Inc., 2004               Page 1 of 2    □

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

    a. That involve the following or preparation for the following:

        (1) Use or threat of force or violence; or

        (2) Commission or threat of a dangerous act; or

        (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    b. When one or both of the following applies:

        (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a. Physical injury that involves a substantial risk of death; or

    b. Protracted and obvious physical disfigurement; or

    c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

© ISO Properties, Inc., 2004

POLICY NUMBER:

IL 09 99 05 04

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)

## SCHEDULE

| |
|---|
| Terrorism Premium (Certified Acts) |
| (A) Premium through 12/31/05    $ |
| (B) Estimated Premium beyond 12/31/05 (refer to Paragraph C. below)   $ |
| |
| **Additional information, if any, concerning the terrorism premium:** |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

IL 09 99 05 04

© ISO Properties, Inc., 2004

Page 1 of 2    □

**C. Possibility Of Additional Or Return Premium**

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act of 2002. The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

© ISO Properties, Inc., 2004

IL 09 99 05 04   ☐



**STATE AUTO**®
Insurance Companies

# NOTICE TO ILLINOIS POLICYHOLDERS

The following information is provided for your convenience. Should you have any questions concerning your policy please contact your State Auto Insurance Companies agent or you may contact State Auto Insurance Companies, Customer Affairs and Information Department at 518 East Broad Street, Columbus, OH 43216. Phone: 1-800-444-9950, Extension 4822.

You may also contact the Illinois Insurance Department, Public Service Division, Springfield, Illinois 62767.

Please keep this information with your policy for future reference.

AU413 (01/91)
*//*AU413-199101

26      Printed:
12/06/02   16:36:49

**E-FILED**
Friday, 15 February, 2008  12:16:24 PM
Clerk, U.S. District Court, ILCD

COMMERCIAL GENERAL LIABILITY
CG 02 00 07 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you written notice stating the reason for cancellation. If we cancel:

   a. For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   b. For a reason other than nonpayment of premium, we will mail the notice at least:

      (1) 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification of the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you and your agent or broker written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003

CG 00 01 12 04 ☐

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

      (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

      (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

      (i) Any insured; or

      (ii) Any person or organization for whom you may be legally responsible; or

   (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

      (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

      (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

      (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

   (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

    However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

    "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

    This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

    "Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

    "Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

    "Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003

CG 00 01 12 04    ☐

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

© ISO Properties, Inc., 2003

CG 00 01 12 04    □

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **War**

"Personal and advertising injury", however caused, arising directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

 © ISO Properties, Inc., 2003

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

© ISO Properties, Inc., 2003

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. **"Auto"** means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **"Coverage territory"** means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. **"Employee"** includes a "leased worker". "Employee" does not include a "temporary worker".

6. **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. **"Hostile fire"** means one which becomes uncontrollable or breaks out from where it was intended to be.

8. **"Impaired property"** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003

**CG 00 01 12 04**    □

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

© ISO Properties, Inc., 2003

CG 00 01 12 04      □

Exhibit D - Page 70 of 99

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance does not apply to:

A. "Bodily injury," "property damage" or "personal and advertising injury" as defined in the policy arising out of:

   1. Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos;

   2. The use of asbestos in constructing or manufacturing any goods, product, or structure;

   3. The removal of asbestos from any goods, product or structure;

   4. The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos;

B. Any damages or any loss, cost or expense arising out of any claim or suit by or on behalf of any governmental authority requirement that any insured or any other person or entity should be, or should be responsible for:

   1. Assessing the presence, absence or amount or effects of asbestos;

   2. Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating asbestos; or

C. Responding to asbestos in any way other than as described in subparagraphs A. and B. above.

D. Any actual or alleged negligence in hiring, training, supervision, instructions, recommendations, warnings or advice given or which should have been given to employees, consumers, or others in connection with A. and B. above; or

E. Any obligation to share damages with or repay someone else who must pay damages in connection with any of the subsections above.

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## Exclusion – Lead Liability

The following exclusions are added to all coverages contained within.

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance does not apply to:

1. Actual or alleged "bodily injury," arising out of the ingestion, inhalation or absorption of lead or lead compounds in any form.

2. Actual or alleged "property damage" or "personal and advertising injury" arising out of any form of lead or lead compounds.

3. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead or lead compounds;

   b. Claim or "suit" by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead or lead compounds in any form;

   c. Any actual or alleged negligence in hiring, training, supervision, instructions, recommendations, warnings or advice given or which should have been given to employees, consumers, or others in connection with lead or lead compounds; or

   d. Any obligation to share damages with or repay someone else who must pay damages in connection with lead or lead compounds.

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.


# STATE AUTO®
Insurance Companies

## ILLINOIS CHANGES - DEFENSE COST REIMBURSEMENT

This endorsement modifies insurance provided under the following when written as part of a Commercial Package Policy containing liability coverage:

BUSINESSOWNERS LIABILITY COVERAGE FORM
COMMERCIAL AUTOMOBILE COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL UMBRELLA COVERAGE FORM
DIRECTORS, OFFICERS, AND TRUSTEES LIABILITY
EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
EMPLOYERS LIABILITY COVERAGE FORM
EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM
GARAGE COVERAGE FORM
LIMITED EMPLOYERS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
PRODUCT WITHDRAWAL COVERAGE FORM
RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
TRUCKERS COVERAGE FORM

A. The provisions of Paragraphs **B., C.** and **D.** are added to all Insuring Agreements that set forth a duty to defend under:
1. Section **I** of the Commercial General Liability; Commercial Umbrella, Directors, Officers, and Trustees Liability , Employee Benefits Liability, Employers Liability, Employment-Related Practices Liability, Liquor Liability, Owners And Contractors Protective Liability, Products/Completed Operations Liability, Product Withdrawal, and Railroad Protective Liability;
2. Section **A.** of the Businessowners Liability;
3. Section **II** of the Employment Practices Liability;
4. Section **II** - Liability Coverage in Paragraph **A. Coverage** under the Commercial Business Auto, Garage, and Truckers Coverage Forms.
B. In event a claim or "suit" seeks damages to which this insurance arguably may not apply, we will, at our option:
1. Provide the insured with counsel and enter a defense of such claim or "suit" while proceeding to investigate the factual situation;
2. Pursue these courses of action without waiving any rights and without prejudice to us or to the insured;
3. Seek a "declaratory judgment" as to what our obligations are under the circumstances;
C. Should a court determine that the insurance does not apply and that we therefore had no duty to defend such claim or "suit", we may:
1. Withdraw from the defense of any such "suit" and afford the insured no further defense or other benefits related to such claim or "suit"; and
2. Be entitled to reimbursement, from the insured, of all amounts paid by us for the defense provided in the underlying "suit" which we had no contractual duty to provide (other than by the terms of this endorsement)
3. Neither party shall have the right to seek reimbursement of any amounts or expenses paid by that party associated with the "declaratory judgment".
D. The following Definition is added:
"Declaratory judgment" means a judicial proceeding, including possible appeals there from, ultimately leading to a judgment intended to determine litigants' rights that were previously uncertain or doubtful.

SI0162 (04/06)  **Page 1 of 1**
*//*SI0162-200604

Includes copyrighted material of
Insurance Services Office, Inc. with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION
# WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

    Copyright, Insurance Services Office, Inc., 1998

```
SPP 2413242 01 20071005                          13 12 2413242 R100507
                         COMPANY COPY          OPTIPLAN-AGENT BILL
                                                          13  NAC
```

STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY                3

COMMERCIAL INLAND MARINE DECLARATIONS                            2

POLICY NUMBER:  SPP 2413242 01                                   2

NAMED INSURED AND ADDRESS:              AGENCY NAME, ADDRESS AND TELEPHONE:    2

```
   V-M LLC                              SNYDER AND SNYDER AGENCY INC
   C/O JOHN HAMILTON                    PO BOX 1546
   702 N CLINTON                        BLOOMINGTON, IL        61702
   BLOOMINGTON, IL        61701
                                        309-664-1800
```

BRANCH:  13                             AGENCY NUMBER: 0001030

```
POLICY PERIOD:    FROM:  JULY 31, 2007      TO: JULY 31, 2008    AT
           12:01 AM   STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.
```

THESE DECLARATIONS PAGES CONTINUE THIS POLICY INFORCE FOR THE PERIOD
INDICATED UPON VALID PAYMENT OF THE PREMIUM WHEN DUE

```
        COVERAGE PARTS THAT
        APPLY TO THIS POLICY                COVERAGE PART PREMIUM
        --------------------                ---------------------
BUILDERS RISK COVERAGE                      $ 3000

TERRORISM INSURANCE                         $   90
```

TOTAL INLAND MARINE POLICY PREMIUM    $ 3,090

ENDORSEMENTS THAT APPLY TO THIS INLAND MARINE POLICY INCLUDE THE INLAND
MARINE POLICY JACKET (FORM FI-102 04/96, WITH COMMON POLICY CONDITIONS AND
OTHER PROVISION) AND THE FOLLOWING ADDITIONAL COVERAGE FORMS AND
ENDORSEMENTS:

```
  CL0600 05/03
  CL0650 12/02
  CL1630 06/04
  IL0999 05/04
  IM3009 05/99
  CL0121 05/03
  IM0871 06/02
  IM7051 1.1
  IM7056 1.0
  IM7066 1.0
```

```
   ISSUE DATE 10/05/07          COUNTERSIGNED BY:  _____
                                                   AUTHORIZED REPRESENTATIVE
```

FI 101 D (04/96)

AAIS
CL 06 00 05 03
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# CERTIFIED TERRORISM LOSS

1.  The following definitions are added.

    a.  "Certified act of terrorism" means an act
        that is certified by the Secretary of the
        Treasury, in concurrence with the
        Secretary of State and the Attorney
        General of the United States:

        1)  to be an act of terrorism;
        2)  to be a violent act or an act that is
            dangerous to human life, property, or
            infrastructure;

        3)  to have resulted in damage:

            a)  within the United States; or
            b)  to an air carrier (as defined in
                section 40102 of title 49, United
                States Code); to a United States
                flag vessel (or a vessel based
                principally in the United States,
                on which United States income
                tax is paid and whose insurance
                coverage is subject to regulation
                in the United States), regardless
                of where the loss occurs; or at
                the premises of any United
                States mission; and

        4)  to have been committed by an
            individual or individuals acting on
            behalf of any foreign person or
            foreign interest, as part of an effort to
            coerce the civilian population of the
            United States or to influence the
            policy or affect the conduct of the
            United States Government by
            coercion.

        No act will be certified by the Secretary of
        the Treasury as an act of terrorism if the
        act is committed as part of the course of
        a war declared by the Congress (except
        with respect to any coverage for workers'
        compensation) or if property and casualty
        insurance losses resulting from the act
        do not exceed $5,000,000 in the
        aggregate.

    b.  "Certified terrorism loss" means loss that
        results from a "certified act of terrorism".

2.  The "terms" of any terrorism exclusion that is
    part of or that is attached to this Coverage
    Part are amended by the following provision:

    This exclusion does not apply to "certified
    terrorism loss".

3.  The following provision is added.

    If the Secretary of the Treasury determines
    that the amount of "certified terrorism loss"
    has exceeded the maximum annual liability
    as set forth by the Federal Terrorism Risk
    Insurance Act of 2002 or any amendments
    thereto, "we" will not pay for any portion of
    "certified terrorism loss" that exceeds the
    maximum annual liability.

4.  The following provisions are added.

    a.  Neither the "terms" of this endorsement
        nor the "terms" of any other terrorism
        endorsement attached to this Coverage
        Part provide coverage for any loss that
        would otherwise be excluded by this
        Coverage Part under:

        1)  exclusions that address war, military
            action, or nuclear hazard; or
        2)  any other exclusion; and

    b.  the absence of any other terrorism
        endorsement does not imply coverage for
        any loss that would otherwise be
        excluded by this Coverage Part under:

        1)  exclusions that address war, military
            action, or nuclear hazard; or
        2)  any other exclusion.

CL 06 00 05 03

Copyright, American Association of Insurance Services, Inc., 2003

**STATE AUTO**
Insurance Companies

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BIOLOGICAL AND CHEMICAL NON-CERTIFIED ACT OF TERRORISM EXCLUSION AND WAR AND MILITARY ACTION EXCLUSION

1. The following definitions are added.
   a. "Non-certified act of terrorism" means a violent act or an act that is dangerous to human life, property, or infrastructure that:
      1) is committed by an individual or individuals; and
      2) appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion; and
      3) is not certified as a terrorist act pursuant to the Federal Terrorism Risk Insurance Act of 2002 or any amendments thereto.
   b. "Non-certified terrorism loss" means any loss that results from a "non-certified act of terrorism".
2. Under Perils Excluded (or under Exclusions in form GS-200), the War Exclusion, wherever it appears, is deleted and replaced by the following:
   **WAR AND MILITARY ACTION EXCLUSION**
   "We" will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
   a. War, including undeclared or civil war; or
   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or
   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
   With respect to any action that comes within the "terms" of this exclusion and involves nuclear reaction or radiation or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.
3. The following Non-certified Act of Terrorism Exclusion is added. The Non-certified Act of Terrorism Exclusion applies only to an incident of "non-certified terrorism loss":

   a. that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
   b. in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

   However, the Non-certified Act of Terrorism Exclusion does not apply to any loss that results from an act that is not certified by the Secretary of the Treasury to be an act of terrorism solely because the property and casualty insurance losses resulting from that act do not exceed $5,000,000 in the aggregate.

   **NON-CERTIFIED ACT OF TERRORISM EXCLUSION**
   "We" will not pay for loss or damage caused directly or indirectly by a "non-certified act of terrorism", including action in hindering or defending against an actual or expected "non-certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
4. The following provisions are added.
   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to this Coverage Part provide coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion; and
   b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by this Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

**CL 06 50 12 02  Page 1 of 1**
*//*CL 06 50 12 02

Copyright, American Association of Insurance Services, Inc., 2002

9   Printed:
08/20/07  09:57:58

**STATE AUTO®**
Insurance Companies

This endorsement changes
the policy
**- PLEASE READ THIS CAREFULLY -**

## CONDITIONAL TERRORISM EXCLUSION

## NOTICE

The **Terrorism Risk Insurance Program (the Program)**, which was established by the federal law known as the **Terrorism Risk Insurance Act of 2002**, is scheduled to terminate on December 31, 2005.

The **Terrorism Exclusion** found in this endorsement will apply only if the federal government does not renew, extend, or otherwise continue the **Program** or if the conditions, definitions, or requirements of the **Program** are changed by the federal government and federal law no longer requires that we make **Terrorism Coverage** available to you.

1. The Terrorism Exclusion set forth by this endorsement becomes effective on the earliest of the following:
   a. the date that the federal Terrorism Risk Insurance Program (the Program) established by the Terrorism Risk Insurance Act of 2002 has terminated with respect to the type of insurance provided by the Coverage Part to which this endorsement applies; or
   b. the effective date of a renewal, extension, or continuation of the Program, if federal law no longer requires that "we" make terrorism coverage available to "you" and the Program has been renewed, extended, or continued subject to changes that:
      1) redefine terrorism; or
      2) increase "our" financial exposure under the Program; or
      3) impose requirements on insurance coverage for terrorism that differ from the terms, amounts, or other limitations that otherwise govern coverage for loss or damage under the "terms" of the Coverage Part to which this endorsement applies.

2. If the Terrorism Exclusion set forth by this endorsement becomes effective, this Terrorism Exclusion:
   a. supersedes any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the Coverage Part to which this endorsement applies, but only with respect to loss or damage caused by one or more incidents of terrorism that occur on or after the effective date of this Terrorism Exclusion; and

   b. remains in effect unless "we" notify "you" of changes to this Terrorism Exclusion.

3. If none of the conditions described above under items **1.a.** and **1.b.** occur, any other endorsements that address "certified acts of terrorism", "certified terrorism loss", "non-certified acts of terrorism", and or "non-certified terrorism loss" that also apply to the Coverage Part to which this endorsement applies continue to apply until "we" notify "you" of changes to such other endorsements.

4. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:
   "Terrorism" means activities against persons, organizations, or property of any nature:
   a. that involve the following or preparation for the following:
      1) use or threat of force or violence; or
      2) commission or threat of a dangerous act; or
      3) commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and
   b. when one or both of the following applies:
      1) the effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or
      2) it appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social, or economic objectives, or to express (or express opposition to) a philosophy or ideology.

**CL 16 30 06 04 Page 1 of 2**
*//*CL 16 30 06 04

Copyright, American Association of Insurance Services Inc. 2003

13    Printed:
08/20/07    09:57:58

**STATE AUTO**
Insurance Companies

5. The following exclusion is added:
   **TERRORISM EXCLUSION**
   We" will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

   This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":
   a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or
   b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or
   c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or
   d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or
   e. the total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico, and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, "we" will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage

that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.
   Item **5.e.** above describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Terrorism Exclusion will apply to that incident. When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Coverage Part to which this endorsement applies.

6. When the Terrorism Exclusion set forth by this endorsement applies due to an incident of "terrorism" described above under items **5.a.** or **5.b.,** that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the Coverage Part to which this endorsement applies.

7. The following provisions are added.
   a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the Coverage Part to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that Coverage Part under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.
   b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the Coverage Part to which this endorsement applies under:
      1) exclusions that address war, military action, or nuclear hazard; or
      2) any other exclusion.

**CL 16 30 06 04 Page 2 of 2**
*//*CL 16 30 06 04

Copyright, American Association of Insurance Services Inc. 2003

14
08/20/07  09:57:58
Printed:

POLICY NUMBER:

IL 09 99 05 04

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002)

**SCHEDULE**

| |
|---|
| Terrorism Premium (Certified Acts) |
| (A) Premium through 12/31/05     $ |
| (B) Estimated Premium beyond 12/31/05 (refer to Paragraph C. below)    $ |
| |
| Additional information, if any, concerning the terrorism premium: |
| |
| |
| |
| |
| |
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

**C. Possibility Of Additional Or Return Premium**

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act of 2002. The federal program established by the Act is scheduled to terminate at the end of 12/31/05 unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

© ISO Properties, Inc., 2004    **IL 09 99 05 04**    □

AAIS
IM 30 09 Ed 05 99
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## ILLINOIS

1. Under Perils Excluded, if applicable, the following addition amends Criminal, Fraudulent, or Dishonest Acts:

   However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

   a. arose out of a pattern of criminal domestic violence; and

   b. the perpetrator of the loss is criminally prosecuted for the act causing the loss;

   this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   "Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

2. Under Other Conditions, the Appraisal condition is amended by the following addition:

   If "you" request an appraisal and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

3. Under Other Conditions, the Misrepresentation, Concealment, or Fraud condition is deleted and replaced by:

   **Misrepresentation, Concealment, or Fraud** -- "We" do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or
      2) an insured's interest herein.

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

4. Under Other Conditions, the Suit Against Us condition is amended by the following addition:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

**IM 30 09 Ed 05 99**
Copyright, American Association of Insurance Services, 1999

AAIS
CL 01 21 05 03
Page 1 of 2

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## ILLINOIS

1.  Under Common Policy Conditions, Cancellation is deleted and replaced by the following:

    **Cancellation --**

    a.  "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

    b.  "We" may cancel this policy by mailing "our" written notice of cancellation to "you" and any mortgagee or lienholder at the last mailing address known to "us". "Our" notice will include the reason or reasons for cancellation. "We" will also mail a copy of the notice to "your" broker, if known, or to the agent of record. Proof of mailing is sufficient proof of notice.

    c.  During the first 60 days this policy is in effect, "we" may cancel this policy for any reason. If "we" cancel for any reason other than those listed in d. or e. below, "we" will mail the notice of cancellation 30 days before the effective date of cancellation.

    d.  For policies not issued to cover one- to four-family dwellings, "we" may cancel this policy at any time during the policy period, if the insured property consists of one or more buildings:

        1)  to which, following a fire loss, permanent repairs have not commenced within 60 days after satisfactory adjustment of loss, unless such delay is a direct result of a labor dispute or weather conditions;

        2)  that have been unoccupied for 60 consecutive days, except buildings which have a seasonal occupancy and buildings which are undergoing construction, repair, or reconstruction and are properly secured against unauthorized entry;

        3)  for which, because of their physical condition, there is an outstanding demolition order, or which have been declared unsafe in accordance with applicable law; or

        4)  to which heat, water, sewer service, or public lighting have not been connected for 30 consecutive days or more.

        If "we" cancel this policy for reasons listed under d.1) through d.4) above, cancellation will be effective ten days after "you" and any mortgagee or lienholder have received "our" notice. The notice of cancellation will be sent by regular mail and certified mail, and "your" return premium, if any, will be calculated on a pro rata basis.

    e.  "We" may cancel this policy at any time during the policy period if the premium has not been paid when due. If "we" cancel this policy for non-payment of premium, "we" will mail the cancellation notice at least ten days before the effective date of cancellation.

    f.  If this policy has been in effect more than 60 days, or if it is a renewal of a policy issued by "us", "we" may cancel this policy according to the "terms" set forth under item d. or item e. above, or "we" may cancel if one or more of the following reasons apply:

        1)  If this policy covers one- to four-family dwellings used for residential purposes or any personal property incidental to residential occupancies, "we" may cancel this coverage when:

            a)  the policy was obtained by misrepresentation or fraud; or

            b)  there has been an act that measurably increases the risk originally accepted.

Copyright, American Association of Insurance Services, Inc., 2003

AAIS
IM 08 71 06 02
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## ILLINOIS

1. Under Definitions, item b. of Pollutants is deleted.

2. Under Perils Excluded, Criminal, Fraudulent, or Dishonest Acts is amended to include the following:

   However, if the loss is caused by an act of domestic violence committed by or at the direction of an insured that:

   a. arose out of a pattern of criminal domestic violence; and

   b. the perpetrator of the loss is criminally prosecuted for the act causing the loss;

   this exclusion will not apply to an otherwise covered loss suffered by another insured who did not cooperate in or contribute to the act that caused the loss.

   "Our" payment may be limited to the claimant's insurable interest less payments made to a mortgagee or other party with a legal secured interest in the property. "We" retain all rights set forth in the Subrogation condition of this policy with regard to action against the perpetrator of the act that caused the loss.

3. Appraisal is amended to include the following:

   If "you" request an appraisal and the full amount of the appraised loss is upheld by agreement of the appraisers or umpire, "we" will pay the fees incurred for the services of the appraisers or umpire.

4. Misrepresentation, Concealment, or Fraud is deleted and replaced by the following:

   **Misrepresentation, Concealment, or Fraud** -- "We" do not provide coverage for an insured who has:

   a. willfully concealed or misrepresented:

      1) a material fact or circumstance with respect to this insurance; or
      2) an insured's interest herein; or

   b. engaged in fraudulent conduct or sworn falsely with respect to this insurance or the subject thereof.

5. Suit Against Us is amended to include the following:

   However, this period is extended by the number of days between the date proof of loss is submitted and the claim is denied in whole or in part.

**IM 08 71 06 02**

Copyright, American Association of Insurance Services, Inc., 2002

**AAIS**
**IM-7051  Ed 1.1**
**Page 1 of 10**

# BUILDERS' RISK COVERAGE

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Builders' Risk Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, and examination of books and records.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks or bold type.

## DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

4. "Earth movement" means any movement or vibration of the earth's surface (other than "sinkhole collapse") including but not limited to earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting, of earth.

5. "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

6. "Ground water" means:

   a. water that backs up through a sewer or drain; or

   b. water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or leaks through or into a building, sidewalk, driveway, foundation, swimming pool, or other structure.

7. "Limit" means the amount of coverage that applies.

8. "Pollutant" means:

   a. any solid, liquid, gaseous, or thermal irritant or contaminant;

   b. electromagnetic (visible or invisible) or sound emission; or

   c. waste, including materials to be disposed of as well as recycled, reclaimed, or reconditioned.

9. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

10. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

Falling objects does not include loss to personal property in the open or to the interior of buildings or structures or to personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object.

Water damage means the sudden or accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

11. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

12. "Volcanic action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow. It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the covered property.

## PROPERTY COVERED

1. **Buildings and Structures** -- "We" cover direct physical loss caused by a covered peril to buildings and structures described on the "declarations" while in the course of construction, erection, or fabrication. This includes materials and supplies which will become a permanent part of the buildings or structures, foundations, excavations, grading, filling, attachments, and permanent fixtures.

2. **Scaffolding, Transit, and Storage Locations** -- When a "limit" is indicated on the "declarations" "we" cover direct physical loss caused by a covered peril to:

   a. scaffolding or construction forms provided the scaffolding or construction forms are located at a building or structure described on the "declarations";

   b. materials and supplies which will become a permanent part of buildings or structures described on the "declarations" while they are;

      1) in transit; or
      2) at an unscheduled storage location.

## PROPERTY NOT COVERED

1. **Aircraft or Watercraft** -- "We" do not cover aircraft or watercraft.

2. **Automobiles** -- "We" do not cover automobiles or any self-propelled vehicles that are designed for highway use.

3. **Contraband** -- "We" do not cover contraband or property in the course of illegal transportation or trade.

4. **Existing Buildings or Structures** -- "We" do not cover existing buildings or structures to which additions, alterations, improvements, or repairs are being made.

5. **Land** -- "We" do not cover land including land on which covered property is located.

6. **Money and Securities** -- "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, or securities.

7. **Trees, Shrubs and Plants** -- "We" do not cover trees, shrubs, plants, and lawns.

8. **Waterborne Property** -- "We" do not cover property while waterborne except while in transit in the custody of a carrier for hire.

## ADDITIONAL COVERAGES

1. **Debris Removal** -- "We" pay the cost to remove the debris of covered property that

is caused by a covered peril. This coverage does not include costs to:

a.   extract "pollutants" from land or water; or

b.   remove, restore, or replace polluted land or water.

"We" will not pay any more under this coverage than 25% of the amount "we" pay for the direct loss. "We" will not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25% of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

"We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to covered property.

2.  **Emergency Removal** – "We" pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered peril. "We" pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to ten days after the property is first moved, but does not extend past the date on which this policy expires.

3.  **Fire Department Service Charges** – "We" pay up to $1,000 to cover "your" liability, assumed by contract or agreement prior to the loss, for fire department service charges.

This coverage is limited to charges incurred when the fire department is called to save or protect covered property from a covered peril.

No deductible applies.

This is an additional "limit".

4.  **Pollutant Cleanup and Removal** – "We" pay "your" expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a covered peril that occurs during the policy period. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the covered peril occurs.

"We" do not pay the cost of testing, evaluating, observing, or recording the existence, level, or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

The most "we" pay for each site or location is $10,000 for the sum of all such expenses arising out of a covered peril occurring during each separate 12 month period of this policy.

This is an additional "limit".

## PERILS COVERED

"We" cover external risks of direct physical loss unless the loss is limited or caused by a peril that is excluded.

## PERILS EXCLUDED

1.  "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

E-FILED
Friday, 15 February, 2008  12:16:32 PM
Clerk, U.S. District Court, ILCD

AAIS
IM-7051 Ed 1.1
Page 4 of 10

a. **Civil Authority** -- "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Earth Movement or Volcanic Eruption** -- "We" do not pay for loss caused by any "earth movement" (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano.

"We" do pay for direct loss by fire, explosion, or "volcanic action" resulting from either "earth movement" or eruption, explosion, or effusion of a volcano.

All volcanic eruptions that occur within a 168 hour period shall be considered a single loss.

This exclusion does not apply to covered property while in transit.

This exclusion does not apply when a "limit" is indicated for "earth movement" or volcanic eruption on the "declarations".

c. **Flood** -- "We" do not pay for loss caused by "flood", but if fire, explosion, or theft results "we" do cover the loss caused by the fire, explosion, or theft.

This exclusion does not apply to covered property while in transit.

This exclusion does not apply when a "limit" is indicated for "flood" on the "declarations".

d. **Ground Water** -- "We" do not pay for loss caused by "ground water" but if fire, explosion, or theft results "we" do cover the loss caused by the fire, explosion, or theft.

This exclusion does not apply to covered property while in transit.

This exclusion does not apply when a "limit" is indicated for "ground water" on the "declarations".

e. **Nuclear Hazard** -- "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. "We" do pay for direct loss by fire resulting from the nuclear hazard.

f. **Ordinance or Law** -- "We" do not pay for loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing its debris.

g. **Penalties** -- "We" do not pay for loss caused by penalties for noncompletion or non-compliance with any contract terms or conditions.

h. **War** -- "We" do not pay for loss caused by war. This means:

1) declared war, undeclared war, civil war, insurrection, rebellion, or revolution;
2) a warlike act by a military force or by military personnel;
3) the destruction, seizure, or use of the property for a military purpose; or
4) the discharge of a nuclear weapon even if it is accidental.

AAIS
IM-7051  Ed 1.1
Page 5 of 10

2.  "We" do not pay for loss or damage if one
or more of the following exclusions apply to
the loss.

    a.  **Contamination or Deterioration** -- "We"
        do not pay for loss caused by
        contamination or deterioration
        including corrosion, decay, fungus,
        mildew, mold, rot, rust, or any quality,
        fault, or weakness in the covered
        property that causes it to damage or
        destroy itself.

    b.  **Criminal, Fraudulent, or Dishonest
        Acts** -- "We" do not pay for loss caused
        by or resulting from criminal,
        fraudulent, dishonest, or illegal acts
        alone or in collusion with another by:

        1)  "you";
        2)  others who have an interest in the
            property;
        3)  others to whom "you" entrust the
            property;
        4)  "your" partners, officers, directors,
            trustees, or joint adventurers; or
        5)  the employees or agents of 1), 2),
            3), or 4) above, whether or not they
            are at work.

        This exclusion does not apply to acts
        of destruction by "your" employees, but
        "we" do not pay for theft by employees.

        This exclusion does not apply to
        covered property in the custody of a
        carrier for hire.

    c.  **Explosion, Rupture, or Bursting** --
        "We" do not pay for loss caused by
        explosion, rupture, or bursting of steam
        boilers, steam or gas turbines, steam
        pipes, or steam engines. This exclusion
        applies only to loss or damage to the
        steam boilers, steam or gas turbines,
        steam pipes, or steam engines in
        which the loss occurred.

    d.  **Freezing** -- "We" do not pay for loss
        caused by water; other liquids;
        powder; or molten material that leaks
        or flows from plumbing, heating, air-
        conditioning systems, or appliances
        other than fire protective systems
        caused by freezing. This does not
        apply if "you" use reasonable care to
        maintain heat in the building or
        structure; or "you" drain the equipment
        and turn off the supply if the heat is
        not maintained.

    e.  **Loss of Use** -- "We" do not pay for loss
        caused by or resulting from loss of
        use, business interruption, delay, or
        loss of market.

    f.  **Materials and Workmanship** -- "We"
        do not pay for loss caused by faulty,
        inadequate, or defective materials or
        workmanship. But if loss by a covered
        peril results "we" pay for the resulting
        loss.

    g.  **Missing Property** -- "We" do not pay
        for missing property where the only
        proof of loss is unexplained or
        mysterious disappearance of covered
        property, or shortage of property
        discovered on taking inventory, or any
        other instance where there is no
        physical evidence to show what
        happened to the covered property.
        This exclusion does not apply to
        covered property in the custody of a
        carrier for hire.

    h.  **Pollutants** -- "We" do not pay for loss
        caused by or resulting from release,
        discharge, seepage, migration,
        dispersal, or escape of "pollutants"
        unless the release, discharge,
        seepage, migration, dispersal, or
        escape is caused by a "specified peril".
        "We" do pay for any resulting loss
        caused by a "specified peril".

AAIS
IM-7051 Ed 1.1
Page 6 of 10

i. **Rain, Snow, Ice, or Sleet** -- "We" do not pay for loss caused by or resulting from rain, snow, ice, or sleet to property in the open which is not part of the permanent building or structure. This exclusion does not apply to property in the custody of carriers for hire.

j. **Settling, Cracking, Shrinking, Bulging, or Expanding** -- "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, foundations, walls, ceilings, glass, or roofs. But if loss by a covered peril results "we" pay for the resulting loss.

k. **Temperature/Humidity** -- "We" do not pay for loss caused by humidity, dampness, dryness, or changes in or extremes of temperature.

l. **Voluntary Parting** -- "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense.

m. **Wear and Tear** -- "We" do not pay for loss caused by wear and tear, marring, or scratching.

3. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by fire or explosion results "we" will pay for the resulting loss.

a. **Defects, Errors, and Omissions** -- "We" do not pay for loss which results from an act, defect, error, or omission (negligent or not) relating to:

1) design or specifications;
2) planning, zoning, development, siting, surveying, grading, or compaction.

b. **Electrical Currents** -- "We" do not pay for loss caused by arcing or by electrical currents other than lightning.

c. **Mechanical Breakdown** -- "We" do not pay for loss caused by mechanical breakdown including centrifugal force.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice** -- In case of a loss, "you" must:

a. give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

b. give notice to the police when the act that causes the loss is a crime.

2. **Protect Property** -- "You" must take all reasonable steps to protect covered property at and after an insured loss to avoid further loss. "We" will pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if a peril insured against has already caused a loss to covered property. "You" must keep an accurate record of such costs. However "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

3. **Proof of Loss** -- "You" must send "us", within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

a. the time, place, and circumstances of the loss;

b. other policies of insurance that may cover the loss;

c.   "your" interest and the interests of all
     others in the property involved,
     including all mortgages and liens;

d.   changes in title of the covered property
     during the policy period; and

e.   estimates, specifications, inventories,
     and other reasonable information that
     "we" may require to settle the loss.

4.  **Examination** -- "You" must submit to
    examination under oath in matters
    connected with the loss as often as "we"
    reasonably request and give "us" sworn
    statements of the answers. If more than
    one person is examined, "we" have the
    right to examine and receive statements
    separately and not in the presence of
    others.

5.  **Records** -- "You" must produce records,
    including tax returns and bank microfilms of
    all cancelled checks relating to value, loss,
    and expense and permit copies and
    extracts to be made of them as often as
    "we" reasonably request.

6.  **Damaged Property** -- "You" must exhibit
    the damaged and undamaged property as
    often as "we" reasonably request and allow
    "us" to inspect or take samples of the
    property.

7.  **Volunteer Payments** -- "You" must not,
    except at "your" own expense, voluntarily
    make any payments, assume any
    obligations, pay or offer any rewards, or
    incur any other expenses except as
    respects protecting property from further
    damage.

8.  **Abandonment** -- "You" may not abandon
    the property to "us" without "our" written
    consent.

9.  **Cooperation** -- "You" must cooperate with
    "us" in performing all acts required by this
    policy.

## VALUATION

1.  **Replacement Cost** -- The value of covered
    property will be based on the replacement
    cost without any deduction for
    depreciation.

    The replacement cost is limited to the cost
    of repair or replacement with similar
    materials on the same site and used for the
    same purpose. The payment shall not
    exceed the amount "you" spend to repair or
    replace the damaged or destroyed
    property.

    This replacement cost provision does not
    apply to paragraphs 2. and 3. under
    Valuation.

2.  **Pair or Set** -- The value of a lost or
    damaged article which is part of a pair or
    set is based on a reasonable proportion of
    the value of the entire pair or set. The loss
    is not considered a total loss of the pair or
    set.

3.  **Loss to Parts** -- The value of a lost or
    damaged part of an item that consists of
    several parts when it is complete is based
    on the value of only the lost or damaged
    part or the cost to repair or replace it.

## HOW MUCH WE PAY

1.  **Insurable Interest** -- "We" do not cover
    more than "your" insurable interest in any
    property.

2.  **Deductible** -- "We" pay only that part of
    "your" loss over the deductible amount
    indicated on the "declarations" in any one
    occurrence.

AAIS
IM-7051  Ed 1.1
Page 8 of 10

3.  **Loss Settlement Terms** -- Subject to paragraphs 1., 2., 4., 5., and 6. under How Much We Pay, "we" pay the lesser of:

    a.  the amount determined under Valuation;

    b.  the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

    c.  the "limit" that applies to the covered property.

4.  **Coinsurance** -- "We" only pay a part of the loss if the "limit" is less than 100% of the value of the covered property at the time of the loss. "Our" part of the loss is determined using the following steps:

    a.  calculate 100% of the value of the covered property at the time of the loss;

    b.  divide the "limit" for covered property by the result determined in 4.a. above;

    c.  multiply the total amount of loss, after the application of any deductible, by the result determined in 4.b. above.

    The most "we" pay is the amount determined in 4.c. above or the "limit", whichever is less. "We" do not pay any remaining part of the loss.

    If there is more than one "limit" indicated on the "declarations" for this coverage part, this procedure applies separately to each "limit".

    If there is only one "limit" indicated on the "declarations" for this coverage, this procedure applies to the total of all covered property to which the "limit" applies.

5.  **Insurance Under More Than One Coverage** -- If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

6.  **Insurance Under More Than One Policy** -- "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" will pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

    If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

## LOSS PAYMENT

1.  **Our Options** -- "We" have the following options:

    a.  pay the value of the loss;

    b.  pay the cost of repairing or replacing the loss;

    c.  rebuild, repair, or replace with property of like kind and quality, to the extent practicable, within a reasonable time;

    d.  take all or any part of the damaged property at the agreed or appraised value.

    "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

2.  **Your Losses** -- "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy. An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

AAIS
IM-7051 Ed 1.1
Page 9 of 10

3. **Property of Others** -- Losses to property of others may be adjusted with and paid to:

   a. "you" on behalf of the owner; or

   b. the owner.

   If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

## OTHER CONDITIONS

1. **Appraisal** -- If "you" and "we" do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of covered property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

2. **Benefit to Others** -- Insurance under this coverage shall not directly or indirectly benefit anyone having custody of "your" property.

3. **Conformity With Statute** -- When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

4. **Estates** -- This provision applies only if the insured is an individual.

   On "your" death, "we" cover the following as an insured:

   a. the person who has custody of "your" property until a legal representative is qualified and appointed; or

   b. "your" legal representative.

   This person or organization is an insured only with respect to property covered by this coverage.

   This coverage does not extend past the policy period indicated on the "declarations".

5. **Misrepresentation, Concealment or Fraud** -- This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "you" or any other insured have willfully concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) "your" interest herein.

   b. there has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

6. **Policy Period** -- "We" pay for a covered loss that occurs during the policy period.

7. **Recoveries** -- If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. "you" must notify "us" promptly if "you" recover property or receive payment;

   b. "we" must notify "you" promptly if "we" recover property or receive payment;

   c. any recovery expenses incurred by either are reimbursed first;

   d. "you" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

   e. if the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy, any recovery will be pro rated between "you" and "us" based on "our" respective interest in the loss.

8. **Restoration of Limits** -- A loss "we" pay under this coverage does not reduce the applicable "limits".

9. **Subrogation** -- If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

   "You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** -- No one may bring a legal action against "us" under this coverage unless:

    a. all of the "terms" of this coverage have been complied with; and

    b. the suit has been brought within two years after "you" first have knowledge of the loss.

    If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** -- "We" cover property while it is in the United States of America, its territories and possessions, Canada, and Puerto Rico.

12. **Carriers For Hire** -- "You" may accept bills of lading or shipping receipts issued by carriers for hire that limit their liability to less than the replacement cost or actual cash value of the covered property.

13. **Occupancy and Use** -- This coverage is void if, without "our" prior written consent:

    a. the building or structure described on the "declarations" is occupied in whole or in part; or

    b. the building or structure described on the "declarations" is put to its intended use.

14. **When Coverage Ceases** -- Coverage ends when one of the following first occurs:

    a. this policy expires or is cancelled;

    b. the building or structure described on the "declarations" is accepted by the purchaser;

    c. "your" interest in the covered property ceases;

    d. "you" abandon construction with no intent to complete it; or

    e. the building or structure described on the "declarations" has been completed for more than 90 days.

IM-7051  Ed 1.1
Copyright MCMXCIV
American Association of Insurance Services

```
SPP 2413242 01 20070926                          13 12 2413242 R092607
                                        OPTIPLAN-AGENT BILL
AAIS                                                          13  NAC
IM-7056 ED 1.0
PAGE 1 OF 1
-------------------------------------------------------------------
          B U I L D E R  S '  R I S K   D E C L A R A T I O N S

          (THE INFORMATION REQUIRED BELOW MAY BE SHOWN ON
        A SEPARATE SCHEDULE OR SUPPLEMENTAL "DECLARATIONS".)


-------------------------------------------------------------------
SCHEDULED LOCATIONS
-------------------------------------------------------------------

    LOCATION
      NO.                                              LIMIT

    1              SAVANNAH GREEN SUBDIVISION        $ 1000000

                                                     $

                                                     $



    SCAFFOLDING AND CONSTRUCTION FORMS               $

    COVERED PROPERTY IN TRANSIT                       $ 130000

    COVERED PROPERTY AT UNSCHEDULED STORAGE LOCATIONS $

    ANY ONE LOSS CAUSED BY "EARTH MOVEMENT" AND
    VOLCANIC ERUPTION                                 $

    ANY ONE LOSS CAUSED BY "FLOOD" AND "GROUND WATER" $
-------------------------------------------------------------------
    DEDUCTIBLE
-------------------------------------------------------------------


                                                  DEDUCTIBLE
                                                    AMOUNT

    FOR ALL COVERED PERILS UNLESS A DIFFERENT
    DEDUCTIBLE IS INDICATED BELOW                   $ 1000

    THEFT                                           $

    "EARTH MOVEMENT" AND VOLCANIC ERUPTION          $

    "FLOOD" AND "GROUND WATER"                      $




IM-7056 ED 1.0
```

```
SPP 2413242 01 20070926                           13 12 2413242 R092607
                                          OPTIPLAN-AGENT BILL
                                                                    13   NAC
AAIS
IM-7066 ED 1.0
PAGE 1 OF 1
-----------------------------------------------------------------------

          R E P O R T I N G   C O N D I T I O N S   S C H E D U L E

       (THE INFORMATION REQUIRED BELOW MAY BE SHOWN ON THE "DECLARATIONS.")


   ----------------------------        CHECK IF APPLICABLE:
    REPORTING CONDITIONS
   ----------------------------        |   | CONTINGENT COVERAGE
                                       |   |   LIMIT FOR ANY ONE LOSS  $
ADJUSTMENT PERIOD    REPORTING PERIOD
   (CHECK ONE)          (CHECK ONE)    |   | DIFFERENCE IN CONDITIONS:
                                       |   |   LIMIT FOR ANY ONE LOSS  $
   |   | MONTHLY      | X | MONTHLY
   |   | QUARTERLY    |   | QUARTERLY   RATES AND PREMIUM--
   |   | ANNUAL       |   | ANNUAL


   RATES AND PREMIUM --                CONTINGENT COVERAGE RATE    $
                                       DIFFERENCE IN CONDITIONS    $
    RATES (PER $100)                   ALL OTHER COVERED PROPERTY
                                       RATE                        $
    .30/12=.025            $           DEPOSIT PREMIUM             $
                          $            MINIMUM PREMIUM             $
                          $
DEPOSIT PREMIUM           $ 3000
MINIMUM PREMIUM           $ 1000


   ------------------------------
   CONTRACTORS' REPORTING
   CONDITIONS
   ------------------------------


ADJUSTMENT PERIOD--  REPORTING PERIOD
   (CHECK ONE)          (CHECK ONE)

   |   | MONTHLY      |   | MONTHLY
   |   | QUARTERLY    |   | QUARTERLY
   |   | ANNUAL       |   | ANNUAL


    IM-7066 ED 1.0
```

E-FILED
Friday, 15 February, 2008 12:16:50 PM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY, ILLINOIS

MICHAEL SUHADOLNIK,               )
                                  )
        Plaintiff,                )
                                  )    2007L 0347
        v.                        )    Case No.
                                  )
ALAN LAROCHELLE, an individual,   )
VICTOR ARMSTRONG, and individual, )
V-M L.L.C., an Illinois limited liability )
company, A-M L.L.C., an Illinois limited )
liability company, CIB MARINE     )
BANCSHARES, INC., a Wisconsin     )
Corporation, CENTRAL ILLINOIS BANK, an )
Illinois commercial bank, MARGARET A. )
INCANDELA, an individual, and JOSE )
ARUAJO, an individual, and DEAN   )
KATSAROS, an individual,          )
                                  )
        Defendants.               )

FILED
DEC 26 2007   CIV-3
Clerk of the
Circuit Court

## COMPLAINT AT LAW

Plaintiff, Michael Suhadolnik, by and through his attorneys, Murphy & Hourihane,

L.L.C., for his Complaint at Law against Alan LaRochelle, Victor Armstrong, A-M L.L.C., V-

M L.L.C., CIB Marine Bancshares, Inc., Central Illinois Bank, Margaret A. Incandela, Jose

Aruajo, and Dean Katsaros states as follows:

## INTRODUCTION

1.      The causes of action alleged in this Complaint arise from defendants' intentional

and malicious misuse of positions of trust and authority for their own benefit or the benefit of

those with whom they were acting in concert. As a result of defendants' collusion, Plaintiff and

companies owned or controlled by Plaintiff were manipulated into bankruptcy, over 600

employees lost their jobs, Plaintiff was dispossessed of property, income and the benefits of

ownership in successful real estate developments, and lost the profits he would have realized

from future projects and opportunities that were destroyed as a direct result of defendants' actions.

**PARTIES**

2.    Plaintiff, Michael F. Suhadolnik ("Mike"), is an individual residing in Sangamon County, Illinois. Michael was the sole shareholder of Construx Construction of Illinois, Inc., ("Construx"), St. Agnes Company, Inc., ("St. Agnes"), Superior Walls of Central Illinois, Inc., ("Superior Walls"), and was a 50% owner of A-M L.L.C. and V-M L.L.C. Mike has been involved in construction and real estate development in central Illinois since 1971.

3.    Defendant, Alan LaRochelle ("LaRochelle"), is an individual residing in Bloomington, Illinois. LaRochelle's business interests include real estate development and he has owned construction supply companies. LaRochelle was a member of the Board of Directors of Central Illinois Bank ("CIB") and was a member of the Executive Loan Committee of CIB. LaRochelle was a 25% owner of A-M.

4.    Defendant, Victor Armstrong ("Armstrong"), is an individual residing in Bloomington, Illinois. Armstrong is an Illinois licensed real estate broker and real estate developer in central Illinois. Armstrong owns Armstrong Construction, a construction company engaging in residential construction and development. Armstrong was a 25 % owner of A-M, and a 50% owner of V-M.

5.    Defendant, V-M L.L.C. ("VM") is an Illinois limited liability company with its principal office in Bloomington, Illinois. VM is controlled by Armstrong. VM was created to pursue a development of affordable homes in Urbana, Illinois.

6.    Defendant, A-M L.L.C. ("AM") is an Illinois limited liability company with its principal office in Bloomington, Illinois. AM is controlled by LaRochelle and Armstrong. AM was created to pursue a development of affordable homes in Normal, Illinois.

7.    Defendant, Central Illinois Bank ("CIB") is an Illinois commercial bank located in Champaign, Illinois and doing business in, among others, the Springfield, Peoria, Champaign-Urbana, and Bloomington-Normal market areas of central Illinois, and organized and existing under and by virtue of the laws of the State of Illinois. CIB began a banking and depository relationship with Michael in 1998. CIB served as the exclusive lender and depository for Michael, Construx, St. Agnes and Superior Walls. CIB is owned by CIB Marine.

8.    Defendant, CIB Marine Bancshares, Inc., ("CIB Marine") is a Wisconsin corporation authorized to transact business in Illinois. CIB Marine is a public corporation whose shares are traded in the over the counter market, and whose securities are registered with the United States Securities and Exchange Commission. CIB Marine owns, among others, Citrus Bank in the southeast Florida market, which on information and belief was either owned or controlled by Jose Aruajo, a director of CIB Marine.

9.    Defendant Jose Aruajo is a resident of Florida and at all relevant times was an owner and director of CIB Marine.

10.    Defendant Margaret A. Incandela is a former Executive Vice President and Chief Credit Officer for CIB Marine. On information and belief, Incandela is a resident of California.

11.    Defendant Dean Katsaros is a resident of Illinois and at all relevant times an owner and director of CIB Marine.

## VENUE AND JURISDICTION

12.    Jurisdiction and venue in this Court are proper in that many of the transactions that give rise to the claims in this Complaint took place in and agreements that form in part the

basis for this Complaint were entered into in Sangamon County, Illinois, and Defendants transact or transacted business in Sangamon County, Illinois.

## BACKGROUND

13.    Mike is a former educator, who, beginning in the 1970s built a reputation as a builder of both residential and commercial structures.  With his companies, Construx and St. Agnes, Mike built the homes that thousands of central Illinois residents call home today.  What is more, driving in and around Springfield, one cannot help but pass dozens of buildings that businesses occupy today, that were built by Mike and his companies.

14.    In the process of working for nearly 30 years to build a well earned reputation as a home builder, Mike developed a special talent for building low cost, high quality homes.  As a "production home builder," Mike would forgo the high profit margins associated with more expensive homes, and by building a large number of homes, on much smaller margins, satisfy a need for affordable single family housing.

## SAVANNAH GREEN NORMAL

15.    In the late 1990s, Mike became aware of two development opportunities to build a large number (600-700) of affordable homes.  The first was in Normal, Illinois.  The development, Savannah Green Normal, was the product of a partnership between Mike, LaRochelle and Armstrong.

16.    In order to pursue the Normal development Mike, LaRochelle and Armstrong formed AM ("A" and "M"ike).  They were 50-50 owners of AM.  AM purchased the land.  AM then entered into a development contract with St. Agnes to Act as Manager to build homes in Normal.

17.    St. Agnes in turn entered into a contract with Construx as the general contractor to build those Normal homes.  Construx then hired dozens of subcontractors, including but not

limited to Superiors Walls of Central Illinois to build pre-fabricated foundations, Crazy Horse Concrete to provide concrete.

18.    In order to finance the construction, CIB provided loans to AM, St. Agnes, and Construx. Those loans were advanced based upon several criteria. Specifically, the value of the land and the value of the work in process construction ("WIP"). When a certain percentage of production was reached, Construx or St. Agnes would draw on their lines of credit to pay expenses, and subcontractors. Generally, the borrowing was limited to 80 percent of the contract price for each home.

19.    When a home was complete and sold the sale price was paid to AM, and at closing, the contract prices owed to St. Agnes and Construx were paid, with the balance being the profit AM made on each home.

## SAVANNAH GREEN URBANA

20.    Around the same time the Normal project was identified, Mike became aware of a development opportunity to build a large number (300) of affordable homes in Urbana, Illinois. The development, Savannah Green Urbana, was the product of a partnership between Mike and Armstrong.

21.    In order to pursue the Urbana development Mike and Armstrong formed VM ("V" and "M"ike). VM purchased the land. VM then entered into a development contract with St. Agnes to build homes in Urbana.

22.    St. Agnes in turn entered into a contract with Construx as the general contractor to build those Urbana homes and installed all infrastructure. Construx then hired dozens of subcontractors, including but not limited to Superiors Walls of Central Illinois to build pre-fabricated foundations, and Crazy Horse Concrete to provide concrete.

23.     In order to finance the construction, CIB provided loans to VM, St. Agnes, and Construx. Those loans were advanced based upon several criteria. Specifically, the value of the land and the value of the WIP. When a certain percentage of production was reached, Construx or St. Agnes would draw on their lines of credit to pay expenses and subcontractors. Generally, the borrowing was limited to 80 percent of the contract price for each home.

24.     When a home was complete and sold the sale price was paid to VM, and at closing, the contract prices owed to St. Agnes and Construx were paid, with the balance being the profit VM made on each home.

25.     The business affairs of the LLCs were at first conducted cooperatively by Mike, Armstrong and LaRochelle. Armstrong and LaRochelle regularly engaged in the following activities:

    (a)    Walking through and approving payment for all homes;
    (b)    Meeting with suppliers and vendors regarding contracts and payments;
    (c)    Meeting with CIB over credit situations;
    (d)    Overseeing sales and construction activities on a daily business;
    (e)    Meeting with home buyers and assisting in the sale of the homes;
    (f)    Meeting with Construx field personnel about production needs;
    (g)    Reviewing and approving all model choices;
    (h)    Reviewing and approving model colors; and
    (i)    Coordinating and approving change orders for customers. Additionally:
    (j)    Establishing and approving final sales price.
    (k)    Handling all rental activity and coordinating home closings; and,
    (l)    Preparing closing statements and title work.
    (m)    Meeting with home buyers and assisting in home sales.

26.     From the date of their creation through the end of 2003, the LLCs combined closed 378 homes, resulting in over $50,000,000 of gross revenue from those sales. The majority of the consumers were contracting to purchase homes before construction was final and complete.

27.   The homes developed by AM were listed and brokered by Defendant Armstrong's real estate company, Snyder-Armstrong Prudential Realty. The homes developed by VM were sold by Armstrong's son Victor Jr, as listing agent. The real estate commission fee in Normal was 4% of the home's sale price. The real estate commission fee in Urbana was 5% of the home's sale price. Realtor commissions paid from sales through 2004 were in excess of $2,700,000.

## THE CIB Relationship

28.   Mike and his companies began their business relationship in the early to mid-1990s. For much of that relationship, Mike and his staff worked with Julie Dreesen, the former President of the Peoria branch of CIB. Dreesen was Michael's primary loan officer and contact with CIB from 1998 through August 2004. Throughout that time, Construx and St. Agnes, among others, borrowed and repaid tens of millions of dollars from CIB.

29.   Mike periodically, as requested by CIB, would personally guaranty Construx and St. Agnes's loans from CIB. To that end, in or about 2000, Mike entered into an agreement whereby CIB is required to exhaust all of its remedies for collection on any unpaid loans, prior to seeking payment from Mike.

30.   In 2003 CIB was experiencing extreme financial distress. On information and belief, CIB lost over $200,000,000 in bad loan write offs at that time. On information and belief, LaRochelle as a member of CIB's Board was keenly aware of CIBs business and regulatory problems. Mike was never made aware by LaRochelle that CIB was having these problems, even though CIB's ability to lend and service Mike's companies was one of the most important factors to the success of the Urbana and Normal developments.

31.   In 2004, Katsaros, Aruajo and Incandela were among the Directors and Executive Officers of CIB Marine who controlled the bank. This group had only a 10.73% personal ownership in the bank.

32.   In late 2003 CIB sought additional collateral for its Construx and St. Agnes loans, Mike agreed. As a result, CIB, without any consideration to Mike, persuaded Mike to transfer his 50 percent membership interest in VM and AM to Construx. Mike received nothing for this transfer.

33.   In contrast, CIB, however, received a significant addition to its asset pool securing the Construx and St. Agnes loans. Following the transfer, for a period of several months, St. Agnes remained the manager of VM and AM.

34.   In February, 2004, CIB issued a Memorandum of Understanding, which in April 2004 was made part of a cease and desist order from state and federal bank regulators. As a result, there was a significant re-designation of management responsibilities at CIB. By August, 2004, Dreesen was replaced by Incandela who took over as the lead credit officer for Construx and St. Agnes's accounts. On information and belief, Incandela was installed at CIB to protect the financial interests of CIB Marine Director Jose Aruajo, a Venezuelan Native and Strategic Capital, Inc. located in Champaign, Illinois who directly or indirectly invested millions of dollars in CIB's growth from a small farm bank into a multi-billion dollar institution.

35.   It was about this time, LaRochelle and Armstrong realized that substantially all of the Normal homes were complete or substantially complete and most were sold. 2003 was a successful year for sales in both developments. Most of the construction costs were well known, the remaining costs were easily predicted, and the profits were imminent.

36.     In December 2003 St. Agnes and Construx prepared a detailed business plan setting forth the expectations for construction and sales for the coming year. These projections were shared with Armstrong, LaRochelle and CIB, and construction proceeded as planned.

37.     St. Agnes reported at least monthly on the progress of construction and sales to CIB, Armstrong and LaRochelle.

38.     Into the spring and early summer of 2004 an unsold inventory of homes began to accumulate in both developments. Armstrong and LaRochelle requested that Mike stop construction. This request would have placed both projects into economic jeopardy. Mike demanded that sales efforts increase.

39.     What Mike did not know was that throughout 2004, LaRochelle, on information and belief, was using his role as a CIB director to limit the credit available to VM and AM to pay St. Agnes and Construx. Consequently, as St. Agnes and Construx continued to build homes according to their business plan, they incurred millions of dollars in obligations to subcontractors. By late 2004, Construx and St. Agnes were owed more than $5,000,000.00 by VM and AM. CIB refused to allow VM and AM to pay St. Agnes and Construx.

40.     LaRochelle and Armstrong were co-guarantors, with Mike, on the VM and AM loans. If Construx and St. Agnes were paid, their loans could be reduced – loans that only Mike guaranteed, thus making Armstrong and LaRochelle potentially liable if VM and AM were unable to pay their loans. Better to saddle Mike with all of the potential liability, than to take on the obligations they rightly should if VM and AM paid their bills and borrowed the money to do so.

41.     Substantially all the interest on the loans to build in Urbana and Normal was likewise paid by Mike's companies, and not by VM and AM, which would have reduced the profits to LaRochelle and Armstrong.

42. In mid-2004 Defendant Katsaros met with Plaintiff Suhadolnik. He demanded that Suhadolnik purchase $250,000 worth of stock in SportsPublishing, LLC, a Champaign, Illinois company that publishes sports books. Suhadolnik refused.

43. From the time Mike's banking relationship started with CIB in 1998 through September 2004, none of Mike's companies was ever late on any payment with CIB nor on information and belief was any loan classified as non-performing.

44. However, September, 2004, Incandela, along with other CIB personnel, including Dean Katsaros, demanded that Construx and St. Agnes reduce their total borrowing from CIB by more than 50 percent. Incandela gave them 60 days to get this done.

45. To accomplish the debt restructuring, Mike was able to secure a new lender willing to take more than $10 million of the CIB debt. All that was needed was for Armstrong to consent, but Armstrong refused.

46. In the middle of October 2004, because Defendants AM and VM refused to pay Construx and St. Agnes and with no more operating funds left, they were forced to stop work in Urbana and Normal, and record mechanics liens totaling more than $5 million. Those liens were never been paid.

47. Without warning, in late October, 2004, CIB froze Construx and St. Agnes's accounts and swept them of more than $1 million in cash. As a result, even though the 60 days had not run, Construx and St. Agnes were crippled. CIB took no action in regard to the more than $5 million owed and secured by property owned by AM and VM. In fact, CIB did not stand in the way, when Armstrong and LaRochelle sued to remove St. Agnes as manager of AM and VM.

48. In fact, CIB agreed to allow Armstrong and LaRochelle bring a new lender, Heartland Bank, to refinance the AM and VM loans, without paying the Construx and St. Agnes

liens, and CIB released its mortgages on all of the land and buildings under construction in Normal and Urbana. Even though CIB had every right to insist on payment of the liens, CIB released the land, without collecting on the debt Construx and St. Agnes incurred to build and improve that land. CIB gave a $5 million gift to VM and AM.

49.    Thereafter, VM and AM continued to sell homes built by Construx and St. Agnes. VM and AM, however, never again paid the full contract price for those homes. VM and AM kept the cash and all profits

50.    On January 23, 2005, Construx, St. Agnes and Superior Walls all filed for Chapter 11 protection. On April 12, 2005 Construx and St. Agnes were forced into Chapter 7 by CIB's attorneys.

## THE MEMBERSHIP INTERESTS IN VM AND AM

51.    Armstrong and LaRochelle knew there was value locked up in the LLCs. At one time in October, 2004, they offered to purchase Mike's interest in the LLCs for $5,850,000. The remainder of the proceeds was to payoff all material-men, subcontractors, and CIB for amounts advanced on the construction of homes. Mike accepted this offer. A memorandum of understanding was to be issued on October 26, 2004 outlining the terms of the agreement. Both sides agreed to work cooperatively to finalize contractual language.

52.    The agreement would allow Mike to pay-off over $2,600,000 in accounts payable, provide an infusion of $750,000 cash for working capital, reduce the overall credit exposure with CIB per their request, and allow Construx to devote construction resources to the Springfield and Peoria, Illinois markets.

53.    Because Armstrong and LaRochelle did not own 100 percent of the LLCs, they were not about to share the profits with the other 50 percent owner – Mike. As a result, Armstrong and LaRochelle, with the aid and assistance of CIB, Incandela, Aruajo and Katsaros

devised a plan to get control of the membership interests that Armstrong and LaRochelle did not already own for the benefit of Armstrong and LaRochelle.

54.    To that end, in 2005, CIB conducted a sham sale of its claimed interest in the Construx 50 percent interest in VM and AM. The only bidders and buyers were Armstrong and LaRochelle. Mike successfully challenged that sale.

55.    CIB, Armstrong and LaRochelle did everything they could to keep Mike from knowing about how the sales was to be conducted, getting information necessary to evaluate the sale, or allow Mike to participate in the sale process. For example, Armstrong and LaRochelle refused to produce tax returns for VM and AM for the years 2004 and 2005 to be included as part of the sales documentation. By doing so, they tried to conceal the cash accumulating in the LLCs as they continued to sell homes. On information and belief, by late 2005, more than $3 million in cash was built up in the LLCs.

56.    Since CIB released all of liens against VM and AM, it had no claim to that cash. Even so, 50 percent of that cash belonged to Mike and could have been used to pay CIB. Likewise, CIB never pursued the mechanics liens to collect millions of dollars that would have paid CIB in full.

57.    Rather, CIB acting in concert with Armstrong and LaRochelle, deprived Mike of his property and exposed him to millions of dollars in claims for unpaid loans at Construx and St. Agnes.

58.    In the end, the first sham sale of the LLC interests was set aside by the Champaign County Circuit Court in January, 2006. The procedures used and the conduct of counsel in defending the sale were roundly criticized. The court found that witnesses for CIB, including Armstrong were being actively coached by CIB's counsel while they were on the stand.

59.     The second purported sale, which occurred under mysterious circumstances in late 2006, again was challenged by Mike.  At each sale, the successful bidders were Armstrong and LaRochelle.  LaRochelle and Armstrong purchased Mike's interest in the LLCs from CIB for a fraction of the millions of dollars then accumulated in their accounts, and the certain profits to be made from selling out the developments.

60.     Mike, continued to work to find other development opportunities.  He had no idea in late 2003 and early 2004, that his partners – Armstrong and LaRochelle – had other plans to freeze him out of the profits and proceeds of VM and AM.

61.     In the fall of 2003 and into the spring for 2004, Michael owned and had in progress 493 lots in and around Springfield, Illinois on which to build homes; plans to develop a 990 home residential subdivision including a neighborhood primary school and commercial space in DeKalb, Illinois; plans to develop an additional 670 home residential subdivision with a 7 acre park and a 10 acre commercial development in Urbana, Illinois adjacent to Savannah Green Urbana; a 64 unit multi-family dwelling unit complex, and 90 single family units in Peoria, Illinois.

62.     These projects never came to be because Armstrong and LaRochelle destroyed Mike's companies and took from him the millions of dollars in profits they realized with VM and AM in Urbana and Normal.

63.     Mike lost his interest in the LLCs, worth at least $6 million; his interest in Construx, worth at least $10,000,000; his interest in Superior Walls (which was never paid by VM and AM for many of the foundations it installed in Urbana and Normal), worth at least $10,000,000; and his interest in St. Agnes worth at least $3,000,000.

64. Mike's transfer of the VM and AM membership interests to Construx was a nullity. Mike received no consideration for the transfer. Consequently, CIB had no valid right to sell those interests.

65. Armstrong and LaRochelle took over those LLCs and stood in a position of trust and owed duties of loyalty and fidelity to Mike.

## COUNT I
### Breach of Fiduciary Duty
Armstrong, LaRochelle, VM and AM

66. Mike incorporates and realleges here as paragraph 66, paragraphs 1 through 65.

67. As members of AM and VM, and as the managers of AM and VM Armstrong and LaRochelle owed Mike the highest fiduciary duties of loyalty, and fidelity not to engage in self dealing or to freeze Mike out of the LLCs.

68. In contravention of their fiduciary duties, Armstrong and LaRochelle activity deceived Mike regarding their intention to purchase his interest in the LLCs. They did so knowing that CIB was about to freeze all of the accounts of Construx and St. Agnes, and that they were prepared to file a lawsuit to remove St. Agnes as manager of the LLCs.

69. Moreover, Armstrong and LaRochelle refused to disclose financial information to Mike, did not prepare tax returns, and refused to allow the LLCs to honor their obligations to Construx and St. Agnes.

70. In further breach of his fiduciary duty, LaRochelle engaged in the following conduct:

a. Wrongfully prevented the LLC from making payments owed to Construx for construction work performed;

b. Used his position as board member and Executive Loan Committee member at CIB to term out and foreclose on Construx' loans;

   c.  Hid CIB's financial troubles from Mike;

   d.  Encouraged Construx to perform further construction with the intent of forcing

       Construx to maximize use of CIB credit and deplete Construx financial base;

   e.  Promised to have the LLCs pay funds to Construx, and then refused to honor his

       promise

   f.  Made agreements to buy Mike's interests in the LLCs, and then reneged on those

       agreements;

   g.  On information and belief conspired with CIB to fix commercially unreasonable

       price at the sales of Construx assets;

   h.  Withheld the financial records necessary for assessment of the LLC interests;

   i.  Refused to prepare an accounting of the operation of the LLCs or to provide such

       an accounting to Mike,

   j.  Refused to prepare and to provide to Mike proper tax filings for the LLCs

       thereby hiding from Mike and others the value of the LLCs;

   k.  Misapplied the income of the LLCs to pay debts and obligations of the LLCs

       which were guaranteed by him while refusing to pay other debts of the LLCs;

   l.  Deposited the proceeds of the sale of the LLCs assets into accounts to which

       Mike had no access or ability to obtain information;

   m.  Failed and refused to distribute income of the LLCs to Mike;

   n.  Failed and refused to deposit the proceeds of the sale of the LLC assets into an

       escrow account as required by court order.

   71.    The conduct described above was intended to place Mike in financial distress

such that they would be forced to surrender his membership interest in the LLCs to LaRochelle

for less than fair market value, or not be in a position to contest LaRochelle's wrongful conduct.

72.    In breach of his fiduciary duty, Armstrong engaged in the following conduct:

a.  Wrongfully prevented the LLCs from making payments owed to Construx for construction work performed;

b.  Manipulated sales and closings so as to prevent the payment of amounts due Construx and St. Agnes.

c.  Encouraged Construx to perform further construction with the intent of forcing Construx to maximize use of CIB credit and deplete Construx' financial base;

d.  Promised to allow the LLCs pay funds to Construx, and then refused to perform;

e.  Made agreements to buy Mike's interest in the LLCs, and then refused to perform;

f.  Conspired with CIB to fix a commercially unreasonable price at the sales of Construx assets.

g.  Withheld the financial records necessary for assessment of the LLC interests;

h.  Refused to prepare an accounting of the operation of the LLCs or to provide such an accounting to Mike;

i.  Refused to prepare and to provide to Mike proper tax filings for the LLCs thereby hiding from Mike and others the value of the LLCs;

j.  Misapplied the income of the LLCs to pay debts and obligations of the LLCs which were guaranteed by Armstrong while refusing to pay other debts of the LLCs;

k.  Deposited the proceeds of the sale of the LLCs assets into accounts to which Mike had no access or ability to obtain information;

l.  Failed and refused to distribute income of the LLCs to Mike;

m. Failed and refused to place the proceeds of the sale of the LLC's assets into an escrow account as required by court order;

n. Testified falsely regarding the balances in the escrow account described above and regarding the value of the LLCs.

73. The conduct described above was intended to place Mike in financial distress such that he would be forced to transfer his membership interests in the LLCs to Armstrong for less than fair market value, or not be in a position to contest Armstrong's wrongful conduct.

74. As a direct and proximate result of Armstrong and LaRochelle's actions, Mike was damaged by being deprived of his share of the profits of VM and AM, the lose of his investments in and the value of his ownership of Construx, St. Agnes and Superior Walls, and his exposure to millions of dollars in claims by CIB. Mike's damages exceed $30,000,000.00.

Wherefore, Mike respectfully requests that this Court enter judgment in his favor against Armstrong and LaRochelle for breaching their fiduciary duties as follows:

a. Order Armstrong, LaRochelle, VM and AM to an independent accounting of all of the profits from VM and AM;

b. Order Armstrong and LaRochelle to pay to Mike his share of the profits of VM and AM;

c. Award Mike the value of his lost interests in Construx, St. Agnes, and Superior Walls;

d. Award pre-judgment interest on all amounts at the statutory rate; and

e. And such other and further relief as the Court deems just and proper.

## COUNT II
### Conspiracy to Breach of Fiduciary Duty
CIB, CIB Marine, Incandela, Aruajo, and Katsaros

75. Mike incorporates and realleges here as paragraph 74, paragraphs 1 through 65.

76.    By their conduct, CIB's employees, and under the direction of Incandela, Aruajo and Katsaros, actively conspired with Armstrong and LaRochelle to breach their fiduciary duties to Mike.

77.    CIB's employees engaged in acts of deception, such as false testimony before state and federal courts, designed solely to benefit Armstrong and LaRochelle, while taking cover under the guise of CIB's regulatory and financial difficulties.

78.    Among other things, CIB sought and received from Mike, without consideration, the transfer of his membership interest in AM and VM. CIB also failed to pursue remedies that would damage Armstrong and LaRochelle's interests in the LLCs, such as collection on the mechanics liens in excess of $5 million, and released all liens on the land in Urbana and Normal, without first securing payment by AM and VM of the mechanics liens and the contract prices owed to Construx and St. Agnes for the homes already built and sold after Armstrong and LaRochelle seized control of AM and VM.

79.    CIB's employees were aware of Armstrong's and LaRochelle's positions of trust and authority in the LLCs. They were further aware of LaRochelle's position of influence and authority as a director of CIB. CIB's employees nevertheless acquiesced to Armstrong and LaRochelle and did everything in their power to profit Armstrong, LaRochelle, Incandela, Aruajo and Katsaros.

80.    Even CIB's counsel in defending its purported sale of the LLC interests to Armstrong and LaRochelle engaged in the improper courtroom tactic of coaching witnesses for CIB, including Armstrong, during their testimony in court.

81.    As a direct and proximate result of the actions of CIB, CIB Marine, Incandela, Katsaros and Aruajo Mike was damaged by being deprived of his share of the profits of VM and AM, the lose of his investments in and the value of his ownership of Construx, St. Agnes and

Superior Walls, and his exposure to millions of dollars in claims by CIB. Mike's damages exceed $30,000,000.00.

Wherefore, Mike respectfully requests that this Court enter judgment in his favor against CIB, CIB Marine, Incandela, and Aruajo for conspiracy with Armstrong and LaRochelle to breach their fiduciary duties as follows:

   a.   Order Armstrong, LaRochelle, VM and AM to an independent accounting of all of the profits from VM and AM;

   b.   Award Mike the value of his share of the profits of VM and AM, his lost interests in Construx, St. Agnes, and Superior Walls;

   c.   Award pre-judgment interest on all amounts at the statutory rate; and

   d.   And such other and further relief as the Court deems just and proper.

## COUNT III
### Unjust Enrichment
LaRochelle and Armstrong

82.   Mike incorporates and realleges here as paragraph 82, paragraphs 1 through 65.

83.   As a result of the above alleged actions, LaRochelle and Armstrong received millions of dollars in profits through AM and VM. Those profits were a benefit to which they were not fully entitled.

84.   Through their conduct LaRochelle and Armstrong caused Mike to receive nothing for his 50 percent ownership interest in AM and VM.

85.   LaRochelle and Armstrong have unjust retained the benefits of full ownership of AM and VM to Mike's detriment.

86.   Their unjust retention of millions of dollars that rightfully should have been paid to Mike violates fundamental principles of justice and equity.

87.     As a direct and proximate result of the actions of LaRochelle and Armstrong, Mike was damaged by being deprived of his share of the profits of VM and AM, the lose of his investments in and the value of his ownership of Construx, St. Agnes and Superior Walls, and his exposure to millions of dollars in claims by CIB.  Mike's damages exceed $30,000,000.00.

Wherefore, Mike respectfully requests that this Court enter judgment in his favor against Armstrong and LaRochelle as follows:

a.  Order Armstrong and LaRochelle to account for all of the profits from VM and AM;

b.  Award Mike the value of his share of the profits of VM and AM, his lost interests in Construx, St. Agnes, and Superior Walls;

c.  Award pre-judgment interest on all amounts at the statutory rate; and

d.  And such other and further relief as the Court deems just and proper.

Dated: December 20, 2007

Respectfully submitted,
**MICHAEL SUHADOLNIK,**
Plaintiff.

By: _____
One of his attorneys

Eugene E. Murphy, Jr.
77 W. Wacker Drive, Suite 4800
Chicago, Illinois 60601
Phone 312-606-9300
Fax 312-606-8765
IL ARDC# 6198863

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
STATE AUTO PROPERTY AND CASUALTY INS. CO.

**(b)** County of Residence of First Listed Plaintiff  Franklin County, Ohio
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)  Robert Marc Chemers
Pretzel & Stouffer, Chartered, One South Wacker Dr., Suite 2500, Chicago, Illinois 60606 (312) 578-7548

## DEFENDANTS
A-M, L.L.C., an Illinois limited liability company, V-M, L.L.C., an limited liability company, ALAN LaROCHELLE, VICTOR ARMSTRONG, and MICHAEL SUHADOLNIK

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
UNKNOWN

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332, 2201 and 2202
Brief description of cause:
DECLARATORY JUDGMENT

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE
FEBRUARY 13, 2008

SIGNATURE OF ATTORNEY OF RECORD
/s/ ROBERT MARC CHEMERS

FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
                                                        Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.